UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| Sally Carter, ) | Case No. 23-90157 |
| ) | |
| Debtor, ) | |
| ) | |
| ILLINOIS DEPARTMENT OF HUMAN ) | |
| SERVICES, ) | |
| Plaintiff, ) | |
| v. ) | Adversary No. 23-09011 |
| ) | |
| SALLY CARTER, ) | |
| ) | |
| Defendant. ) | |

**AMENDED COMPLAINT TO VACATE DISCHARGE OF DEBTOR, FOR A DETERMINATION OF NON-DISCHARGEABILITY OF DEBT, AND TO PIERCE CORPORATE VEIL**

NOW COMES, the ILLINOIS DEPARTMENT OF HUMAN SERVICES, by and through its attorney, KWAME RAOUL, Attorney General of Illinois and Assistant Attorney General Shannon M. DeLaMar and files this Amended Complaint to Vacate Discharge of Debtor, for a Determination of Non-dischargeability of Debt and to Pierce the Corporate Veil pursuant to 11 U.S.C §727(a)(2)(A), §727(a)(4), §523(a)(5), §523(a)(2), and alleges the following in support of the requested relief:

**JURISDICTION**

1.  This Court has jurisdiction pursuant to 28 U.S.C. §157, 1334 and 727(a)(4).

2.  This is a core proceeding pursuant to 28 U.S.C §157(b)(2)(J).

3.  This complaint is timely filed pursuant entry of the Court's September 6, 2023 Order granting the Plaintiff's Second Motion to Extend the Time for filing An Adversary Complaint to September 28, 2023.

## FACTS RELEVANT TO ALL COUNTS

4. Plaintiff is the Illinois Department of Human Services (hereafter "Department").

5. Plaintiff in this matter was also Plaintiff in Case Number 21-L-12, filed in the State of Illinois, Sixth Judicial Circuit, Champaign County (hereafter "state court case"), a grant recovery case which was filed against Tap In Leadership, a defunct not-for-profit corporation of which Debtor Sally K. Carter was founder and executive director.

6. Tap In Leadership Academy ("TAP") was at all times relevant to this Complaint, an Illinois not-for-profit corporation, organized and existing under the laws of the State of Illinois.

7. Defendant was at all times relevant to this Complaint, the founder, Executive Director, and an officer of TAP.

8. On February 2, 2023, Plaintiff obtained a judgment of $1,807,534.62 against TAP as set forth in the Proof of Claim filed August 7, 2023.

9. Defendant listed the state court case *Illinois Department of Human Services v. Tap in Leadership Academy Inc.* (Champaign 21-L-12) on Schedule F of her Petition filed April 3, 2023 as "contingent and unliquidated." As to the question, "Who incurred the debt?", Debtor answered, "Debtor 1 only."

10. On May 10, 2023, Defendant filed an Amended Statement of Financial Affairs listing the state court case *Department of Human Services v. Tap in Leadership Academy Inc.* (Champaign 21-L-12) as "concluded" with the amount listed as "Summary Judgment entered in favor of Plaintiff 2-2-23."

11. After the final Meeting of Creditors hearing held on August 3, 2023, the Court granted a discharge to Debtor on August 8, 2023 (Document 45).

12. This Court's September 6, 2023 Order Granting Second Motion to Extend Time to File a Complaint to Determine Dischargeability of Debt or to Object to Discharge (Document 52), extended the time for the Department of Human Services to file such a Complaint.

13. The Department seeks to vacate Debtor's discharge granted August 8, 2023

**COUNT I  Complaint to Pierce the Corporate Veil of TAP in Leadership Academy.**

14. TAP and Defendant failed to adhere to corporate formalities.

15. Defendant, acting as the Executive Director of TAP, entered into Grant Agreements with the Department and then failed to abide by the terms of those Grant Agreements and treated the assets of TAP as her own in that Defendant and TAP:

    (a)  failed to abide by the requirements the Department used for unauthorized or unallowable expenses for Defendant's own benefit and that of her family members including a trip to Las Vegas for her entire family;

    (b)  continued to spend grant funds on matters Defendant had been repeatedly told by the Department were not covered by the grants;

    (c)  double-billed the Department;

    (d)  caused herself to be paid a salary by TAP which was excessive and not reasonable and as high as $193,135, much of which was funded by grant funds;

    (e)  failed to control administrative costs within required limits for her own benefit and that of her family members;

16. The Board of Directors of TAP lacked oversight and internal management controls in that:

17. TAP's Form 990 returns, which were purportedly reviewed and approved by the Board, do not fully disclose the compensation and family relationship between each officer, director, trustee, or key employee having a family relationship or a business relationship with any other officer, director, trustee, or key employee.

18. TAP's incorporation documents filed on September 8, 2010 list Defendant as President, Secretary, and Director and Jazzlyn Carter, Defendant's then 15-16-year-old daughter as Director.

19. Annual Reports filed 2011, 2013 list Jazzlyn Carter as Director of TAP.

20. Annual Reports filed 2/4/15 list Jazzlyn Carter as Secretary of TAP.

21. Without proper disclosure on the Form 990 of the fact that Jazzlyn Carter was Defendant's daughter, State and Federal filings indicate that Jazzlyn Carter was paid by TAP for the following amounts for the following positions:

    2011    $2,200 as "Director" of TAP;

    2012    $10,808 as "individual trustee or director";

    2014    $10,202 as "staff."

**Cornicha Henderson a/k/a Cornicha West**

22. In a filing in 2015, Defendant listed her sister Cornicha West as Treasurer.

23. Without proper disclosure on the Form 990 of the fact that Cornicha Henderson also known as Cornicha West was Defendant's sister, State and Federal filings indicate that Cornicha Henderson a/k/a Cornicha West was paid by TAP for the following amounts for the following positions:

    2013 $54,977.84 to Cornicha Henderson as "Director";

    2014 $52,824.00 to "Cornicha West" as "Program Director";

    2015 $89,510.00 to Cornicha West as "Program Director"; and

    2016 $26,923.00 to Cornicha West as "Program Director."

24. By Fiscal Year 2017, as disclosed on a Secretary of State filing on March 18, 2023, the entire board of Directors of TAP consisted of Defendant's family members, including:

    A. President: Emma Barron, 417 Paddock West Drive, Savoy, Illinois - Emma Barron is Defendant's mother;

    B. Secretary: Monique Pierre, 1606 Glen Bernie Drive Champaign Illinois - Monique Pierre is Defendant Debtor Sally Carter's sister;

    C. No treasurer was listed;

    D. James Carter, Director, 401 Dodson Drive, Urbana, Illinois 61802. James Carter is Defendant's husband and

   E.  Defendant, Sally K. Carter, as Director, 103 South Country Fair Drive, Champaign Illinois 61821.

25.  Though she was living with her husband at the time of the March 8, 2023 filing at 602 Silver Lake Court, Savoy, IL 61874-7449,  Defendant listed her husband's address as 401 Dodson Drive, Urbana, though she testified that no family member had lived at that address since 2012.   See Exhibit A, Transcript of June 1, 2023 Meeting of Creditors at pages 25-26.

26.  Defendant, the President and CEO of TAP opened bank accounts and credit card accounts and held signature authority over all of them and used and/or allowed those cards to be used for purchases that she knew  were not allowed under the contract terms or Department regulations, and for which proper prior approval was not obtained.

**Nonfunctioning of Officers and Directors**

27.  TAP had a board of directors that failed to exert any oversight over TAP's financial and operational affairs.  Defendant essentially made all decisions for TAP.  When she failed to adhere to the non-profit purposes for which TAP existed, the board failed to exercise oversight over TAP's compliance with DHS regulations, the law, and the terms of the grant contracts.

**Inadequate Capitalization and Dissolution of TAP**

28.  TAP dissolved February 9, 2018, shortly after DHS began to cancel its contracts and attempted to obtain repayment of the funds from TAP for misused grant funds.  This supports the contention that TAP lacked adequate capitalization and was insolvent.  TAP briefly was reinstated by the Illinois Secretary of State, but was again involuntarily dissolved on February 8, 2019 for good.

29.  There is such a unity of interest between the Defendant and TAP that the apparent separate corporate identity did not exist prior to TAP's dissolution.  This is especially supported by the fact the entire Board in FY 2017 was made up of Defendant's mother, daughter, sister, and husband.  Adherence to the corporate fiction of "TAP In Leadership Academy" should be

disregarded in this case because the Defendant's continuing abuse of corporate fictions would merely promote injustice as to the Defendant's creditor, the Plaintiff.  Defendant, by using TAP as a conduit for her own benefit, allows the Court to pierce the corporate veil and hold Defendant personally liable for the outstanding judgment and all accrued interest.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order Piercing the Corporate Veil; specifically find and conclude that:

a. Plaintiff is entitled to recover from Defendant by means of piercing the corporate veil, a total of $1,807,534.62; and

b. Plaintiff is entitled to and shall be granted all other relief that is necessary, appropriate, and which the Court deems just in securing the relief set out in Plaintiff's Motion and this Complaint.

## COUNT II

### MOTION TO VACATE DISCHARGE
### False Oath in Connection with Case 11 U.S.C. § 727(a)(4)

30. The Defendant made statements under oath, including those made in Defendant's Petition, Schedules, Statement of Financial Affairs, and statements made at the Meeting of Creditors, which are all statements under oath within the meaning of 11 U.S.C. §727(a)(4).

31. The statements were false.

32. The Defendant knew the statements were false.

33. Defendant knowingly and fraudulently made numerous false oaths and knowing and fraudulent omissions in this proceeding, as set forth above, including, without limitation:

   a. False statements regarding her transfers of funds between she and her husband;

   b. False statements regarding her financial accounts;

   c. False statements regarding payments to insiders;

   d. False statements and omissions regarding payments made to family members;

   e. False statements about being on the deed and not on the loans for certain rental property; and

   f. False statements on the loan documents for the rental property that she or co-borrower occupied that rental property as a primary residence.

 34. The Defendant displayed a reckless disregard of the truth and made the statements with the intent to defraud.

### A. Transfers to Insiders, Payments from Family Members

 35. By way of example and not by way of limitation, on Form 107, item 7 Debtor stated "no" in response to the question "within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider" and defined "insiders" to include relatives among others.

 36. On Form 107, Item 8, Debtor stated "no" in response to the question, "Within 1 year before you filed for bankruptcy, did you make a payment of a debt that benefited an insider? Include payments on debts guaranteed or cosigned by an insider."

 37. At the Creditors Meeting held June 1, 2023, in response to questioning, Debtor testified that she had been accepting periodic payments from her allegedly estranged husband, James I. Carter, and had been making payments back to him.  See p. 27, line 18 through p. 28, line 3.  Affidavit and Transcript of 6/1/23 Meeting of Creditors Attached as Exhibit A.

 38. She testified alternatively that Debtor's husband would pay Debtor on CASH APP "if she needed something."  (See p. 15, lines 9-28.)  Later in the hearing upon questioning she testified that these payments from her husband were for business loans only for the Royal Academy, LLC from 2000-2022.  Debtor testified: "I want it to be very clear.  Those are repayments for the business.  That wasn't me gifting, just gifting money.  (See Exhibit A, page 27 line 24 to page 28, line 3.)  Then at page 28, line 6-11 Debtor testified: "It was for when I had

the Royal Academy, the day care. And so during COVID especially, trying to keep up, I couldn't keep up. And so I borrowed -- and I borrowed money not just from James. I borrowed money from family to help me keep up."

39. Debtor's husband would have made no payments within the last 12 months if parties are to believe the Petition filed April 3, 2023 or the Amended Statement of Affairs filed May 10, 2023, which states Royal Academy LLC was in existence from 2018-August 2021.

### B. Failure to Disclose Business Interest in Royal Angels Foundation

40. On Debtor's bankruptcy Petition Form 107, In Part 11, paragraph 27 in response to the question, "Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business. . . An officer, director or managing executive of a corporation," Debtor listed 4 businesses.

41. Debtor's filed an Amendment on May 10, 2023 which changed dates of operation of one business, but still listed the same 4 businesses.

42. Debtor failed to disclose that she was also the President of the Royal Angels Foundation, Illinois not-for-profit corporation no. 7270-256-5 she filed with the Illinois Secretary of State on March 17, 2020.

43. The Royal Angels Foundation's application for 501(c)(3) status was granted on June 3, 2020.

44. The Royal Angels Foundation EIN# was 84-5148815.

45. On its Annual Report filed March 6, 2021, Debtor lists the purpose of the Royal Angels Foundation as:

> The Royal Angels Foundation is dedicated to providing financial
> support and resources to the children and families in the
> communities in which the Royal Academy LLC serves.

46. According to Debtor's filings, the communities which the Royal Academy LLC served included Champaign, Illinois and Arcola, Illinois.

47. The last Annual Report that Debtor filed on behalf of the Royal Angels Foundation was the 2022 Annual Report filed May 23, 2022.

48. The Royal Angels Foundation's 501(c)(3) status was revoked by the IRS on October 15, 2022 for failure to file a form 990 for all years of its existence.

49. The Royal Angels Foundation not-for-profit corporation was dissolved by the Illinois Secretary of State on August 11, 2023 for failure to file an annual report.

50. The Royal Academy LLC, the entity for which the Royal Foundation was purportedly created, was involuntarily dissolved by the Illinois Secretary of State for failure to file a 2022 Annual Report on August 12, 2022.

51. The fact that Debtor filed a 2022 Annual Report for the entity that raised funds for the Royal Academy LLC, but not for the Royal Academy LLC itself, raises a question as to what she used the Royal Foundation funds that were used after the LLC for which it was created was dissolved and therefore no disclosure of:

    A. Compensation received by Debtor from the Royal Foundation; and

    B. The disposition of the funds and assets during its existence and upon dissolution;

WHEREFORE Plaintiff prays that this Court enter an order vacating the Defendant's discharge pursuant to 11 U.S.C. §727(a)(4) and further that the Court grant Plaintiff all such other relief as is just and proper.

## COUNT II
### Section 523(a)(6) Embezzlement

52. Debtor signed contracts for three grants with the State of Illinois for Fiscal Year 2017. See Grant Agreements attached as Group Exhibit D.

53. Debtor on behalf of TAP agreed to comply with the requirements in the FY17 contracts (Article XXII) and with the uniform standards set forth in 2CFR 200.310-200.316 when the contracts were signed on August 26, 2016.

54. As a participant/observer in the recovery and transfer of equipment from Multicultural Community Center to Tap In Leadership Academy in 2016, Debtor on behalf of TAP was aware of these procedures.

55. Section 22.2 of each Grant Agreement prohibited TAP as Grantee from selling, transferring, or otherwise disposing of the equipment or material during the grant term without prior approval of Grantor, the Department.

56. Paragraph 22.3 of each Grant Agreement provides: "Equipment and Procurement. Grantee must comply with the uniform standards set forth in 2 CFR 200.310-200.316 governing the management and disposition of property which cost was supported by Grant Funds. Any waiver from such compliance must be granted by either the President's Office of Management and Budget, the Governor's Office of Management and Budget, or both, depending on the source of the Grant Funds used…."

57. Neither Debtor nor TAP obtained a waiver of the uniform standards set forth in 2 CFR 200.310-200.316.

58. On August 12, 2016, Debtor took title in the name of TAP In Leadership Academy to four (4) motor vehicles through transfers from the previous year's grant recipient. See Illinois Secretary of State Title History showing transfer 8/12/2016 from Multicultural Community Center to Tap in Leadership.

59. Contrary to the requirements of 22.2 and 22.3 of the Grant Agreements, instead of returning the four vehicles to the Department at the conclusion of the grant, Debtor retained them beyond the term of the grant and thereafter sold or transferred three (3) of the vehicles and failed to submit the proceeds to the Department:

    A. 5/5/2019 VIN#1GDL7T1J8RJ505241 1994GMC B7T042 Camper. Debtor, signed as Director of Tap in Leadership, transferred to Christopher Mitchell;

    B. 6/11/2019 VIN #1FBNE31L88DA58772 2008 Econoline Van. Debtor, signed as Director of TAP in Leadership transferred to her husband James I. Carter of the Royal Academy, LLC, Debtor's for-profit Limited Liability Company.

   C. 8/22/2019 VIN: 4DRBUSKP8BB337330, 2011 IC 3000 series bus. Debtor signed as Director of Tap in Leadership, sold to the University of Illinois for $10,000; and

   D. The disposition of the fourth vehicle, VIN#1HVBBABK8TH440944, 1996 International 3000 Services 3800 bus, is unknown. Title to the vehicle was last issued to TAP in Leadership Academy, 2011 Round Barn Road, Champaign IL 61821-3622 on April 7, 2017 and was not returned to the Department as required by terms of the Grants, the Illinois Grant Funds Recovery Act and related federal regulations, nor were the proceeds of any sale given to the Department.

  60. On her Petition in response to question 27, "Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?" Debtor listed TAP In Leadership Academy Inc. as a not-for-profit involuntarily dissolved February 8, 2019.

  61. At the First Meeting of Creditors on May 11, 2023, the following exchange occurred about TAP In Leadership:

> Carter: Um, within what timeframe? Years ago, I was the founder of TAP In Leadership Academy.
>
> Trustee: Alright, well, let's, let's limit it to the last 4 years, last 4 years. No other businesses?
>
> Carter: That's it sir.

(See Affidavit and Transcript of 5/11/23 Meeting of Creditors attached as Exhibit E.)

  62. Debtor sold or transferred title to 3 of the aforementioned vehicles 5/5/2019 and thereafter.

  63. On or about June 24, 2019, Debtor sold a bus titled in the name of TAP In Leadership Academy which she was not authorized to dispose of pursuant to Section 22.2 of the Grant Agreements and accepted a check in the amount of $10,000.00 payable to TAP

from the University of Illinois, though she claimed that TAP was no longer in business in the 4 years prior to her April 3, 2023 bankruptcy filing.

64. On or about July 19, 2019, Debtor cashed a check payable to TAP in Leadership at a bank despite the fact that Debtor testified that the last business bank account that she had was at Busey.  (See Exhibit E p. 6, lines 13-24 to p. 7, line 1)  See Exhibit F, redacted copy of check from University of Illinois to TAP In Leadership cashed at First Bank of Arcola.

65. Debtor sold property titled in the name of a business she claimed was no longer in existence and cashed checks at banks with bank accounts in the names of businesses she indicated were not operating or in existence contrary to her bankruptcy Petition and her testimony at the 341 hearings on May 11, 2023 and June 1, 2023.

66. Debtor's conduct constitutes embezzlement of Plaintiff's property in that Debtor exercised intentional control or taking of property belonging to another, without the other's consent, which resulted in the serious interference with the other's right to possess its property.

67. In selling or transferring these vehicles, Debtor exercised intentional control or taking of property belonging to another without the other's consent which resulted in the serious interference with the other's right to possess its property.

68. Defendant intended to and did cause injury to the Department's property interest.

69. Defendant knew she had no legal justification for converting the 4 vehicles to her own use, and further knew that the Department would be damaged by her action.

70. Defendant's intentional actions of converting to her own use and benefit the vehicles listed in Paragraph 39, A-D as well as the vehicle transferred to Defendant's for-profit corporation, give rise to a debt that is covered by 11 U.S.C. §523(a)(6)

WHEREFORE, Plaintiff respectfully requests judgment against Defendant declaring the indebtedness of Defendant to Plaintiff to be excepted from discharge pursuant to Bankruptcy Code Section 523(a)(6) in an amount not less than the established value of the four vehicles, but

at minimum $10,000.00 plus other costs of litigation, interest thereon, and further that the Court grant Plaintiff all such other relief as is just and proper.

### COUNT III

### 11 U.S.C. §727(a)(5) Misrepresentation of Acquisition and Disposal and Status of Assets of Royal Academy, LLC.

71. At the Creditors Meeting on August 3, 2023, in response to the question, "And what happened to the assets of the Royal Academy?" (See Exhibit C, p. 20, lines 14-16.) Debtor answered that they were sold or donated and that she was buying things for Royal Academy herself.

72. The following exchange occurred between Trustee Inghram and Debtor with respect to property that Debtor said that she purchased herself with her personal funds for use at the Royal Academy LLC school:

> TRUSTEE INGHRAM: Okay. So that's the question. Equipment, supplies, anything you may have purchased out of your personal funds for the business and sold. How much did you receive?
>
> SALLY CARTER: I am under oath. I am very leery with --
>
> TRUSTEE INGHRAM: Right. And just if you don't know, tell me that. If you have a rough idea, tell me that.
>
> SALLY CARTER: At this time, Mr. Trustee, I do not know and would like the time to get you that information.
>
> TRUSTEE INGHRAM: All right; if you would. Would you include that, Mr. Prillaman, in the things we're asking for. All right. I'm sorry, Ms. DeLaMar, go ahead.
>
> Id at page 24-25.

73. Debtor failed to follow up with this information.

74. Debtor has failed to satisfactorily explain the loss of assets of her for-profit business the Royal Academy LLC.

75. Since Plaintiff has shown the unauthorized transfer of the 2008 van by Debtor from the not-for-profit corporation TAP In Leadership Academy to her husband, James I. Carter, Jr., on behalf of her for-profit corporation, the Royal Academy, LLC, Debtor should be ordered to produce that vehicle or account for its current location.

76. Debtor has failed to account for the disposition of the assets of the Royal Academy LLC and given her testimony that she was selling and disposing of those assets, Debtor should be denied a discharge unless she can account for the assets she allegedly purchased herself for the Royal Academy LLC, the sale or donation of those assets as well as the assets sold belonging to the Royal Academy LLC, including the 2008 van.

WHEREFORE, Plaintiff WHEREFORE Plaintiffs pray that this Court enter an order vacating the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(5) and further that the Court grant Plaintiff all such other relief as is just and proper

## COUNT IV

### 727(a)(2)(A) and 523(a)(2)(A)  Grant Contract Provisions and Statutes Tap Violated to Induce the Department to enter into Fiscal Year 2017 Grant Agreements.

77. Tap in Leadership Academy, founded, operated and run day to day by Defendant. received grant funds from the Department to administer for the benefit of at-risk children according to the terms and conditions in the grants. The Grants contained identical provisions, including Section 8.1(c) of the Grant Agreements which stated:

> Debt to State.  Grantee certifies that neither it, nor its affiliate(s), is/are barred from receiving an Award because Grantee, or its affiliate(s), is/are delinquent in the payment of any debt to the State, unless Grantee, or its affiliate(s), has/have entered into a deferred payment plan to pay off the debt, and Grantee acknowledges Grantor may declare the Agreement void if the certification is false (30 ILCS 500/50-11).  See Exhibit C, pages 11, 47, and 10.

78. 330 ILCS 500/50-11 provides in pertinent part:

>Debt delinquency. (a) No person shall submit a bid for or enter into a contract with a State agency under this Code if that person knows or should know that he or she or any affiliate is delinquent in the payment of any debt to the State, unless the person or affiliate has entered into a deferred payment plan to pay off the debt.

79. Section 500/50-11 puts an affirmative obligation on TAP to disclose that it was delinquent in any debts to the State.

80. In order to induce the Illinois Department of Human Services to enter into the Grant Agreement, Debtor failed to disclose on behalf of TAP In Leadership that TAP did owe a debt to the Illinois State Board of Education ("ISBE") from FY 2015 on its 21st Century Grants in FY2016 and prior thereto.

81. Debtor was further aware that TAP was delinquent on a debt to State because it had received audit findings on the ISBE grant. See ISBE Audit dated August 29, 2016 attached as Exhibit G, page 8-26.

82. The Independent Auditor's report for ISBE grant found 4 significant deficiencies and TAP responded saying that those things were addressed "Prior to the Auditor's final recommendation."

83. The problems with TAP's management of grant funds were not addressed after the audit with the result that ISBE determined that Tap needed to repay certain funds. See Exhibit G, pages 16-26.

84. Debtor, despite a contractual duty under the Grant Agreements and a statutory duty under the Illinois Procurement Code of disclosure, Debtor, misrepresented the fact that TAP: (a) owed unpaid debt to the State of Illinois; (b) was delinquent in failing to return those funds to the State of Illinois.

85. The Department relied on Debtor's representation that TAP owed no unpaid debt to the State of Illinois and that it was not delinquent in failing to return those funds to the State of Illinois and allowed TAP by Debtor to enter into the Grant Agreements.

86. Had the Department known that TAP by Debtor had misrepresented its aforementioned debt status, it would not have approved the Grant Agreements, nor entered into the Grant Agreements with TAP.

WHEREFORE, the Plaintiff, the Illinois Department of Human Services respectfully requests that the Court enter an order vacating the Defendant's discharge pursuant to 11 U.S.C. 727(a)(2)(A) and alternatively, deny Debtor a discharge pursuant to 523(a)(2)(A) as to the debt to the Department of $1,807,534.62 and further that the Court grant Plaintiff all such other relief as is just and proper.

Respectfully submitted,

Plaintiff, the Illinois Department of
Human Services,

BY:   KWAME RAOUL,
      Attorney General of Illinois,

By:   /s/ *Shannon M. DeLaMar*
      Assistant Attorney General

Shannon M. DeLaMar, ARDC#6239237
Assistant Attorney General
Office of the Illinois Attorney General
1776 E Washington St.
Urbana, IL 61802
Office: 217-278-3366/ Cell: 217-361-9113
Email: Shannon.delamar@ilag.gov

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| Sally Carter, | ) Case No. 23-90157 |
| | ) |
|     Debtor, | ) |
| | ) |
| ILLINOIS DEPARTMENT OF HUMAN SERVICES, | ) |
|     Plaintiff, | ) |
| v. | ) Adversary No. 23-09011 |
| | ) |
| SALLY CARTER, | ) |
| | ) |
|     Defendant. | ) |

**CERTIFICATE OF SERVICE**

    Shannon M. DeLaMar, Assistant Attorney General, under penalties as provided by law pursuant to §1-109 of the Code of Civil Procedure (735 ILCS 5/1-109), certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true and that she has served a copy of the Amended Complaint to Vacate Discharge of Debtor, for a Determination of Non-Dischargeability of Debt, and to Pierce Corporate Veil upon:

James R. Inghram
bankruptcy@inghramlaw.com,
sherene@inghramlaw.com
jim@inghramlaw.com
inghram@inghramlaw.com
il52@ecfcbis.com

Roger L. Prillaman
rlprillama@aol.com
lori.prillamanandmoore@gmail.com
r56275@notify.bestcase.com

U.S. Trustee
USTPRegion10.PE.ECF@usdoj.gov

Bridget J. Kao
bridget.kao@gmail.com

by electronic service and upon:

Sally K. Carter
417 Paddock Drive
Savoy, IL 61874

by placing a copy of same in a correctly addressed, prepaid envelope and depositing it in the United States Mail in Urbana, Illinois before 5:00 pm on September 29, 2023.

                                        /s/ Shannon M. DeLaMar
                                        Assistant Attorney General

Shannon M. DeLaMar
Assistant Attorney General
Office of the Illinois Attorney General
1776 E Washington St.
Urbana, IL 61802
Telephone: 217-278-3366
Facsimile:  217-278-3370
ARDC#6239237
Email:  shannon.delamar@ilag.gov