Agreement No. FCSVI01043        FY. 2017

## GRANT AGREEMENT



### BETWEEN
### THE STATE OF ILLINOIS,   ILLINOIS DEPARTMENT OF HUMAN SERVICES
### AND
### TAP IN LEADERSHIP ACADEMY

The Illinois Department of Human Services (IDHS) (Grantor), with its principal office at 100 South Grand Avenue East, Springfield, IL 62762 , and TAP IN LEADERSHIP ACADEMY (Grantee), with its principal office at 2011 ROUND BARN ROAD CHAMPAIGN, IL 61821-3622 and payment address (if different than principal office) at _____, hereby enter into this Grant Agreement ("Agreement"). Grantor and Grantee are collectively referred to herein as "Parties" or individually as a "Party".

### PART ONE – THE UNIFORM TERMS
### RECITALS

WHEREAS, it is the intent of the Parties to perform consistent with all Exhibits and attachments hereto and pursuant to the duties and responsibilities imposed by Grantor under the laws of the State of Illinois and in accordance with the terms, conditions and provisions hereof.

NOW, THEREFORE, in consideration of the foregoing and the mutual agreements contained herein, and for other good and valuable consideration, the value, receipt and sufficiency of which are acknowledged, the Parties hereto agree as follows:

### ARTICLE I
### AWARD AND GRANTEE-SPECIFIC INFORMATION AND CERTIFICATION

1.1.    DUNS Number; SAM Registration; Nature of Entity. Under penalties of perjury, Grantee certifies that _____ is Grantee's correct DUNS number, that 27-3511477 is Grantee's correct FEIN or Social Security Number, and that Grantee has an active State registration and SAM registration (if federal funds). Grantee is doing business as a (check):

| | |
|---|---|
| ☐ Individual | ☐ Nonresident Alien |
| ☐ Sole Proprietorship | ☐ Pharmacy/Funeral Home/Cemetery Corp. |
| ☐ Partnership | ☒ Tax Exempt |
| ☐ Corporation (includes Not For Profit) | ☐ Limited Liability Company (select |
| ☐ Medical Corporation | applicable tax classification) |
| ☐ Governmental Unit | ☐ D = disregarded entity |
| ☐ Estate or Trust | ☐ C = corporation |
| ☐ Pharmacy-Non Corporate | ☐ P = partnership |

1.2.    Amount of Agreement. Grant Funds (check one) ☐ shall not exceed or ☒ are estimated to be $595,460.00 , of which $0.00 are federal funds. Grantee agrees to accept Grantor's payment as specified in the Exhibits and attachments incorporated herein as part of this Agreement.

Group Exhibit D

Agreement No. FCSVI01043        FY. 2017

**1.3.**    **Identification Numbers.** If applicable, the Federal Award Identification Number (FAIN) is See ExhibitA _____, the Federal awarding agency is See ExhibitA _____, and the Federal Award date is See ExhibitA _____. If applicable, the Catalog of Federal Domestic Assistance (CFDA) Name is See ExhibitA and Number is See ExhibitA _____. The Catalog of State Financial Assistance (CSFA) Number is See ExhibitA _____.

**1.4.**    **Term.** This Agreement shall be effective on Jul 12, 2016 _____ and shall expire on Jun 30, 2017 _____, unless terminated pursuant to this Agreement.

**1.5.**    **Certification.** Grantee certifies under oath that (1) all representations made in this Agreement are true and correct and (2) all Grant Funds awarded pursuant to this Agreement shall be used only for the purpose(s) described herein. Grantee acknowledges that the Award is made solely upon this certification and that any false statements, misrepresentations, or material omissions shall be the basis for immediate termination of this Agreement and repayment of all Grant Funds.

**1.6.**    **Signatures.** In witness whereof, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives.

**[GRANTOR NAME]**
**ILLINOIS DEPARTMENT OF HUMAN SERVICES**

James T. Dimas, Secretary

By: _____
        Signature of [Head of Grantor]

By: _____
        Signature of Designee

Date: ____M. Myers____ 8.31.16

Printed Name: Contract Obligation Analyst
Printed Title: _____
                        Designee

By: _____
Signature of First Other Approver, if Applicable

Date: _____

Printed Name: _____

Printed Title: _____
                        Other Approver

By: _____
Signature of Second Other Approver, if Applicable

Date: _____

Printed Name: _____

Printed Title: _____
                        Second Other Approver

**[GRANTEE NAME]**
TAP IN LEADERSHIP ACADEMY

By: _____
        Signature of Authorized Representative

Date: ____August 26, 2016____

Printed Name: ____Sally K. Carter____

Printed Title: ____CEO____

E-mail:  sally@tapinacademy.org

FEIN:    27-3511477

Agreement No. FCSVI01043        FY. 2017

## ARTICLE II
## REQUIRED REPRESENTATIONS

2.1.    Standing and Authority. Grantee warrants that:

(a)    Grantee is duly organized, validly existing and in good standing under the laws of the State in which it was incorporated or organized.

(b)    Grantee has the requisite power and authority to execute and deliver this Agreement and all documents to be executed by it in connection with this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby.

(c)    If Grantee is organized under the laws of another jurisdiction, Grantee warrants that it is also duly qualified to do business in Illinois and is in good standing with the Illinois Secretary of State.

(d)    The execution and delivery of this Agreement, and the other documents to be executed by Grantee in connection with this Agreement, and the performance by Grantee of its obligations hereunder have been duly authorized by all necessary entity action.

(e)    This Agreement and all other documents related to this Agreement, including the Uniform Grant Application, the Exhibits and attachments to which Grantee is a party constitute the legal, valid and binding obligations of Grantee enforceable against Grantee in accordance with their respective terms.

2.2.    Compliance with Internal Revenue Code. Grantee certifies that it does and will comply with all provisions of the Federal Internal Revenue Code (26 USC 1), the Illinois Revenue Act (35 ILCS 5), and all rules promulgated thereunder, including withholding provisions and timely deposits of employee taxes and unemployment insurance taxes.

2.3.    Compliance with Federal Funding Accountability and Transparency Act of 2006. Grantee certifies that it does and will comply with the reporting requirements of the Federal Funding Accountability and Transparency Act of 2006 (P.L. 109-282) (FFATA) with respect to Federal Awards greater than or equal to $25,000. A FFATA sub-award report must be filed by the end of the month following the month in which the award was made.

2.4.    Compliance with Uniform Grant Rules (2 CFR Part 200). Grantee certifies that it shall adhere to the applicable Uniform Administrative Requirements, Cost Principles, and Audit Requirements, which are published in Title 2, Part 200 of the Code of Federal Regulations, and are incorporated herein by reference. See 44 Ill. Admin. Code 7000.30(b)(1)(A).

2.5.    Compliance with Registration Requirements. Grantee and its sub-grantees shall: (i) be registered with the Federal SAM if seeking an Award that is partially or fully paid by Federal funds, and registered with the State equivalent of SAM; (ii) be in good standing with the Illinois Secretary of State; and (iii) have a valid DUNS number. It is Grantee's responsibility to remain current with these registrations and requirements. If Grantee's status with regard to any of these requirements change, or the certifications made in and information provided in the Uniform Grant Application changes, Grantee must notify the Grantor in accordance with ARTICLE XVIII.

Agreement No. FCSVI01043          FY. 2017

### ARTICLE III
### DEFINITIONS

3.1.    Definitions. Capitalized words and phrases used in this Agreement have the following meanings:

"2 CFR Part 200" means the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards published in Title 2, Part 200 of the Code of Federal Regulations.

"Agreement" or "Grant Agreement" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Allocable Costs" means costs allocable to a particular cost objective if the goods or services involved are chargeable or assignable to such cost objective in accordance with relative benefits received or other equitable relationship. Costs allocable to a specific Program may not be shifted to other Programs in order to meet deficiencies caused by overruns or other fund considerations, to avoid restrictions imposed by law or by the terms of this Agreement, or for other reasons of convenience.

"Allowable Costs" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Award" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Budget" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"CFDA" or "Catalog of Federal Domestic Assistance" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Close-out Report" means a report from the Grantee allowing the Grantor to determine whether all applicable administrative actions and required work have been completed, and therefore closeout actions can commence.

"Conflict of Interest" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Consolidated Financial Report" means a financial information presentation in which the assets, equity, liabilities, and operating accounts of an entity and its subsidiaries are combined (after eliminating all inter-entity transactions) and shown as belonging to a single reporting entity.

"Cost Allocation Plan" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"CSFA" or "Catalog of State Financial Assistance" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Direct Costs" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Disallowed Costs" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"DUNS Number" means a unique nine digit identification number provided by Dun & Bradstreet for each physical location of Grantee's organization. Assignment of a DUNS Number is mandatory for all organizations seeking an Award from the State of Illinois.

"FAIN" means the Federal Award Identification Number.

Agreement No. FCSVI01043          FY. 2017

"FFATA" or "Federal Funding Accountability and Transparency Act" has the same meaning as in 31 USC 6101; P.L. 110-252.

"Fixed-Rate" has the same meaning as in 44 Ill. Admin. Code 7000.20. "Fixed-Rate" is in contrast to fee-for-service, 44 Ill. Admin. Code 7000.20.

"GAAP" or "Generally Accepted Accounting Principles" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Grant Funds" has the same meaning as in 30 ILCS 705.

"Indirect Costs" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Indirect Cost Rate" means a device for determining in a reasonable manner the proportion of indirect costs each Program should bear. It is a ratio (expressed as a percentage) of the Indirect Costs to a Direct Cost base. If reimbursement of Indirect Costs is allowable under an Award, Grantor will not reimburse those Indirect Costs unless Grantee has established an Indirect Cost Rate covering the applicable activities and period of time, unless Indirect Costs are reimbursed at a fixed rate.

"Indirect Cost Rate Proposal" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Net Revenue" means an entity's total revenue less its operating expenses, interest paid, depreciation, and taxes. "Net Revenue" is synonymous with "Profit."

"Nonprofit Organization" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Notice of Award" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"OMB" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Prior Approval" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Profit" means an entity's total revenue less its operating expenses, interest paid, depreciation, and taxes. "Profit" is synonymous with "Net Revenue."

"Program" means the services to be provided pursuant to this Agreement.

"Program Costs" means all Allowable Costs incurred by Grantee and the value of the contributions made by third parties in accomplishing the objectives of the Award during the Term of this Agreement.

"Program Income" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Related Parties" has the meaning set forth in Financial Accounting Standards Board (FASB) Accounting Standards Codification (ASC) 850-10-20.

"SAM" means the federal System for Award Management (SAM); which is the Federal repository into which an entity must provide information required for the conduct of business as a recipient. 2 CFR 25 Appendix A (1)(C)(1).

State Of Illinois-Department of Human Services.
GRANT AGREEMENT FISCAL YEAR 2017 / 6 8 16
Published Revision :        2016.08.26.15.34.25 110
Page: 5      of    37

Agreement No. FCSVI01043      FY. 2017

"State" means the State of Illinois.

"Term" has the meaning set forth in Paragraph 1.4.

"Unallowable Costs" has the same meaning as in 44 Ill. Admin. Code 7000.20.

### ARTICLE IV
### PAYMENT

4.1.    Availability of Appropriation; Sufficiency of Funds. This Agreement is contingent upon and subject to the availability of sufficient funds. Grantor may terminate or suspend this Agreement, in whole or in part, without penalty or further payment being required, if (i) sufficient funds for this Agreement have not been appropriated or otherwise made available to the Grantor by the State or the Federal funding source, (ii) the Governor or Grantor reserves funds, or (iii) the Governor or Grantor determines that funds will not or may not be available for payment. Grantor shall provide notice, in writing, to Grantee of any such funding failure and its election to terminate or suspend this Agreement as soon as practicable. Any suspension or termination pursuant to this Section will be effective upon the date of the written notice unless otherwise indicated.

4.2.    Illinois Grant Funds Recovery Act. Any Grant Funds remaining at the end of the Agreement period which are not expended or legally obligated by Grantee shall be returned to Grantor within forty-five (45) days after the expiration of this Agreement in accordance with the Grant Funds Recovery Act (30 ILCS 705/1*et seq.*). In the event of a conflict between the Grant Funds Recovery Act and the Grant Accountability and Transparency Act, the provisions of the Grant Accountability and Transparency Act shall control. 30 ILCS 708/80.

4.3.    Cash Management Improvement Act of 1990. Unless notified otherwise in **PART TWO** or **PART THREE**, Federal funds received under this Agreement shall be managed in accordance with the Cash Management Improvement Act of 1990 (31 USC 6501 *et seq.*) and any other applicable Federal laws or regulations.

4.4.    Payments to Third Parties. Grantee agrees to hold harmless Grantor when Grantor acts in good faith to redirect all or a portion of any Grantee payment to a third party. Grantor will be deemed to have acted in good faith if it is in possession of information that indicates Grantee authorized Grantor to intercept or redirect payments to a third party or when so ordered by a court of competent jurisdiction.

4.5.    Modifications to Estimated Amount. If the Agreement amount is established on an estimated basis, then it may be increased by mutual agreement at any time during the Term. Grantor may decrease the estimated amount of this Agreement at any time during the Term if (i) Grantor believes Grantee will not use the funds during the Term, (ii) Grantor believes Grantee has used funds in a manner that was not authorized by this Agreement, (iii) sufficient funds for this Agreement have not been appropriated or otherwise made available to the Grantor by the State or the Federal funding source, (iv) the Governor or Grantor reserves funds, or (v) the Governor or Grantor determines that funds will or may not be available for payment. Grantee will be notified, in writing, of any adjustment of the estimated amount of this Agreement. In the event of such reduction, services provided by Grantee under **Exhibit A** may be reduced accordingly. Grantee shall be paid for work satisfactorily performed prior to the date of the notice regarding adjustment. 2 CFR 200.308.

4.6.    Interest.

(a)      All interest earned on Grant Funds held by a Grantee shall become part of the Grant Funds when earned and be treated accordingly for all purposes, unless otherwise provided in **PART TWO**

Agreement No. FCSVI01043          FY. 2017

or **PART THREE**. 30 ILCS 705/10.

(b)      Grant Funds shall be placed in an insured account, whenever possible, that bears interest, unless exempted under 2 CFR Part 200.305(b)(8). All interest earned shall be considered Grant Funds and are subject to the same restrictions, unless there is an applicable Federal program rule that takes precedence.

(c)      A Grantee who is required to reimburse Grant Funds pursuant to an action brought under the Grant Funds Recovery Act, and who enters into a deferred payment plan for the purpose of satisfying a past due debt, shall be required to pay interest on such debt as required by Section 10.2 of the Illinois State Collection Act of 1986, 30 ILCS 210; *See also* 30 ILCS 705/10.

4.7.      Timely Billing Required. Grantee must submit any payment request to Grantor within thirty (30) days of the end of the quarter, unless another billing schedule is specified in **PART TWO** or **PART THREE**. Failure to submit such payment request timely will render the amounts billed an unallowable cost which Grantor cannot reimburse. In the event that Grantee is unable, for good cause, to submit its payment request timely, Grantee shall timely notify Grantor and may request an extension of time to submit the payment request. Grantor's approval of Grantee's request for an extension shall not be unreasonably withheld.

4.8.      Certification. Pursuant to 2 CFR 200.415, each invoice and report submitted by Grantee must contain the following certification by an official authorized to legally bind the Grantee:

> By signing this report [or payment request], I certify to the best of my knowledge and belief that the report [or payment request] is true, complete, and accurate, and the expenditures, disbursements and cash receipts are for the purposes and objectives set forth in the terms and conditions of the Federal or State award. I am aware that any false, fictitious, or fraudulent information, or the omission of any material fact, may subject me to criminal, civil or administrative penalties for fraud, false statements, false claims or otherwise. (U.S. Code Title 18, Section 1001 and Title 31, Sections 3729-3730 and 3801-3812).

## ARTICLE V
## SCOPE OF GRANT ACTIVITIES/PURPOSE OF GRANT

5.1.      Scope of Grant Activities/Purpose of Grant. Grantee will conduct the Grant Activities or provide the services as described in the Exhibits and attachments, including **Exhibit A** (Project Description) and **Exhibit B** (Deliverables), incorporated herein and in accordance with all terms and conditions set forth herein and all applicable administrative rules. All Grantor-specific provisions and programmatic reporting required under this Agreement are described in **PART TWO** (The Grantor-Specific Terms). All Project-specific provisions and reporting required under this Agreement are described in **PART THREE**.

5.2.      Scope Revisions. Grantee shall obtain Prior Approval from Grantor whenever a Scope revision is necessary for one or more of the reasons enumerated in 2 CFR 200.308. All requests for Scope revisions that require Grantor approval shall be signed by Grantee's authorized representative and submitted to Grantor for approval. Expenditure of funds under a requested revision is prohibited and will not be reimbursed if expended before Grantor gives written approval. *See* 2 CFR 200.308.

Agreement No. <u>FCSVI01043</u>        FY. <u>2017</u>

    5.3.    Specific Conditions. If applicable, specific conditions required after a risk assessment will be included in Exhibit H. Grantee shall adhere to the specific conditions listed therein.

## ARTICLE VI
## BUDGET

    6.1.    Budget. The Budget is a schedule of anticipated grant expenditures that is approved by Grantor for carrying out the purposes of the Award. When Grantee or third parties support a portion of expenses associated with the Award, the Budget includes the non-Federal as well as the Federal share (and State share if applicable) of grant expenses. Within thirty (30) calendar days of execution of this Agreement, Grantee must submit to Grantor, via the Award's program manager, a proposed Budget, prepared in accordance with the template provided by Grantor. A decision indicating approval or disapproval of the proposed Budget shall be made by Grantor within sixty (60) calendar days after submission by Grantee. Once approved, a Budget, signed by Grantor staff, will be returned to Grantee.

    6.2.    Budget Revisions. Grantee shall obtain Prior Approval from Grantor whenever a Budget revision is necessary for one or more of the reasons enumerated in 2 CFR 200.308. All requests for Budget revisions that require Grantor approval shall be signed by Grantee's authorized representative and submitted to Grantor for approval. Expenditure of funds under a requested revision is prohibited and will not be reimbursed if expended before Grantor gives written approval. 2 CFR 200.308.

    6.3.    Discretionary Line Item Transfers. Unless prohibited from doing so in 2 CFR 200.308, transfers between approved line items may be made without Grantor's approval only if the total amount transferred does not exceed the allowable variance of the greater of either (i) ten percent (10%) of the Budget line item or (ii) one thousand dollars ($1,000) of the Budget line item.    Discretionary line item transfers may not result in an increase to the Budget.

    6.4.    Non-discretionary Line Item Transfers. Total line item transfers exceeding the allowable variance of the greater of either (i) ten percent (10%) of the Budget line item or (ii) one thousand dollars ($1,000) of the Budget line item require Grantor approval as set forth in Paragraph6.2.

    6.5.    Notification. Within thirty (30) calendar days from the date of receipt of the request for Budget revisions, Grantor will review the request and notify Grantee whether the Budget revision has been approved, denied, or the date upon which a decision will be reached.

## ARTICLE VII
## ALLOWABLE COSTS

    7.1.    Allowability of Costs; Cost Allocation Methods. The allowability of costs and cost allocation methods for work performed under this Agreement shall be determined in accordance with 2 CFR 200 Subpart E and Appendices III, IV, and V.

    7.2.    Indirect Cost Rate Submission.

        (a)    This Paragraph 7.2 applies only to:

            (i)    A Grantee who charges, or expects to charge, any Indirect Costs; and
            (ii)    A Grantee who is allowed to charge Indirect Costs under federal or state

State Of Illinois-Department of Human Services.
GRANT AGREEMENT FISCAL YEAR 2017 / 6 8 16
Published Revision :    2016.08.26.15.34.25 110
Page: 8    of    37

Agreement No. FCSVI01043 _____  FY. 2017

statutes, state administrative rules, and agency or program rules, regulations and policies.

(b)      A Grantee must submit an Indirect Cost Rate Proposal in accordance with federal regulations for approval no later than three months after the effective date of the Award, in a format prescribed by Grantor.

(c)      A Grantee who has a current, applicable rate negotiated by a cognizant Federal agency shall provide to Grantor a copy of its Indirect Cost Rate acceptance letter from the Federal government. Grantor will accept that Indirect Cost Rate, up to any statutory, rule-based or programmatic limit.

7.3.     Transfer of Costs. Cost transfers between Grants, whether as a means to compensate for cost overruns or for other reasons, are unallowable. *See* 2 CFR 200.451.

7.4.     Higher Education Cost Principles. The Federal cost principles that apply to public and private institutions of higher education are set forth in 2 CFR Part 200 Subpart E and Appendix III.

7.5.     Nonprofit Organizations Cost Principles. The Federal cost principles that apply to Nonprofit Organizations that are not institutions of higher education are set forth in 2 CFR Part 200 Subpart E, unless exempt under 2 CFR 200 Appendix VIII.

7.6.     Government Cost Principles. The Federal cost principles that apply to State, local and Federally-recognized Indian tribal governments are set forth in 2 CFR Part 200 Subpart E, Appendix V, and Appendix VII.

7.7.     Commercial Organization Cost Principles. The Federal cost principles and procedures for cost analysis and the determination, negotiation and allowance of costs that apply to commercial organizations are set forth in 48 CFR Part 31.

7.8.     Financial Management Standards. The financial management systems of Grantee must meet the following standards:

(a)      **Accounting System.** Grantee organizations must have an accounting system that provides accurate, current, and complete disclosure of all financial transactions related to each State- and Federally-funded Program. Accounting records must contain information pertaining to State and Federal pass-through awards, authorizations, obligations, unobligated balances, assets, outlays, and income. These records must be maintained on a current basis and balanced at least quarterly. Cash contributions to the Program from third parties must be accounted for in the general ledger with other Grant Funds. Third party in-kind (non-cash) contributions are not required to be recorded in the general ledger, but must be under accounting control, possibly through the use of a memorandum ledger. *See* 2 CFR 200.302.

(b)      **Source Documentation.** Accounting records must be supported by such source documentation as canceled checks, bank statements, invoices, paid bills, donor letters, time and attendance records, activity reports, travel reports, contractual and consultant agreements, and subaward documentation. All supporting documentation should be clearly identified with the Award and general ledger accounts which are to be charged or credited.

(i)      The documentation standards for salary charges to grants are prescribed by 2 CFR 200.430, and in the cost principles applicable to the entity's organization (Paragraphs 7.4 through 7.7).

Agreement No. FCSVI01043          FY. 2017

(ii)     If records do not meet the standards in 2 CFR 200.430, then Grantor may notify Grantee in **PART TWO**, **PART THREE** or **Exhibit H** of the requirement to submit Personnel activity reports. *See* 2 CFR 200.430(i)(8). Personnel activity reports shall account on an after-the-fact basis for one hundred percent (100%) of the employee's actual time, separately indicating the time spent on the grant, other grants or projects, vacation or sick leave, and administrative time, if applicable. The reports must be signed by the employee, approved by the appropriate official, and coincide with a pay period. These time records should be used to record the distribution of salary costs to the appropriate accounts no less frequently than quarterly.

(iii)     Formal agreements with independent contractors, such as consultants, must include a description of the services to be performed, the period of performance, the fee and method of payment, an itemization of travel and other costs which are chargeable to the agreement, and the signatures of both the contractor and an appropriate official of Grantee.

(iv)     If third party in-kind (non-cash) contributions are used for Grant purposes, the valuation of these contributions must be supported with adequate documentation.

(c)     **Internal Control.** Effective control and accountability must be maintained for all cash, real and personal property, and other assets. Grantee must adequately safeguard all such property and must provide assurance that it is used solely for authorized purposes. Grantee must also have systems in place that provide reasonable assurance that the information is accurate, allowable, and compliant with the terms and conditions of this Agreement.

(d)     **Budget Control.** Records of expenditures must be maintained for each Award by the cost categories of the approved Budget (including indirect costs that are charged to the Award), and actual expenditures are to be compared with Budgeted amounts at least quarterly.

(e)     **Cash Management.** Requests for advance payment shall be limited to Grantee's immediate cash needs. Grantee must have written procedures to minimize the time elapsing between the receipt and the disbursement of Grant Funds to avoid having excess funds on hand. 2 CFR 200.305.

7.9.     Federal Requirements. All Grants, whether funded in whole or in part with either Federal or State funds, are subject to Federal requirements and regulations, including but not limited to 2 CFR Part 200, 44 Ill. Admin. Code 7000.30(b) and the Financial Management Standards in Paragraph 7.8.

7.10.     Profits. It is not permitted for any person or entity to earn a Profit from an Award. *See, e.g.*, 2 CFR 200.400(g); *see also* 30 ILCS 708/60(a)(7).

7.11.     Management of Program Income.  Grantee is encouraged to earn income to defray program costs where appropriate, subject to 2 CFR 200.307.

### ARTICLE VIII
### REQUIRED CERTIFICATIONS

8.1.     Certifications. Grantee, its officers, and directors shall be responsible for compliance with the enumerated certifications to the extent that the certifications apply to Grantee.

(a)     **Bribery.** Grantee certifies that it has not been convicted of bribery or attempting to bribe an officer or employee of the State of Illinois, nor made an admission of guilt of such conduct which is a matter of record (30 ILCS 500/50-5).

Agreement No. FCSVI01043 _____ FY. 2017

(b) **Bid Rigging.** Grantee certifies that it has not been barred from contracting with a unit of State or local government as a result of a violation of Paragraph 33E-3 or 33E-4 of the Criminal Code of 1961 (720 ILCS 5/33E-3 or 720 ILCS 5/33E-4, respectively).

(c) **Debt to State.** Grantee certifies that neither it, nor its affiliate(s), is/are barred from receiving an Award because Grantee, or its affiliate(s), is/are delinquent in the payment of any debt to the State, unless Grantee, or its affiliate(s), has/have entered into a deferred payment plan to pay off the debt, and Grantee acknowledges Grantor may declare the Agreement void if the certification is false (30 ILCS 500/50-11).

(d) **Educational Loan.** Grantee certifies that it is not barred from receiving State agreements as a result of default on an educational loan (5 ILCS 385/1*et seq.*).

(e) **International Boycott.** Grantee certifies that neither it nor any substantially owned affiliated company is participating or shall participate in an international boycott in violation of the provision of the U.S. Export Administration Act of 1979 (50 USC Appendix 2401*et seq.* or the regulations of the U.S. Department of Commerce promulgated under that Act (15 CFR Parts 730 through 774).

(f) **Dues and Fees.** Grantee certifies that it is not prohibited from receiving an Award because it pays dues or fees on behalf of its employees or agents, or subsidizes or otherwise reimburses them for payment of their dues or fees to any club which unlawfully discriminates (775 ILCS 25/1*et seq.*).

(g) **Pro-Children Act.** Grantee certifies that it is in compliance with the Pro-Children Act of 2001 in that it prohibits smoking in any portion of its facility used for the provision of health, day care, early childhood development services, education or library services to children under the age of eighteen (18), which services are supported by Federal or State government assistance (except such portions of the facilities which are used for inpatient substance abuse treatment) (20 USC 7181-7184).

(h) **Drug-Free Work Place.** If Grantee is not an individual, Grantee certifies it will provide a drug free workplace pursuant to the Drug Free Workplace Act. 30 ILCS 580/3. If Grantee is an individual and this Agreement is valued at more than $5,000, Grantee certifies it shall not engage in the unlawful manufacture, distribution, dispensation, possession, or use of a controlled substance during the performance of the Agreement. 30 ILCS 580/4. Grantee further certifies that it is in compliance with the government-wide requirements for a drug-free workplace as set forth in 41 USC 8102.

(i) **Motor Voter Law.** Grantee certifies that it is in full compliance with the terms and provisions of the National Voter Registration Act of 1993 (52 USC 20501*et seq.*).

(j) **Clean Air Act and Clean Water Act.** Grantee certifies that it is in compliance with all applicable standards, order or regulations issued pursuant to the Clean Air Act (42 USC §7401*et seq.*) and the Federal Water Pollution Control Act, as amended (33 USC §1251*et seq.*).

(k) **Debarment.** Grantee certifies that it is not debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this Agreement by any Federal department or agency (45 CFR Part 76), or by the State (*see* 30 ILCS 708/25(6)(G)).

(l) **Non-procurement Debarment and Suspension.** Grantee certifies that it is in compliance with Subpart C of 2 CFR Part 180 as supplemented by 2 CFR Part 376, Subpart C.

Agreement No. FCSVI01043       FY. 2017

(m)     **Grant for the Construction of Fixed Works.** Grantee certifies that all Programs for the construction of fixed works which are financed in whole or in part with funds provided by this Agreement shall be subject to the Prevailing Wage Act (820 ILCS 130/0.01*et seq.*) unless the provisions of that Act exempt its application. In the construction of the Program, Grantee shall comply with the requirements of the Prevailing Wage Act including, but not limited to, inserting into all contracts for such construction a stipulation to the effect that not less than the prevailing rate of wages as applicable to the Program shall be paid to all laborers, workers, and mechanics performing work under the Award and requiring all bonds of contractors to include a provision as will guarantee the faithful performance of such prevailing wage clause as provided by contract.

(n)     **Health Insurance Portability and Accountability Act.** Grantee certifies that it is in compliance with the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Public Law No. 104-191, 45 CFR Parts 160, 162 and 164, and the Social Security Act, 42 USC 1320d-2 through 1320d-7, in that it may not use or disclose protected health information other than as permitted or required by law and agrees to use appropriate safeguards to prevent use or disclosure of the protected health information. Grantee shall maintain, for a minimum of six (6) years, all protected health information.

(o)     **Criminal Convictions.** Grantee certifies that neither it nor any officer, director, partner or other managerial agent of Grantee has been convicted of a felony under the Sarbanes-Oxley Act of 2002, nor a Class 3 or Class 2 felony under Illinois Securities Law of 1953, or that at least five (5) years have passed since the date of the conviction. Grantee further certifies that it is not barred from receiving an Award under 30 ILCS 500/50-10.5, and acknowledges that Grantor shall declare the Agreement void if this certification is false (30 ILCS 500/50-10.5).

(p)     **Forced Labor Act.** Grantee certifies that it complies with the State Prohibition of Goods from Forced Labor Act, and certifies that no foreign-made equipment, materials, or supplies furnished to the State under this Agreement have been or will be produced in whole or in part by forced labor, convict labor, or indentured labor under penal sanction (30 ILCS 583).

(q)     **Illinois Use Tax.** Grantee certifies in accordance with 30 ILCS 500/50-12 that it is not barred from receiving an Award under this Paragraph. Grantee acknowledges that this Agreement may be declared void if this certification is false.

(r)     **Environmental Protection Act Violations.** Grantee certifies in accordance with 30 ILCS 500/50-14 that it is not barred from receiving an Award under this Paragraph. Grantee acknowledges that this Agreement may be declared void if this certification is false.

(s)     **Goods from Child Labor Act.** Grantee certifies that no foreign-made equipment, materials, or supplies furnished to the State under this Agreement have been produced in whole or in part by the labor of any child under the age of twelve (12) (30 ILCS 584).

(t)     **Federal Funding Accountability and Transparency Act of 2006.** Grantee certifies that it is in compliance with the terms and requirements of 31 USC 6101.

### ARTICLE IX
### CRIMINAL DISCLOSURE

Agreement No. FCSVI01043        FY. 2017

9.1.    Mandatory Criminal Disclosures. Grantee shall continue to disclose to Grantor all violations of criminal law involving fraud, bribery or gratuity violations potentially affecting this Award. *See* 30 ILCS 708/40. Additionally, if Grantee receives over $10 million in total Grant Funds, funded by either State or Federal funds, during the period of this Award, Grantee must maintain the currency of information reported to SAM regarding civil, criminal or administrative proceedings as required by 2 CFR 200.113 and Appendix II of 2 CFR Part 200, and 30 ILCS 708/40.

## ARTICLE X
## UNLAWFUL DISCRIMINATION

10.1.    Compliance with Nondiscrimination Laws. Grantee, its employees and subcontractors under subcontract made pursuant to this Agreement, shall comply with all applicable provisions of State and Federal laws and regulations pertaining to nondiscrimination, sexual harassment and equal employment opportunity including, but not limited to, the following laws and regulations and all subsequent amendments thereto:

(a)    The Illinois Human Rights Act (775 ILCS 5/1-101*et seq.*), including, without limitation, 44 Ill. Admin. Code Part 750, which is incorporated herein;

(b)    . The Public Works Employment Discrimination Act (775 ILCS 10/1*et seq.*);

(c)    The United States Civil Rights Act of 1964 (as amended) (42 USC 2000a- and 2000h-6). (*See also* guidelines to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons [Federal Register: February 18, 2002 (Volume 67, Number 13, Pages 2671-2685)]);

(d)    Section 504 of the Rehabilitation Act of 1973 (29 USC 794);

(e)    The Americans with Disabilities Act of 1990 (42 USC 12101*et seq.*); and

(f)    The Age Discrimination Act (42 USC 6101*et seq.*).

## ARTICLE XI
## LOBBYING

11.1.    Improper Influence. Grantee certifies that no Grant Funds have been paid or will be paid by or on behalf of Grantee to any person for influencing or attempting to influence an officer or employee of any government agency, a member of Congress or Illinois General Assembly, an officer or employee of Congress or Illinois General Assembly, or an employee of a member of Congress or Illinois General Assembly in connection with the awarding of any agreement, the making of any grant, the making of any loan, the entering into of any cooperative agreement, or the extension, continuation, renewal, amendment or modification of any agreement, grant, loan or cooperative agreement. 31 USC 1352. Additionally, Grantee certifies that it has filed the required certification under the Byrd Anti-Lobbying Amendment (31 USC 1352), if applicable.

11.2.    Federal Form LLL. If any funds, other than Federally-appropriated funds, were paid or will be paid to any person for influencing or attempting to influence any of the above persons in connection with this Agreement, the undersigned must also complete and submit Federal Form LLL, Disclosure of Lobbying Activities Form, in accordance with its instructions.

Agreement No. FCSVI01043          FY. 2017

   11.3.    Lobbying Costs. Grantee certifies that it is in compliance with the restrictions on lobbying set forth in 2 CFR Part 200.450. For any Indirect Costs associated with this Agreement, total lobbying costs shall be separately identified in the Program Budget, and thereafter treated as other Unallowable Costs.

   11.4.    Procurement Lobbying. Grantee warrants and certifies that it and, to the best of its knowledge, its sub-grantees have complied and will comply with Executive Order No. 1 (2007) (EO 1-2007). EO 1-2007 generally prohibits Grantees and subcontractors from hiring the then-serving Governor's family members to lobby procurement activities of the State, or any other unit of government in Illinois including local governments, if that procurement may result in a contract valued at over $25,000. This prohibition also applies to hiring for that same purpose any former State employee who had procurement authority at any time during the one-year period preceding the procurement lobbying activity.

   11.5.    Subawards. Grantee must include the language of this ARTICLE XI in the award documents for any subawards made pursuant to this Award at all tiers. All sub-awardees are also subject to certification and disclosure.  Pursuant to Appendix II(I) to 2 CFR Part 200, Grantee shall forward all disclosures by contractors regarding this certification to Grantor.

   11.6.    Certification. This certification is a material representation of fact upon which reliance was placed to enter into this transaction and is a prerequisite for this transaction, pursuant to 31 USC 1352. Any person who fails to file the required certifications shall be subject to a civil penalty of not less than $10,000, and not more than $100,000, for each such failure.

### ARTICLE XII
### MAINTENANCE AND ACCESSIBILITY OF RECORDS; MONITORING

   12.1.    Records Retention. Grantee shall maintain for three (3) years from the date of submission of the final expenditure report, adequate books, all financial records and, supporting documents, statistical records, and all other records pertinent to this Award, adequate to comply with 2 CFR 200.333, unless a different retention period is specified in 2 CFR 200.333.  If any litigation, claim or audit is started before the expiration of the retention period, the records must be retained until all litigation, claims or audit exceptions involving the records have been resolved and final action taken.

   12.2.    Accessibility of Records. Grantee, in compliance with 2 CFR 200.336, shall make books, records, related papers, supporting documentation and personnel relevant to this Agreement available to authorized Grantor representatives, the Illinois Auditor General, Illinois Attorney General, any Executive Inspector General, the Grantor's Inspector General, Federal authorities, any person identified in 2 CFR 200.336, and any other person as may be authorized by Grantor (including auditors), by the State of Illinois or by Federal statute. Grantee shall cooperate fully in any such audit.

   12.3.    Failure to Maintain Books and Records. Failure to maintain books, records and supporting documentation, as described in this ARTICLE XII, shall establish a presumption in favor of the State for the recovery of any funds paid by the State under this Agreement for which adequate books, records and supporting documentation are not available to support disbursement.

   12.4.    Monitoring and Access to Information. Grantee must monitor its activities to assure compliance with applicable State and Federal requirements and to assure its performance expectations are being achieved. Grantor shall monitor the activities of Grantee to assure compliance with all requirements and performance

Agreement No. FCSVI01043          FY. 2017

expectations of the award. Grantee shall timely submit all financial and performance reports, and shall supply, upon Grantor's request, documents and information relevant to the Award. Grantor may make site visits as warranted by program needs. *See* 2 CFR 200.328 and 200.331. Additional monitoring requirements may be in **PART TWO** or **PART THREE**.

## ARTICLE XIII
### FINANCIAL REPORTING REQUIREMENTS

13.1.    Required Periodic Financial Reports. Grantee agrees to submit financial reports as requested and in the format required by Grantor. Grantee shall file quarterly reports with Grantor describing the expenditure(s) of the funds related thereto, unless more frequent reporting is required by the Grantee pursuant to specific award conditions. 2 CFR 200.207. The first of such reports shall cover the first three months after the Award begins. Quarterly reports must be submitted no later than 30 calendar days following the three month period covered by the report. Additional information regarding required financial reports may be set forth in **Exhibit H** . Failure to submit the required financial reports may cause a delay or suspension of funding. 30 ILCS 705/1*et seq.*; 2 CFR 207(b)(3) and 200.327.

13.2.    Close-out Reports.

(a)    Grantee shall submit a Close-out Report within 60 calendar days following the end of the period of performance for this Agreement. In the event that this Agreement is terminated prior to the end of the Term, Grantee shall submit a Close-out Report within 60 calendar days of such termination. The format of this Close-out Report shall follow a format prescribed by Grantor. 2 CFR 200.343.

(b)    If an audit or review of Grantee occurs and results in adjustments after Grantee submits a Close-out Report, Grantee will submit a new Close-out Report based on audit adjustments, and immediately submit a refund to Grantor, if applicable. 2 CFR 200.344.

13.3.    Annual Financial Reports.

(a)    This Paragraph 13.3 applies to all Grantees, unless exempted by **PART TWO** or **PART THREE**.

(b)    Grantees shall submit Annual Financial Reports within 180 days after the Grantee's fiscal year ending on or after June 30. This deadline may be extended at the discretion of the Grantor.

(c)    The Annual Financial Report must cover the same period the Audited Financial Statements cover. If no Audited Financial Statements are required, however, then the Annual Financial Report must cover the same period as the Grantee's tax return.

(d)    Annual Financial Reports must include an in relation to opinion from the report issuer on the Cost and Revenue schedules included in the Annual Financial Report.

(e)    Annual Financial Reports shall follow a format prescribed by Grantor.

13.4.    Effect of Failure to Comply. Failure to comply with reporting requirements shall result in the withholding of funds, the return of improper payments or Unallowable Costs, will be considered a material breach of this Agreement and may be the basis to recover Grant Funds. Grantee's failure to comply with this **ARTICLE XIII**,

Agreement No. FCSVI01043          FY. 2017

ARTICLE XIV, or ARTICLE XV shall be considered prima facie evidence of a breach and may be admitted as such, without further proof, into evidence in an administrative proceeding before Grantor, or in any other legal proceeding.

## ARTICLE XIV
### PERFORMANCE REPORTING REQUIREMENTS

14.1.     Required Periodic Performance Reports. Grantee agrees to submit Performance Reports as requested and in the format required by Grantor. Performance Measures listed in **Exhibit E** must be reported quarterly, unless otherwise specified in **PART TWO** or **PART THREE**. Unless so specified, the first of such reports shall cover the first three months after the Award begins. If Grantee is not required to report performance quarterly, then Grantee must submit a Performance Report at least annually. In unusual circumstances where more frequent reporting is necessary some Grantees may be required to submit monthly Performance Reports; in such cases, Grantor shall notify Grantee of same in **PART TWO** or **PART THREE**. Pursuant to 2 CFR 200.328, periodic Performance Reports shall be submitted no later than 30 calendar days following the period covered by the report. For certain construction-related Awards, such reports may be exempted as identified in **PART TWO** or **PART THREE**. 2 CFR 200.328. Failure to submit such required Performance Reports may cause a delay or suspension of funding. 30 ILCS 705/1 et seq.

14.2.     Close-out Performance Reports. Grantee agrees to submit a Close-out Performance Report, in the format required by Grantor, within 60 calendar days following the end of the period of performance. See 2 CFR 200.343.

14.3.     Content of Performance Reports. Pursuant to 2 CFR 200.328(b)(2) all Performance Reports must include Program qualitative and quantitative information, including a comparison of actual accomplishments to the objectives of the award established for the period; where the accomplishments can be quantified, a computation of the cost if required; performance trend data and analysis if required; and reasons why established goals were not met, if appropriate. Appendices may be used to include additional supportive documentation. Additional content and format guidelines for the Performance Reports will be determined by Grantor contingent on the Award's statutory, regulatory and administrative requirements, and are included in **PART TWO** or **PART THREE** of this Agreement.

14.4.     Performance Standards.  Grantee shall perform in accordance with the Performance Standards set forth in **Exhibit F**.  See 2 CFR 200.301 and 200.210.

## ARTICLE XV
### AUDIT REQUIREMENTS

15.1.     Audits. Grantee shall be subject to the audit requirements contained in the Single Audit Act Amendments of 1996 (31 USC 7501-7507) and Subpart F of 2 CFR Part 200, and the audit rules set forth by the Governor's Office of Management and Budget. See 30 ILCS 708/65(c).

15.2.     Single and Program-Specific Audits. If Grantee expends $750,000 or more in Federal Awards (direct federal and federal pass-through awards combined) during its fiscal year, it must have a single audit or program-specific audit conducted for that year as required in 2 CFR 200.501 and other applicable sections of Subpart F. The audit and reporting package (including data collection form) must be completed as described in 2 CFR 200.512 (single audit) or 2 CFR 200.507 (Program-specific audit).  The audit (and package) must be submitted

Agreement No. FCSVI01043        FY. 2017

to Grantor either within (i) 30 calendar days after receipt of the auditor's report(s) or (ii) nine months after the end of the audit period, whichever is earlier.

15.3.    Financial Statement Audit. If Grantee expends less than $750,000 in Federal Awards during its fiscal year and is not subject to the audit requirements in 15.2, but receives between $300,000 and $499,999 in Federal and State Awards combined, Grantee must have a financial statement audit conducted in accordance with Generally Accepted Auditing Standards(GAAS); if Grantee expends between $500,000 and $749,999 in Federal and State awards combined, Grantee must have a financial statement audit conducted in accordance with Generally Accepted Government Auditing Standards (GAGAS).  Grantee shall submit these financial statement audit reports to Grantor either within (i) 30 calendar days after receipt of the auditor's report(s) or (ii) 180 calendar days after the end of the audit period, whichever is earlier.

15.4.    For Profit Entities. A For-Profit entity that expends $750,000 or more in Federal Awards (direct federal and federal pass-through awards combined) during its fiscal year is required to have a Program-specific audit conducted in accordance with 2 CFR 200.507.  The Program-specific audit must be completed and the reporting required by 2 CFR 200.507 must be submitted to Grantor either within (i) 30 calendar days after receipt of the auditor's report(s) or (ii) nine months after  the end of the audit period, whichever is earlier. A For-Profit entity that expends less than $750,000 in Federal Awards during its fiscal year, but receives between $300,000 and $499,999 in Federal and State Awards combined must have a financial statement audit conducted in accordance with Generally Accepted Auditing Standards (GAAS); a For-Profit entity that expends between $500,000 and $749,999 in Federal and State awards combined must have a financial statement audit conducted in accordance with Generally Accepted Government Auditing Standards (GAGAS).  The For-Profit entity shall submit these financial statement audit reports to Grantor either within (i) 30 calendar days after receipt of the auditor's report(s) or (ii) 180 calendar days after the end of the audit period, whichever is earlier.

15.5.    Performance of Audits. For those organizations required to submit an independent audit report, the audit is to be conducted by a Certified Public Accountant or Certified Public Accounting Firm licensed in the State of Illinois. For audits required to be performed subject to Generally Accepted Government Auditing Standards, Grantee shall request and maintain on file a copy of the auditor's most recent peer review report and acceptance letter.

## ARTICLE XVI
## TERMINATION; SUSPENSION

16.1.    Termination.

(a)    This Agreement may be terminated, in whole or in part, by either Party for any or no reason upon thirty (30) days' prior written notice to the other Party.  If terminated by the Grantee, Grantee must include the reasons for such termination, the effective date, and, in the case of a partial termination, the portion to be terminated.  If Grantor determines in the case of a partial termination that the reduced or modified portion of the Award will not accomplish the purposes for which the Award was made, Grantor may terminate the Agreement in its entirety.  2 CFR 200.339(a)(4).

(b)    This Agreement may be terminated, in whole or in part, by Grantor without advance notice:

(i)        Pursuant to a funding failure under Paragraph 4.1;

Agreement No. FCSVI01043          FY. 2017

(ii)     If Grantee fails to comply with the terms and conditions of this or any Award, application or proposal, including any applicable rules or regulations, or has made a false representation in connection with the receipt of this or any Grant;

(iii)     For cause, which may render the Grantee ineligible for consideration for future grants from the Grantor or other State agencies; or

(iv)     If Grantee breaches this Agreement and either (1) fails to cure such breach within 15 calendar days' written notice thereof, or (2) if such cure would require longer than 15 calendar days and the Grantee has failed to commence such cure within 15 calendar days' written notice thereof. In the event that Grantor terminates this Agreement as a result of the breach of the Agreement by Grantee, Grantee shall be paid for work satisfactorily performed prior to the date of termination.

16.2.     Suspension. Grantor may suspend this Agreement, in whole or in part, pursuant to a funding failure under Paragraph 4.1 or if the Grantee fails to comply with terms and conditions of this or any Award. If suspension is due to Grantee's failure to comply, Grantor may withhold further payment and prohibit Grantee from incurring additional obligations pending corrective action by Grantee or a decision to terminate this Agreement by Grantor. Grantor may determine to allow necessary and proper costs that Grantee could not reasonably avoid during the period of suspension.

16.3.     Objection. If Grantor suspends or terminates this Agreement, in whole or in part, for cause, Grantee may avail itself of any opportunities to object and challenge such suspension or termination in accordance with any applicable written processes and procedures. 2 CFR 200.341.

16.4.     Effects of Suspension and Termination.

(a)     Grantor may credit Grantee for expenditures incurred in the performance of authorized services under this Agreement prior to the effective date of a suspension or termination.

(b)     Grantee shall not incur any costs or obligations that require the use of these Grant Funds after the effective date of a suspension or termination, and shall cancel as many outstanding obligations as possible.

(c)     Costs to Grantee resulting from obligations incurred by Grantee during a suspension or after termination of the Agreement are not allowable unless:

i.     Grantor expressly authorizes them in the notice of suspension or termination; and

ii.     The costs result from obligations properly incurred before the effective date of suspension or termination, are not in anticipation of the suspension or termination, and the costs would be allowable if the Agreement was not suspended or terminated. 2 CFR 200.342.

16.5.     Close-out of Terminated Agreements. If this Agreement is terminated, in whole or in part, the Parties shall comply with all close-out and post-termination requirements of this Agreement. 2 CFR 200.339(c).

**ARTICLE XVII**

Agreement No. FCSVI01043          FY. 2017

### SUBCONTRACTS/SUB-GRANTS

17.1.    Sub-recipients/Delegation. Grantee may not subcontract nor sub-grant any portion of this Agreement nor delegate any duties hereunder without Prior Approval of Grantor. The requirement for Prior Approval is satisfied if the subcontractor or sub-grantee has been identified in the Uniform Grant Application, such as, without limitation, a Project Description, and Grantor has approved.

17.2.    Application of Terms. Grantee shall advise any sub-grantee of funds awarded through this Agreement of the requirements imposed on them by Federal and State laws and regulations, and the provisions of this Agreement.

### ARTICLE XVIII
### NOTICE OF CHANGE

18.1.    Notice of Change. Grantee shall notify the Grantor if there is a change in Grantee's legal status, Federal employer identification number (FEIN), DUNS number, SAM registration or the state equivalent registration status, Related Parties, senior management, or address. See 30 ILCS 708/60(a). If the change is anticipated, Grantee shall give thirty (30) days' prior written notice to Grantor. If the change is unanticipated, Grantee shall give notice as soon as practicable thereafter. Grantor reserves the right to take any and all appropriate action as a result of such change(s).

18.2.    Failure to Provide Notification. Grantee shall hold harmless Grantor for any acts or omissions of Grantor resulting from Grantee's failure to notify Grantor of these changes.

18.3.    Notice of Impact. Grantee shall immediately notify Grantor of any event that may have a material impact on Grantee's ability to perform this Agreement.

18.4.    Circumstances Affecting Performance; Notice. In the event Grantee becomes a party to any litigation, investigation or transaction that may reasonably be considered to have a material impact on Grantee's ability to perform under this Agreement, Grantee shall notify Grantor, in writing, within five (5) calendar days of determining such litigation or transaction may reasonably be considered to have a material impact on the Grantee's ability to perform under this Agreement.

18.5.    Effect of Failure to Provide Notice. Failure to provide the notice described in Paragraph18.4 shall be grounds for immediate termination of this Agreement and any costs incurred after notice should have been given shall be disallowed.

### ARTICLE XIX
### REORGANIZATION AND BOARD MEMBERSHIP

19.1.    Effect of Reorganization. Grantee acknowledges that this Agreement is made by and between Grantor and Grantee, as Grantee is currently organized and constituted. No promise or undertaking made hereunder is an assurance that Grantor agrees to continue this Agreement, or any license related thereto, should Grantee reorganize or otherwise substantially change the character of its corporate structure, business structure or governance structure. Grantee agrees that it will give Grantor prior notice of any such action and will provide any and all reasonable documentation necessary for Grantor to review the proposed transaction including financial records and corporate and shareholder minutes of any corporation which may be involved. Failure to comply with

Agreement No. FCSVI01043          FY. 2017

this ARTICLE XIX shall constitute a material breach of this Agreement.

## ARTICLE XX
## AGREEMENTS WITH OTHER STATE AGENCIES

20.1.    Agreement Disclosure. Grantee shall fully disclose, in **Exhibit G** , all contracts and other agreements to which it is a party or it anticipates entering into within one month after the effective date of this Award with any other State agency.  For each contract or agreement, Grantee shall indicate:

(a)    The name of the State agency;

(b)    The number of the contract(s) or other agreement(s);

(c)    The estimated amount of the contract(s) or other agreement(s);

(d)    The term of the contract(s) or other agreement(s); and

(e)    The nature or purpose of the contract(s) or other agreement(s).

If Grantee has multiple Agreements with Grantor for the same fiscal year, Grantee only needs to supplement its previously submitted **Exhibit G**.

20.2.    Copies upon Request. Grantee shall, upon request by Grantor, provide Grantor with copies of contracts or other agreements to which Grantee is a party with any other State agency.

## ARTICLE XXI
## CONFLICT OF INTEREST

21.1.    Required Disclosures. Grantee must immediately disclose in writing any potential or actual Conflict of Interest to the Grantor.  2 CFR 200.112 and 44 Ill. Admin. Code 7000.40(b)(3).

21.2.    Prohibited Payments. Grantee agrees that payments made by Grantor under this Agreement will not be used to compensate, directly or indirectly, any person: (1) currently holding an elective office in this State including, but not limited to, a seat in the General Assembly, or (2) employed by an office or agency of the State of Illinois whose annual compensation is in excess of sixty percent (60%) of the Governor's annual salary, or $106,447.20 (30 ILCS 500/50-13).

21.3.    Request for Exemption. Grantee may request written approval from Grantor for an exemption from Paragraph 21.2. Grantee acknowledges that Grantor is under no obligation to provide such exemption and that Grantor may, if an exemption is granted, grant such exemption subject to such additional terms and conditions as Grantor may require.

## ARTICLE XXII
## EQUIPMENT OR PROPERTY

22.1.    Transfer of Equipment. Grantor shall have the right to require that Grantee transfer to Grantor

State Of Illinois-Department of Human Services.
GRANT AGREEMENT FISCAL YEAR 2017 / 6 8 16
Published Revision :        2016.08.26.15.34.25 110

Agreement No. FCSVI01043          FY. 2017

any equipment, including title thereto, purchased in whole with Grantor funds, if Grantor determines that Grantee has not met the conditions of 2 CFR 200.439(a). Grantor shall notify Grantee in writing should Grantor require the transfer of such equipment. Upon such notification by Grantor, and upon receipt or delivery of such equipment by Grantor, Grantee will be deemed to have transferred the equipment to Grantor as if Grantee had executed a bill of sale therefor.

22.2.    Prohibition against Disposition/Encumbrance. The Grantee is prohibited from, and may not sell, transfer, encumber (other than original financing) or otherwise dispose of said equipment, material, or real property during the Grant Term without Prior Approval of Grantor.  Any real property acquired using Grant Funds must comply with the requirements of 2 CFR 200.311.

22.3.    Equipment and Procurement. Grantee must comply with the uniform standards set forth in 2 CFR 200.310–200.316 governing the management and disposition of property which cost was supported by Grant Funds. Any waiver from such compliance must be granted by either the President's Office of Management and Budget, the Governor's Office of Management and Budget, or both, depending on the source of the Grant Funds used. Additionally, Grantee must comply with the standards set forth in 2 CFR 200.317-200.326 for use in establishing procedures for the procurement of supplies and other expendable property, equipment, real property and other services with Grant Funds. These standards are furnished to ensure that such materials and services are obtained in an effective manner and in compliance with the provisions of applicable Federal and State statutes and executive orders.

## ARTICLE XXIII
## PROMOTIONAL MATERIALS; PRIOR NOTIFICATION

23.1.    Publications, Announcements, etc. Use of Grant Funds for promotions is subject to the prohibitions for advertising or public relations costs in 2 CFR 200.421(e). In the event that Grantor funds are used in whole or in part to produce any written publications, announcements, reports, flyers, brochures or other written materials, Grantee agrees to include in these publications, announcements, reports, flyers, brochures and all other such material, the phrase "Funding provided in whole or in part by the [Grantor]." Exceptions to this requirement must be requested, in writing, from Grantor and will be considered authorized only upon written notice thereof to Grantee.

23.2.    Prior Notification/Release of Information. Grantee agrees to notify Grantor ten (10) days prior to issuing public announcements or press releases concerning work performed pursuant to this Agreement, or funded in whole or in part by this Agreement, and to cooperate with Grantor in joint or coordinated releases of information.

## ARTICLE XXIV
## INSURANCE

24.1.    Purchase and Maintenance of Insurance. Grantee shall maintain in full force and effect during the Term of this Agreement casualty and bodily injury insurance, as well as insurance sufficient to cover the replacement cost of any and all real or personal property, or both, purchased or, otherwise acquired, or improved in whole or in part, with funds disbursed pursuant to this Agreement. 2 CFR 200.310.  Additional insurance requirements may be detailed in **PART TWO** or **PART THREE**.

24.2.    Claims. If a claim is submitted for real or personal property, or both, purchased in whole with

Agreement No. FCSVI01043          FY. 2017

funds from this Agreement and such claim results in the recovery of money, such money recovered shall be surrendered to Grantor.

### ARTICLE XXV
### LAWSUITS AND INDEMNIFICATION

25.1.    Independent Contractor. Grantee is an independent contractor under this Agreement and neither Grantee nor any employee or agent of Grantee is an employee of Grantor and do not acquire any employment rights with Grantor or the State of Illinois by virtue of this Agreement. Grantee will provide the agreed services and achieve the specified results free from the direction or control of Grantor as to the means and methods of performance. Grantee will be required to provide its own equipment and supplies necessary to conduct its business; provided, however, that in the event, for its convenience or otherwise, Grantor makes any such equipment or supplies available to Grantee, Grantee's use of such equipment or supplies provided by Grantor pursuant to this Agreement shall be strictly limited to official Grantor or State of Illinois business and not for any other purpose, including any personal benefit or gain.

25.2.    Indemnification. To the extent permitted by law, Grantee agrees to hold harmless Grantor against any and all liability, loss, damage, cost or expenses, including attorneys' fees, arising from the intentional torts, negligence or breach of contract of Grantee, with the exception of acts performed in conformance with an explicit, written directive of Grantor. Indemnification by Grantor will be governed by the State Employee Indemnification Act (5 ILCS 350/1 et seq.) as interpreted by the Illinois Attorney General. Grantor makes no representation that Grantee, an independent contractor, will qualify or be eligible for indemnification under said Act.

### ARTICLE XXVI
### MISCELLANEOUS

26.1.    Gift Ban. Grantee is prohibited from giving gifts to State employees pursuant to the State Officials and Employees Ethics Act (5 ILCS 430/10-10) and Executive Order 15-09.

26.2.    Access to Internet. Grantee must have Internet access. Internet access may be either dial-up or high-speed. Grantee must maintain, at a minimum, one business e-mail address that will be the primary receiving point for all e-mail correspondence from Grantor. Grantee may list additional e-mail addresses at any time during the Term of this Agreement. The additional addresses may be for a specific department or division of Grantee or for specific employees of Grantee. Grantee must notify Grantor of any e-mail address changes within five (5) business days from the effective date of the change.

26.3.    Exhibits and Attachments. Exhibits A through H, PART TWO, PART THREE, if applicable, and all other exhibits and attachments hereto are incorporated herein in their entirety.

26.4.    Assignment Prohibited. Grantee acknowledges that this Agreement may not be sold, assigned, or transferred in any manner by Grantee, to include an assignment of Grantee's rights to receive payment hereunder, and that any actual or attempted sale, assignment, or transfer by Grantee without the Prior Approval of Grantor in writing shall render this Agreement null, void and of no further effect.

26.5.    Amendments. This Agreement may be modified or amended at any time during its Term by

Agreement No. FCSVI01043          FY. 2017

mutual consent of the Parties, expressed in writing and signed by the Parties.

26.6.     Severability. If any provision of this Agreement is declared invalid, its other provisions shall not be affected thereby.

26.7.     No Waiver. No failure of Grantor to assert any right or remedy hereunder will act as a waiver of its right to assert such right or remedy at a later time or constitute a course of business upon which Grantee may rely for the purpose of denial of such a right or remedy to Grantor.

26.8.     Applicable Law; Claims. This Agreement and all subsequent amendments thereto, if any, shall be governed and construed in accordance with the laws of the State of Illinois.  Any claim against Grantor arising out of this Agreement must be filed exclusively with the Illinois Court of Claims. 705 ILCS 505/1et seq.  Grantor does not waive sovereign immunity by entering into this Agreement.

26.9.     Compliance with Law. This Agreement and Grantee's obligations and services hereunder are hereby made and must be performed in compliance with all applicable Federal and State laws, including, without limitation, Federal regulations, State administrative rules, including 44 Ill. Admin. Code 7000, and any and all license requirements or professional certification provisions.

26.10.    Compliance with Confidentiality Laws. If applicable, Grantee shall comply with applicable State and Federal statutes, Federal regulations and Grantor administrative rules regarding confidential records or other information obtained by Grantee concerning persons served under this Agreement. The records and information shall be protected by Grantee from unauthorized disclosure.

26.11.    Compliance with Freedom of Information Act. Upon request, Grantee shall make available to Grantor all documents in its possession that Grantor deems necessary to comply with requests made under the Freedom of Information Act. (5 ILCS 140/7(2)).

26.12.    Precedence. In the event there is a conflict between this Agreement and any of the exhibits or attachments hereto, this Agreement shall control. In the event there is a conflict between **PART ONE** and **PART TWO** or **PART THREE** of this Agreement, **PART ONE** shall control. In the event there is a conflict between **PART TWO** and **PART THREE** of this Agreement, **PART TWO** shall control. In the event there is a conflict between this Agreement and relevant statute(s) or Administrative Rule(s), the relevant statute(s) or rule(s) shall control.

26.13.    Headings. Article and other headings contained in this Agreement are for reference purposes  . only and are not intended to define or limit the scope, extent or intent of this Agreement or any provision hereof.

26.14.    Entire Agreement. Grantee and Grantor acknowledge that this Agreement constitutes the entire agreement between them and that no promises, terms, or conditions not recited, incorporated or referenced herein, including prior agreements or oral discussions, shall be binding upon either Grantee or Grantor.

26.15.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be considered to be one and the same agreement, binding on all Parties hereto, notwithstanding that all Parties are not signatories to the same counterpart. Duplicated signatures, signatures transmitted via facsimile, or signatures contained in a Portable Document Format (PDF) document shall be deemed original for all purposes.

26.16.    Attorney Fees and Costs.  If Grantor prevails in any proceeding to enforce the terms of this Agreement, including any administrative hearing pursuant to the Grant Funds Recovery Act or the Grant Accountability and Transparency Act, the Grantor has the right to recover reasonable attorneys' fees, costs and

Agreement No. FCSVI01043        FY. 2017

expenses associated with such proceedings.

**THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.**

Agreement No. FCSVI01043        FY. 2017

## EXHIBIT A
## PROJECT DESCRIPTION

FEDERAL PROGRAM NAME: MIGRANT & SEASONAL HEAD START
STATE PROGRAM NAME: MIGRANT HEAD START PROJECT
                    PURPOSE OF GRANT

CSFA Number: 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
Appropriation FY: 2017
Appropriation Code: 010014906
Appropriation Desc: CHILD CARE SERVICES
Appropriation Amount: $141,484.00
Use by DHS as Maintenance of Effort (MOE): No
Use by DHS as Matching Funds: No
CFDA:   - CFDA Name: N/A
FAIN Number: N/A - FAIN Award Agency: N/A
FAIN Award Date: N/A

CSFA Number: 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
Appropriation FY: 2017
Appropriation Code: 80403490Y
Appropriation Desc: MIGRANT & SEASONAL HS
Appropriation Amount: $453,976.00
Use by DHS as Maintenance of Effort (MOE): No
Use by DHS as Matching Funds: No
CFDA:   - CFDA Name: N/A
FAIN Number: N/A - FAIN Award Agency: N/A
FAIN Award Date: N/A

Provide a full-day, comprehensive Head Start child development program to 95 eligible
children, ages six weeks to six years, from migrant and seasonal farm-worker families, for
96 days with children in attendance, from July 1, 2016 to October 31, 2016 and re-opening
June 19, 2017.   Program includes early childhood education, school readiness,
developmental assessment, mental health screening, field trips, project work,
immunizations, nutritious meal service and medical and dental examinations, completion of
dental and medical treatment for children who need it, social-service referrals and
transportation services.

------ END OF PROGRAM: MIGRANT HEAD START PROJECT -------

Agreement No. FCSVI01043 _____    FY. 2017

## EXHIBIT B
### DELIVERABLES OR MILESTONES

1. Provide monthly home visits to each family; complete parent goals with 90% of families. Offer Be Strong Families Illinois or Abriendo Puertas sessions once during every month of operation.

2. Collect $37,560.00 in allowable non-federal share contributions (cash or in-kind donations).

3. Charge a maximum of $102,117.00 in administrative costs to the contract.

4. Maintain compliance with Illinois Migrant and Seasonal Head Start (IMSHS) policies and procedures, along with legal provisions of Standard 424B, and any and all legislation, information memoranda, program instructions, and new and amended regulations including but not limited to: P.L.110-134, 45 CFR 1301 through 1311 and 45 CFR 75. Any and all provisions promulgated by the Office of Head Start after the execution of the agreement are hereby incorporated by reference to the same extent as to the Department.

5. Adhere to the budget approved by IDHS MSHS, and the procedures for requesting budget changes, including Policy Committee approval. Submit to the Department accurate expenditure reports by the 15th of each month, electronic programmatic reports by the 10th of each month of operation and any other reports or documents on the dates requested by the IDHS IMSHS.

6. Maintain liability coverage of $1,000,000 and hold Department harmless against liability that might exceed such coverage.

7. Collect, aggregate and analyze parent-engagement data as required by IMSHS.

8. Maintain current time-and-effort reports that reflect the total activity of dually-funded employees, to support allocation of direct costs.

9. Hold at least three Policy Committee meetings and one Planning Meeting for program improvement with parents in attendance. Submit copies of minutes of such meetings and a program-improvement plan to IMSHS by 1 November 2016.

10. Correct monitoring findings of IMSHS within 30 days.

------ END OF PROGRAM: MIGRANT HEAD START PROJECT ------

Agreement No. FCSVI01043          FY. 2017

## EXHIBIT C

## PAYMENT

Grantee shall receive    $595,460.00          under this Agreement.

Enter specific terms of payment here:

1. Department pays one month's estimated expenses in advance of the actual delivery of services, based on Delegate's request, and as funds are available.
2. Department may take such actions as described in 45 CFR 75.207 and 45 CFR 75.371.
3. Delegate shall reimburse Department for costs that the grantee, its auditors, or the federal government determines to be unallowable, following the Illinois Recovery Act.

------ END OF PROGRAM: MIGRANT HEAD START PROJECT ------

Estimated Annual Contract Amount:  $595,460.00

NOTE:  The estimated figures are merely an objective means of computing the contract amount and should not be construed as a guaranteed amount that will be spent on the contract during the fiscal year.

Agreement No. FCSVI01043          FY. 2017

**EXHIBIT D**
**CONTACT INFORMATION**

**CONTACT FOR NOTIFICATION:**

Unless specified elsewhere, all notices required or desired to be sent by either Party shall be sent to the persons listed below.

**GRANTOR CONTACT**                          **GRANTEE CONTACT**

| | | | | |
|---|---|---|---|---|
| Name: | James Walsh | | Name: | SALLY CARTER |
| Title: | Accountant · | | Title: | |
| Address: | 100 South Grand Avenue East | | Address: | 2011 ROUND BARN ROAD |
| | 2nd Floor, Room 2431 | | | CHAMPAIGN, IL 61821:3622 |
| | Springfield, IL 62762 | | | |
| Phone: | 217-524-6318 | | Phone: | 217-403-3710 |
| TTY #: | | | TTY #: | |
| Fax #: | | | Fax #: | |

E-mail Address: james.walsh@illinois.gov          E-mail Address: sally@tapinacademy.org

Additional Information: _____

Agreement No. FCSVI01043 _____   FY. 2017 ___

**EXHIBIT E**

**PERFORMANCE MEASURES**

1. 95 children enrolled.
2. All children enrolled more than 20 days have developmental assessments completed.
3. All children enrolled more than 30 days complete medical and dental treatments.
4. Monthly Parent Committee meetings held.
5. Ninety percent of parents receive monthly home visits with assistance to develop and reach individual goals.
6. Parent members attend monthly Policy Council meetings June through October and March.

------ END OF PROGRAM: MIGRANT HEAD START PROJECT ------

Agreement No. FCSVI01043          FY. 2017

## EXHIBIT F

### PERFORMANCE STANDARDS

1.100% of eligible children in the recruitment area enrolled.

2.98% of developmental assessments completed.

3.95% of treatment completed for children enrolled more than 30 days.

4.Policy Committee meetings held every month.

5.90% of parents with partnership agreements.

6.All eligible children with disabilities in the recruitment area enrolled.

7.100% of goals, objectives, and action steps of the School Readiness Plan and the Family Engagement Plan carried out.

8.Services provided for 100% of children with disabilities.

------ END OF PROGRAM: MIGRANT HEAD START PROJECT ------

Agreement No. FCSVI01043     FY. 2017

## EXHIBIT G

### STATE AGENCY CONTRACTS

For each contract or other agreement to which Grantee is a party with any other State agency, state:

1. The name of the State agency;

2. The number of the contract(s) or other agreement(s);

3. The estimated amount of the contract(s) or other agreement(s);

4. The term of the contract(s) or other agreement(s); and

5. The nature or purpose of the contract(s) or other agreement(s).

State Of Illinois-Department of Human Services.
GRANT AGREEMENT FISCAL YEAR 2017 / 6 8 16
Published Revision :      2016.08.26.15.34.25 110
Page: 31    of    37

Agreement No. FCSVI01043          FY. 2017

**EXHIBIT H**
**SPECIFIC CONDITIONS**

N/A

·----- END OF PROGRAM: MIGRANT HEAD START PROJECT ·------

Agreement No. FCSVI01043          FY. 2017

## PART TWO – THE GRANTOR-SPECIFIC TERMS

In addition to the uniform requirements in **PART ONE** of the Grant Agreement, the Grantor has the following additional requirements for its Grantee:

### ARTICLE XXVII
### ADDITIONAL CERTIFICATIONS

27.1     Certifications. Grantee shall be responsible for compliance with the enumerated certifications to the extent that the certifications legally apply to Grantee:

(a)     **Abuse of Adults with Disabilities Intervention Act.** Grantee certifies that it is in compliance with the Abuse of Adults with Disabilities Intervention Act to protect people with disabilities who are abused, neglected or financially exploited and who, because of their disability, cannot seek assistance on their own behalf. Anyone who believes a person with a disability living in a domestic setting is being abused, neglected or financially exploited must file a complaint with the Office of Inspector General, Department of Human Services. Grantee has an obligation to report suspected fraud or irregularities committed by individuals or other entities with whom it interacts on Grantor's behalf and should make a report to the appropriate program office (20 ILCS 2435/1*et seq.*).

(b)     **Grant Award Requirements.** Grantee certifies that it is in compliance with 45 CFR Part 93 and 45 CFR Part 94.

(c)     **Business Entity Registration.** Grantee certifies that it is not required to register as a business entity with the State Board of Elections pursuant to the Procurement Code (30 ILCS 500/20-160 and 30 ILCS 500/50-37). Further, Grantee acknowledges that all contracts between State agencies and a business entity that do not comply with this Paragraph shall be voidable under Section 50-60 of the Procurement Code (30 ILCS 500/50-60).

### ARTICLE XXVIII
### ADDITIONAL TERMS

28.1     Renewal. This Agreement may be renewed for additional periods by mutual consent of the Parties, expressed in writing and signed by the Parties.   Grantee acknowledges that this Agreement does not create any expectation of renewal.

28.2     Multiple Locations. In the event that Grantee has more than one location, Grantee shall include in **EXHIBIT D** either (1) the address, phone number and hours of operation of each location, or (2) the address, phone number and hours of operation of Grantee's primary location.

28.3     Changes in Key Grant Personnel. When it is specifically required as a condition of an Award, the replacement of the Program director or a key person or a substantial reduction in the level of their effort, e.g., their unanticipated absence for more than three (3) months, or a twenty-five percent (25%) reduction in the time devoted to the Award purposes, requires Prior Approval from Grantor. When it is specifically required as a condition of an Award, Prior Approval will be required for the replacement or the substantial reduction in the level of effort of other personnel whose work is deemed by Grantor to be critical to the Award's successful completion. All requests for approval of changes in key Grant personnel shall be signed by Grantee's authorized representative and submitted to the appropriate Grantor program personnel. Evidence of the qualifications for replacement

Agreement No. FCSVI01043          FY. 2017

personnel (such as a résumé) shall be included. 2 CFR 200.308.

28.4    Grant Funds Recovery. The provisions of 89 Ill. Adm. Code 511 shall apply to any funds awarded that are subject to the Illinois Grant Funds Recovery Act.

28.5    Employee and Subcontractor Background Checks. Grantee certifies that neither Grantee, nor any employee or subcontractor who works on Grantor's premises, has a felony conviction. Any request for an exception to this rule must be made in writing, listing the name of the individual, home address, type of conviction and date of conviction. Grantee will also supply Grantor with a list of individuals assigned to work on DHS' premises at least ten (10) working days prior to the start of their employment, unless circumstances prevent Grantee from giving a list within that time. If Grantee cannot provide a list, or the name of an individual, at least ten (10) working days prior to his/her employment, it shall do so as soon as possible. Grantor may conduct, at its expense, criminal background checks on Grantee's employees and subcontractors assigned to work on Grantor's premises. Grantee agrees to indemnify and hold harmless Grantor and its employees for any liability accruing from said background checks.

28.6    Gifts. In addition to the Gift ban described in Paragraph 26.1, Grantee will provide Grantor with advance notice of Grantee's provision of gifts, excluding charitable donations, given as incentives to community-based organizations in Illinois and clients in Illinois to assist Grantee in carrying out its responsibilities under this Agreement.

## ARTICLE XXIX
## MONITORING AND INFORMATION

29.1    Monitoring of Conduct. In addition to Article XII of **PART ONE**, Grantor shall monitor Grantee's conduct under this Agreement which may include, but shall not be limited to, reviewing records of performance in accordance with administrative rules, license status review, fiscal and audit review, Agreement compliance and compliance with the affirmative action requirements of this Agreement. Grantor shall have the authority to conduct announced and unannounced monitoring visits and Grantee shall cooperate with Grantor in connection with all such monitoring visits. Failure of Grantee to cooperate with Grantor in connection with announced and unannounced monitoring visits is grounds for Grantor's termination of this Agreement.

29.2    Requests for Information. Grantor may request, and Grantee shall supply, upon request, necessary information and documentation regarding transactions constituting contractual (whether a written contract exists or not) or other relationships, paid for with funds received hereunder. Documentation may include, but is not limited to, information regarding Grantee's contractual agreements, identity of employees, shareholders and directors of Grantee and any party providing services which will or may be paid for with funds received hereunder, including, but not limited to, management and consulting services rendered to Grantee.

29.3    Rights of Review. This ARTICLE XXIX does not give Grantor the right to review a license that is not directly related to the Award being audited nor does it allow Grantor to unilaterally revoke a license without complying with all due process rights to which Grantee is entitled under Federal, State or local law or applicable rules promulgated by Grantor.

Agreement No. FCSVI01043        FY. 2017

## ARTICLE XXX
## WORK PRODUCT

30.1    Assignment of Work Product. "Work Product" means all the tangible materials, regardless of format, delivered by Provider to DHS under this Agreement. Grantee assigns to Grantor all right, title and interest in and to Work Product. However, nothing in this Agreement shall be interpreted to grant Grantor any right, title or interest in Grantee's intellectual property that has been or will later be developed outside this Award.

30.2    License to Grantor. To the extent Grantee-owned works are incorporated into Work Product, Grantee grants to Grantor a perpetual, non-exclusive, paid-up, world-wide license in the use, reproduction, publication and distribution of such Grantee-owned works when included within the Work Product. Grantee shall not copyright Work Product without Grantor's prior written consent.

30.3    License to Grantee; Objections. Grantor grants to Grantee a perpetual, non-exclusive, paid-up license to publish academic and scholarly articles based upon the services rendered under this Agreement. All materials to be published shall first be submitted to Grantor at least forty-five (45) days prior to publication or other disclosure. Upon written objection from Grantor, Grantee shall excise any confidential information, as that term is defined in applicable State and Federal statutes, federal regulations and Grantor administrative rules, from materials before publication. Grantor may also object to the publication on grounds other than confidentiality. As to the latter objections, Grantor and Grantee will attempt to resolve Grantor's concerns within the forty-five (45) day review period, or as otherwise agreed between the Parties. Grantor waives any objections not made to Grantee in writing before expiration of the review period.

30.4    Unresolved Objections; Disclaimer. If Grantor's objections on grounds other than confidentiality are not resolved within the review period or other such time as agreed by the Parties, then Grantee may publish the materials but shall include therein the following disclaimer: "Although the research or services underlying this article were funded in whole or in part by the [Grantor], the [Grantor] does not endorse or adopt the opinions or conclusions presented in the article." Notwithstanding the above, Grantor shall not have the right to control or censor the contents of Grantee publications.

## ARTICLE XXXI
## POST-TERMINATION/NON-RENEWAL

31.1    Duties. Upon notice by Grantor to Grantee of the termination of this Agreement or notice that Grantor will not renew, extend or exercise any options to extend the term of this Agreement, or that Grantor will not be contracting with Grantee beyond the term of this Agreement, Grantee shall, upon demand:

(a)    Cooperate with Grantor in assuring the transition of recipients of services hereunder for whom Grantee will no longer be providing the same or similar services or who choose to receive services through another Grantee.

(b)    To the extent permitted by law, provide copies of all records related to recipient services funded by Grantor under this Agreement.

(c)    Grant reasonable access to Grantor to any and all Program sites serving recipients hereunder to facilitate interviews of recipients to assure a choice process by which recipients may indicate provider preference.

Agreement No. FCSVI01043        FY. 2017

(d)       Provide detailed accounting of all service recipients' funds held in trust by Grantee, as well as the identity of any recipients for whom Grantee is acting as a representative payee of last resort.

31.2    Survival. The promises and covenants of this Article shall survive the Term of this Agreement for the purposes of the necessary transition of recipients of services hereunder.

### ARTICLE XXXII
### LINGUISTIC AND CULTURAL COMPETENCY GUIDELINES AND ASSURANCE

32.1.    Plan Creation. For Grantees that do not have a Linguistic and Cultural Competency (LCC) Plan, the Grantee shall create its LCC Plan within one year following execution of this Agreement. The LCC Plan, including creation guidelines, is described on the Internet at  http://www.dhs.state.il.us/page.aspx?item=66602.

32.2.    Plan Implementation. For Grantees that have an LCC Plan, the Grantee certifies that it is updated annually to identify all goals met and to describe any efforts made toward meeting additional goals still in progress.

32.3.    Plan Submission. Upon request, Grantee shall submit to the Grantor its LCC Plan, including any updates.

Agreement No. FCSVI01043        FY. 2017

## PART THREE – THE PROJECT-SPECIFIC TERMS

In addition to the uniform requirements in **PART ONE** and the Grantor-Specific Terms in **PART TWO**, the Grantor has the following additional requirements for this Project:

### ARTICLE XXXIII
### ADDITIONAL REQUIREMENTS

33.1    Program Manual. The related Program Manual, if applicable, can be found via the following DHS website: http://www.dhs.state.il.us/page.aspx?item=29741  and is hereby incorporated into this Agreement.

33.2    Program Attachment. The related Program Attachment, if applicable, is ____ . It can be found via the following DHS website: http://www.dhs.state.il.us/page.aspx?item=29741 and is hereby incorporated into this Agreement.

Agreement No. FCSVR04547      FY. 2017

**GRANT AGREEMENT**



BETWEEN

**THE STATE OF ILLINOIS,   ILLINOIS DEPARTMENT OF HUMAN SERVICES**

**AND**

**TAP IN LEADERSHIP ACADEMY**

The Illinois Department of Human Services (IDHS) (Grantor), with its principal office at 100 South Grand Avenue East, Springfield, IL 62762 , and TAP IN LEADERSHIP ACADEMY (Grantee), with its principal office at 2011 ROUND BARN ROAD CHAMPAIGN, IL 61821-3622 and payment address (if different than principal office) at _____, hereby enter into this Grant Agreement ("Agreement"). Grantor and Grantee are collectively referred to herein as "Parties" or individually as a "Party".

**PART ONE – THE UNIFORM TERMS**

**RECITALS**

WHEREAS, it is the intent of the Parties to perform consistent with all Exhibits and attachments hereto and pursuant to the duties and responsibilities imposed by Grantor under the laws of the State of Illinois and in accordance with the terms, conditions and provisions hereof.

NOW, THEREFORE, in consideration of the foregoing and the mutual agreements contained herein, and for other good and valuable consideration, the value, receipt and sufficiency of which are acknowledged, the Parties hereto agree as follows:

**ARTICLE I**

**AWARD AND GRANTEE-SPECIFIC INFORMATION AND CERTIFICATION**

1.1.    DUNS Number; SAM Registration; Nature of Entity. Under penalties of perjury, Grantee certifies that _____ is Grantee's correct DUNS number, that 27-3511477 is Grantee's correct FEIN or Social Security Number, and that Grantee has an active State registration and SAM registration (if federal funds). Grantee is doing business as a (check):

| | |
|---|---|
| ☐ Individual | ☐ Nonresident Alien |
| ☐ Sole Proprietorship | ☐ Pharmacy/Funeral Home/Cemetery Corp. |
| ☐ Partnership | ☒ Tax Exempt |
| ☐ Corporation (includes Not For Profit) | ☐ Limited Liability Company (select |
| ☐ Medical Corporation | applicable tax classification) |
| ☐ Governmental Unit | ☐ D = disregarded entity |
| ☐ Estate or Trust | ☐ C = corporation |
| ☐ Pharmacy-Non Corporate | ☐ P = partnership |

1.2.    Amount of Agreement. Grant Funds (check one) ☐ shall not exceed or ☒ are estimated to be $1,180,758.62 , of which $0.00 are federal funds. Grantee agrees to accept Grantor's payment as specified in the Exhibits and attachments incorporated herein as part of this Agreement.

Agreement No. FCSVR04547        FY. 2017

1.3.    Identification Numbers. If applicable, the Federal Award Identification Number (FAIN) is
N/A                , the Federal awarding agency is N/A                , and the Federal Award date is
N/A                . If applicable, the Catalog of Federal Domestic Assistance (CFDA) Name is N/A
and Number is N/A            . The Catalog of State Financial Assistance (CSFA) Number is 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

1.4.    Term. This Agreement shall be effective on Nov 1, 2016        and shall expire on Jun 30, 2017        ,
unless terminated pursuant to this Agreement.

1.5.    Certification. Grantee certifies under oath that (1) all representations made in this Agreement
are true and correct and (2) all Grant Funds awarded pursuant to this Agreement shall be used only for the
purpose(s) described herein. Grantee acknowledges that the Award is made solely upon this certification and that
any false statements, misrepresentations, or material omissions shall be the basis for immediate termination of
this Agreement and repayment of all Grant Funds.

1.6.    Signatures. In witness whereof, the Parties hereto have caused this Agreement to be executed
by their duly authorized representatives.

[GRANTOR NAME]                                          [GRANTEE NAME]
ILLINOIS DEPARTMENT OF HUMAN SERVICES                   TAP IN LEADERSHIP ACADEMY
James T. Dimas, Secretary

By: _____ 28                         By: _____
    Signature of [Head of Grantor]                         Signature of Authorized Representative

By: _____                            Date: 11/4/2016
    Signature of Designee                               Printed Name: Sally K Carter

Date 11/29/16    M. Martin                              Printed Title: Chief Executive Officer

Printed Name: _____
Printed Title: Contract Obligation Analyst              E-mail: sally@tapinacademy.org
                Designee


By: _____                            FEIN: 37-3511477
    Signature of First Other Approver, if Applicable

Date: _____

Printed Name: _____

Printed Title: _____
                Other Approver

By: _____
    Signature of Second Other Approver, if Applicable

Date: _____

Printed Name: _____

Printed Title: _____
                Second Other Approver

Agreement No. FCSVR04547_____ FY. 2017

## ARTICLE II
## REQUIRED REPRESENTATIONS

2.1.    Standing and Authority. Grantee warrants that:

(a)    Grantee is duly organized, validly existing and in good standing under the laws of the State in which it was incorporated or organized.

(b)    Grantee has the requisite power and authority to execute and deliver this Agreement and all documents to be executed by it in connection with this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby.

(c)    If Grantee is organized under the laws of another jurisdiction, Grantee warrants that it is also duly qualified to do business in Illinois and is in good standing with the Illinois Secretary of State.

(d)    The execution and delivery of this Agreement, and the other documents to be executed by Grantee in connection with this Agreement, and the performance by Grantee of its obligations hereunder have been duly authorized by all necessary entity action.

(e)    This Agreement and all other documents related to this Agreement, including the Uniform Grant Application, the Exhibits and attachments to which Grantee is a party constitute the legal, valid and binding obligations of Grantee enforceable against Grantee in accordance with their respective terms.

2.2.    Compliance with Internal Revenue Code. Grantee certifies that it does and will comply with all provisions of the Federal Internal Revenue Code (26 USC 1), the Illinois Revenue Act (35 ILCS 5), and all rules promulgated thereunder, including withholding provisions and timely deposits of employee taxes and unemployment insurance taxes.

2.3.    Compliance with Federal Funding Accountability and Transparency Act of 2006. Grantee certifies that it does and will comply with the reporting requirements of the Federal Funding Accountability and Transparency Act of 2006 (P.L. 109-282) (FFATA) with respect to Federal Awards greater than or equal to $25,000. A FFATA sub-award report must be filed by the end of the month following the month in which the award was made.

2.4.    Compliance with Uniform Grant Rules (2 CFR Part 200). Grantee certifies that it shall adhere to the applicable Uniform Administrative Requirements, Cost Principles, and Audit Requirements, which are published in Title 2, Part 200 of the Code of Federal Regulations, and are incorporated herein by reference. See 44 Ill. Admin. Code 7000.30(b)(1)(A).

2.5.    Compliance with Registration Requirements. Grantee and its sub-grantees shall: (i) be registered with the Federal SAM if seeking an Award that is partially or fully paid by Federal funds, and registered with the State equivalent of SAM; (ii) be in good standing with the Illinois Secretary of State; and (iii) have a valid DUNS number. It is Grantee's responsibility to remain current with these registrations and requirements. If Grantee's status with regard to any of these requirements change, or the certifications made in and information provided in the Uniform Grant Application changes, Grantee must notify the Grantor in accordance with ARTICLE XVIII.

Agreement No. FCSVR04547_____ FY. 2017_

## ARTICLE III
## DEFINITIONS

3.1.    Definitions. Capitalized words and phrases used in this Agreement have the following meanings:

"2 CFR Part 200" means the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards published in Title 2, Part 200 of the Code of Federal Regulations.

"Agreement" or "Grant Agreement" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Allocable Costs" means costs allocable to a particular cost objective if the goods or services involved are chargeable or assignable to such cost objective in accordance with relative benefits received or other equitable relationship. Costs allocable to a specific Program may not be shifted to other Programs in order to meet deficiencies caused by overruns or other fund considerations, to avoid restrictions imposed by law or by the terms of this Agreement, or for other reasons of convenience.

"Allowable Costs" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Award" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Budget" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"CFDA" or "Catalog of Federal Domestic Assistance" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Close-out Report" means a report from the Grantee allowing the Grantor to determine whether all applicable administrative actions and required work have been completed, and therefore closeout actions can commence.

"Conflict of Interest" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Consolidated Financial Report" means a financial information presentation in which the assets, equity, liabilities, and operating accounts of an entity and its subsidiaries are combined (after eliminating all inter-entity transactions) and shown as belonging to a single reporting entity.

"Cost Allocation Plan" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"CSFA" or "Catalog of State Financial Assistance" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Direct Costs" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Disallowed Costs" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"DUNS Number" means a unique nine digit identification number provided by Dun & Bradstreet for each physical location of Grantee's organization. Assignment of a DUNS Number is mandatory for all organizations seeking an Award from the State of Illinois.

"FAIN" means the Federal Award Identification Number.

Agreement No. FCSVR04547          FY. 2017

"FFATA" or "Federal Funding Accountability and Transparency Act" has the same meaning as in 31 USC 6101; P.L. 110-252.

"Fixed-Rate" has the same meaning as in 44 Ill. Admin. Code 7000.20. "Fixed-Rate" is in contrast to fee-for-service, 44 Ill. Admin. Code 7000.20.

"GAAP" or "Generally Accepted Accounting Principles" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Grant Funds" has the same meaning as in 30 ILCS 705.

"Indirect Costs" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Indirect Cost Rate" means a device for determining in a reasonable manner the proportion of indirect costs each Program should bear. It is a ratio (expressed as a percentage) of the Indirect Costs to a Direct Cost base. If reimbursement of Indirect Costs is allowable under an Award, Grantor will not reimburse those Indirect Costs unless Grantee has established an Indirect Cost Rate covering the applicable activities and period of time, unless Indirect Costs are reimbursed at a fixed rate.

"Indirect Cost Rate Proposal" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Net Revenue" means an entity's total revenue less its operating expenses, interest paid, depreciation, and taxes. "Net Revenue" is synonymous with "Profit."

"Nonprofit Organization" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Notice of Award" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"OMB" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Prior Approval" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Profit" means an entity's total revenue less its operating expenses, interest paid, depreciation, and taxes. "Profit" is synonymous with "Net Revenue."

"Program" means the services to be provided pursuant to this Agreement.

"Program Costs" means all Allowable Costs incurred by Grantee and the value of the contributions made by third parties in accomplishing the objectives of the Award during the Term of this Agreement.

"Program Income" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Related Parties" has the meaning set forth in Financial Accounting Standards Board (FASB) Accounting Standards Codification (ASC) 850-10-20.

"SAM" means the federal System for Award Management (SAM); which is the Federal repository into which an entity must provide information required for the conduct of business as a recipient. 2 CFR 25 Appendix A (1)(C)(1).

Agreement No. FCSVR04547          FY. 2017

"State" means the State of Illinois.

"Term" has the meaning set forth in Paragraph1.4.

"Unallowable Costs" has the same meaning as in 44 Ill. Admin. Code 7000.20.

## ARTICLE IV
## PAYMENT

4.1.    Availability of Appropriation; Sufficiency of Funds. This Agreement is contingent upon and subject to the availability of sufficient funds. Grantor may terminate or suspend this Agreement, in whole or in part, without penalty or further payment being required, if (i) sufficient funds for this Agreement have not been appropriated or otherwise made available to the Grantor by the State or the Federal funding source, (ii) the Governor or Grantor reserves funds, or (iii) the Governor or Grantor determines that funds will not or may not be available for payment. Grantor shall provide notice, in writing, to Grantee of any such funding failure and its election to terminate or suspend this Agreement as soon as practicable. Any suspension or termination pursuant to this Section will be effective upon the date of the written notice unless otherwise indicated.

4.2.    Illinois Grant Funds Recovery Act. Any Grant Funds remaining at the end of the Agreement period which are not expended or legally obligated by Grantee shall be returned to Grantor within forty-five (45) days after the expiration of this Agreement in accordance with the Grant Funds Recovery Act (30 ILCS 705/1et seq.). In the event of a conflict between the Grant Funds Recovery Act and the Grant Accountability and Transparency Act, the provisions of the Grant Accountability and Transparency Act shall control. 30 ILCS 708/80.

4.3.    Cash Management Improvement Act of 1990. Unless notified otherwise in **PART TWO** or **PART THREE**, Federal funds received under this Agreement shall be managed in accordance with the Cash Management Improvement Act of 1990 (31 USC 6501et seq.) and any other applicable Federal laws or regulations.

4.4.    Payments to Third Parties. Grantee agrees to hold harmless Grantor when Grantor acts in good faith to redirect all or a portion of any Grantee payment to a third party. Grantor will be deemed to have acted in good faith if it is in possession of information that indicates Grantee authorized Grantor to intercept or redirect payments to a third party or when so ordered by a court of competent jurisdiction.

4.5.    Modifications to Estimated Amount. If the Agreement amount is established on an estimated basis, then it may be increased by mutual agreement at any time during the Term. Grantor may decrease the estimated amount of this Agreement at any time during the Term if (i) Grantor believes Grantee will not use the funds during the Term, (ii) Grantor believes Grantee has used funds in a manner that was not authorized by this Agreement, (iii) sufficient funds for this Agreement have not been appropriated or otherwise made available to the Grantor by the State or the Federal funding source, (iv) the Governor or Grantor reserves funds, or (v) the Governor or Grantor determines that funds will or may not be available for payment. Grantee will be notified, in writing, of any adjustment of the estimated amount of this Agreement. In the event of such reduction, services provided by Grantee under **Exhibit A** may be reduced accordingly. Grantee shall be paid for work satisfactorily performed prior to the date of the notice regarding adjustment. 2 CFR 200.308.

4.6.    Interest.

(a)    All interest earned on Grant Funds held by a Grantee shall become part of the Grant Funds when earned and be treated accordingly for all purposes, unless otherwise provided in **PART TWO**

Agreement No. FCSVR04547          FY. 2017

or **PART THREE**. 30 ILCS 705/10.

(b)      Grant Funds shall be placed in an insured account, whenever possible, that bears interest, unless exempted under 2 CFR Part 200.305(b)(8). All interest earned shall be considered Grant Funds and are subject to the same restrictions, unless there is an applicable Federal program rule that takes precedence.

(c)      A Grantee who is required to reimburse Grant Funds pursuant to an action brought under the Grant Funds Recovery Act, and who enters into a deferred payment plan for the purpose of satisfying a past due debt, shall be required to pay interest on such debt as required by Section 10.2 of the Illinois State Collection Act of 1986, 30 ILCS 210; *See also* 30 ILCS 705/10.

4.7.      Timely Billing Required. Grantee must submit any payment request to Grantor within thirty (30) days of the end of the quarter, unless another billing schedule is specified in **PART TWO** or **PART THREE**. Failure to submit such payment request timely will render the amounts billed an unallowable cost which Grantor cannot reimburse. In the event that Grantee is unable, for good cause, to submit its payment request timely, Grantee shall timely notify Grantor and may request an extension of time to submit the payment request. Grantor's approval of Grantee's request for an extension shall not be unreasonably withheld.

4.8.      Certification. Pursuant to 2 CFR 200.415, each invoice and report submitted by Grantee must contain the following certification by an official authorized to legally bind the Grantee:

> By signing this report [or payment request], I certify to the best of my
> knowledge and belief that the report [or payment request] is true, complete,
> and accurate, and the expenditures, disbursements and cash receipts are for
> the purposes and objectives set forth in the terms and conditions of the
> Federal or State award. I am aware that any false, fictitious, or fraudulent
> information, or the omission of any material fact, may subject me to criminal,
> civil or administrative penalties for fraud, false statements, false claims or
> otherwise. (U.S. Code Title 18, Section 1001 and Title 31, Sections 3729-3730
> and 3801-3812).

### ARTICLE V
### SCOPE OF GRANT ACTIVITIES/PURPOSE OF GRANT

5.1.      Scope of Grant Activities/Purpose of Grant. Grantee will conduct the Grant Activities or provide the services as described in the Exhibits and attachments, including **Exhibit A** (Project Description) and **Exhibit B** (Deliverables), incorporated herein and in accordance with all terms and conditions set forth herein and all applicable administrative rules. All Grantor-specific provisions and programmatic reporting required under this Agreement are described in **PART TWO** (The Grantor-Specific Terms). All Project-specific provisions and reporting required under this Agreement are described in **PART THREE**.

5.2.      Scope Revisions. Grantee shall obtain Prior Approval from Grantor whenever a Scope revision is necessary for one or more of the reasons enumerated in 2 CFR 200.308. All requests for Scope revisions that require Grantor approval shall be signed by Grantee's authorized representative and submitted to Grantor for approval. Expenditure of funds under a requested revision is prohibited and will not be reimbursed if expended before Grantor gives written approval. *See* 2 CFR 200.308.

5.3.    Specific Conditions. If applicable, specific conditions required after a risk assessment will be included in **Exhibit H.** Grantee shall adhere to the specific conditions listed therein.

## ARTICLE VI
## BUDGET

6.1.    Budget. The Budget is a schedule of anticipated grant expenditures that is approved by Grantor for carrying out the purposes of the Award. When Grantee or third parties support a portion of expenses associated with the Award, the Budget includes the non-Federal as well as the Federal share (and State share if applicable) of grant expenses. Within thirty (30) calendar days of execution of this Agreement, Grantee must submit to Grantor, via the Award's program manager, a proposed Budget, prepared in accordance with the template provided by Grantor. A decision indicating approval or disapproval of the proposed Budget shall be made by Grantor within sixty (60) calendar days after submission by Grantee. Once approved, a Budget, signed by Grantor staff, will be returned to Grantee.

6.2.    Budget Revisions. Grantee shall obtain Prior Approval from Grantor whenever a Budget revision is necessary for one or more of the reasons enumerated in 2 CFR 200.308. All requests for Budget revisions that require Grantor approval shall be signed by Grantee's authorized representative and submitted to Grantor for approval. Expenditure of funds under a requested revision is prohibited and will not be reimbursed if expended before Grantor gives written approval. 2 CFR 200.308.

6.3.    Discretionary Line Item Transfers. Unless prohibited from doing so in 2 CFR 200.308, transfers between approved line items may be made without Grantor's approval only if the total amount transferred does not exceed the allowable variance of the greater of either (I) ten percent (10%) of the Budget line item or (ii) one thousand dollars ($1,000) of the Budget line item.   Discretionary line item transfers may not result in an increase to the Budget.

6.4.    Non-discretionary Line Item Transfers. Total line item transfers exceeding the allowable variance of the greater of either (i) ten percent (10%) of the Budget line item or (ii) one thousand dollars ($1,000) of the Budget line item require Grantor approval as set forth in Paragraph6.2.

6.5.    Notification. Within thirty (30) calendar days from the date of receipt of the request for Budget revisions, Grantor will review the request and notify Grantee whether the Budget revision has been approved, denied, or the date upon which a decision will be reached.

## ARTICLE VII
## ALLOWABLE COSTS

7.1.    Allowability of Costs; Cost Allocation Methods. The allowability of costs and cost allocation methods for work performed under this Agreement shall be determined in accordance with 2 CFR 200 Subpart E and Appendices III, IV, and V.

7.2.    Indirect Cost Rate Submission.

(a)    This Paragraph 7.2 applies only to:

(i)    A Grantee who charges, or expects to charge, any Indirect Costs; and
(ii)    A Grantee who is allowed to charge Indirect Costs under federal or state

Agreement No. FCSVR04547        FY. 2017

statutes, state administrative rules, and agency or program rules, regulations and policies.

(b)     A Grantee must submit an Indirect Cost Rate Proposal in accordance with federal regulations for approval no later than three months after the effective date of the Award, in a format prescribed by Grantor.

(c)     A Grantee who has a current, applicable rate negotiated by a cognizant Federal agency shall provide to Grantor a copy of its Indirect Cost Rate acceptance letter from the Federal government. Grantor will accept that Indirect Cost Rate, up to any statutory, rule-based or programmatic limit.

7.3.     Transfer of Costs. Cost transfers between Grants, whether as a means to compensate for cost overruns or for other reasons, are unallowable. *See* 2 CFR 200.451.

7.4.     Higher Education Cost Principles. The Federal cost principles that apply to public and private institutions of higher education are set forth in 2 CFR Part 200 Subpart E and Appendix III.

7.5.     Nonprofit Organizations Cost Principles. The Federal cost principles that apply to Nonprofit Organizations that are not institutions of higher education are set forth in 2 CFR Part 200 Subpart E, unless exempt under 2 CFR 200 Appendix VIII.

7.6.     Government Cost Principles. The Federal cost principles that apply to State, local and Federally-recognized Indian tribal governments are set forth in 2 CFR Part 200 Subpart E, Appendix V, and Appendix VII.

7.7.     Commercial Organization Cost Principles. The Federal cost principles and procedures for cost analysis and the determination, negotiation and allowance of costs that apply to commercial organizations are set forth in 48 CFR Part 31.

7.8.     Financial Management Standards. The financial management systems of Grantee must meet the following standards:

(a)     **Accounting System**. Grantee organizations must have an accounting system that provides accurate, current, and complete disclosure of all financial transactions related to each State- and Federally-funded Program. Accounting records must contain information pertaining to State and Federal pass-through awards, authorizations, obligations, unobligated balances, assets, outlays, and income. These records must be maintained on a current basis and balanced at least quarterly. Cash contributions to the Program from third parties must be accounted for in the general ledger with other Grant Funds. Third party in-kind (non-cash) contributions are not required to be recorded in the general ledger, but must be under accounting control, possibly through the use of a memorandum ledger. *See* 2 CFR 200.302.

(b)     **Source Documentation**. Accounting records must be supported by such source documentation as canceled checks, bank statements, invoices, paid bills, donor letters, time and attendance records, activity reports, travel reports, contractual and consultant agreements, and subaward documentation. All supporting documentation should be clearly identified with the Award and general ledger accounts which are to be charged or credited.

(i)     The documentation standards for salary charges to grants are prescribed by 2 CFR 200.430, and in the cost principles applicable to the entity's organization (Paragraphs 7.4 through 7.7).

Agreement No. FCSVR04547_____    FY. 2017___

(ii)      If records do not meet the standards in 2 CFR 200.430, then Grantor may notify Grantee in **PART TWO**, **PART THREE** or **Exhibit H** of the requirement to submit Personnel activity reports. *See* 2 CFR 200.430(i)(8). Personnel activity reports shall account on an after-the-fact basis for one hundred percent (100%) of the employee's actual time, separately indicating the time spent on the grant, other grants or projects, vacation or sick leave, and administrative time, if applicable. The reports must be signed by the employee, approved by the appropriate official, and coincide with a pay period. These time records should be used to record the distribution of salary costs to the appropriate accounts no less frequently than quarterly.

(iii)      Formal agreements with independent contractors, such as consultants, must include a description of the services to be performed, the period of performance, the fee and method of payment, an itemization of travel and other costs which are chargeable to the agreement, and the signatures of both the contractor and an appropriate official of Grantee.

(iv)      If third party in-kind (non-cash) contributions are used for Grant purposes, the valuation of these contributions must be supported with adequate documentation.

(c)      **Internal Control**. Effective control and accountability must be maintained for all cash, real and personal property, and other assets. Grantee must adequately safeguard all such property and must provide assurance that it is used solely for authorized purposes. Grantee must also have systems in place that provide reasonable assurance that the information is accurate, allowable, and compliant with the terms and conditions of this Agreement.

(d)      **Budget Control**. Records of expenditures must be maintained for each Award by the cost categories of the approved Budget (including indirect costs that are charged to the Award), and actual expenditures are to be compared with Budgeted amounts at least quarterly.

(e)      **Cash Management**. Requests for advance payment shall be limited to Grantee's immediate cash needs. Grantee must have written procedures to minimize the time elapsing between the receipt and the disbursement of Grant Funds to avoid having excess funds on hand. 2 CFR 200.305.

7.9.      Federal Requirements. All Grants, whether funded in whole or in part with either Federal or State funds, are subject to Federal requirements and regulations, including but not limited to 2 CFR Part 200, 44 Ill. Admin. Code 7000.30(b) and the Financial Management Standards in Paragraph 7.8.

7.10.      Profits. It is not permitted for any person or entity to earn a Profit from an Award. *See, e.g.*, 2 CFR 200.400(g); *see also* 30 ILCS 708/60(a)(7).

7.11.      Management of Program Income.  Grantee is encouraged to earn income to defray program costs where appropriate, subject to 2 CFR 200.307.

### ARTICLE VIII
### REQUIRED CERTIFICATIONS

8.1.      Certifications. Grantee, its officers, and directors shall be responsible for compliance with the enumerated certifications to the extent that the certifications apply to Grantee.

(a)      **Bribery**. Grantee certifies that it has not been convicted of bribery or attempting to bribe an officer or employee of the State of Illinois, nor made an admission of guilt of such conduct which is a matter of record (30 ILCS 500/50-5).

Agreement No. FCSVR04547 _____ FY. 2017 _____

(b)      **Bid Rigging.** Grantee certifies that it has not been barred from contracting with a unit of State or local government as a result of a violation of Paragraph 33E-3 or 33E-4 of the Criminal Code of 1961 (720 ILCS 5/33E-3 or 720 ILCS 5/33E-4, respectively).

(c)      **Debt to State.** Grantee certifies that neither it, nor its affiliate(s), is/are barred from receiving an Award because Grantee, or its affiliate(s), is/are delinquent in the payment of any debt to the State, unless Grantee, or its affiliate(s), has/have entered into a deferred payment plan to pay off the debt, and Grantee acknowledges Grantor may declare the Agreement void if the certification is false (30 ILCS 500/50-11).

(d)      **Educational Loan.** Grantee certifies that it is not barred from receiving State agreements as a result of default on an educational loan (5 ILCS 385/1*et seq.*).

(e)      **International Boycott.** Grantee certifies that neither it nor any substantially owned affiliated company is participating or shall participate in an international boycott in violation of the provision of the U.S. Export Administration Act of 1979 (50 USC Appendix 2401*et seq.* or the regulations of the U.S. Department of Commerce promulgated under that Act (15 CFR Parts 730 through 774).

(f)      **Dues and Fees.** Grantee certifies that it is not prohibited from receiving an Award because it pays dues or fees on behalf of its employees or agents, or subsidizes or otherwise reimburses them for payment of their dues or fees to any club which unlawfully discriminates (775 ILCS 25/1*et seq.*).

(g)      **Pro-Children Act.** Grantee certifies that it is in compliance with the Pro-Children Act of 2001 in that it prohibits smoking in any portion of its facility used for the provision of health, day care, early childhood development services, education or library services to children under the age of eighteen (18), which services are supported by Federal or State government assistance (except such portions of the facilities which are used for inpatient substance abuse treatment) (20 USC 7181-7184).

(h)      **Drug-Free Work Place.** If Grantee is not an individual, Grantee certifies it will provide a drug free workplace pursuant to the Drug Free Workplace Act. 30 ILCS 580/3. If Grantee is an individual and this Agreement is valued at more than $5,000, Grantee certifies it shall not engage in the unlawful manufacture, distribution, dispensation, possession, or use of a controlled substance during the performance of the Agreement. 30 ILCS 580/4. Grantee further certifies that it is in compliance with the government-wide requirements for a drug-free workplace as set forth in 41 USC 8102.

(i)      **Motor Voter Law.** Grantee certifies that it is in full compliance with the terms and provisions of the National Voter Registration Act of 1993 (52 USC 20501*et seq.*).

(j)      **Clean Air Act and Clean Water Act.** Grantee certifies that it is in compliance with all applicable standards, order or regulations issued pursuant to the Clean Air Act (42 USC §7401*et seq.*) and the Federal Water Pollution Control Act, as amended (33 USC §1251*et seq.*).

(k)      **Debarment.** Grantee certifies that it is not debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this Agreement by any Federal department or agency (45 CFR Part 76), or by the State (*see* 30 ILCS 708/25(6)(G)).

(l)      **Non-procurement Debarment and Suspension.** Grantee certifies that it is in compliance with Subpart C of 2 CFR Part 180 as supplemented by 2 CFR Part 376, Subpart C.

Agreement No. FCSVR04547 FY. 2017

(m) **Grant for the Construction of Fixed Works.** Grantee certifies that all Programs for the construction of fixed works which are financed in whole or in part with funds provided by this Agreement shall be subject to the Prevailing Wage Act (820 ILCS 130/0.01*et seq.*) unless the provisions of that Act exempt its application. In the construction of the Program, Grantee shall comply with the requirements of the Prevailing Wage Act including, but not limited to, inserting into all contracts for such construction a stipulation to the effect that not less than the prevailing rate of wages as applicable to the Program shall be paid to all laborers, workers, and mechanics performing work under the Award and requiring all bonds of contractors to include a provision as will guarantee the faithful performance of such prevailing wage clause as provided by contract.

(n) **Health Insurance Portability and Accountability Act.** Grantee certifies that it is in compliance with the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Public Law No. 104-191, 45 CFR Parts 160, 162 and 164, and the Social Security Act, 42 USC 1320d-2 through 1320d-7, in that it may not use or disclose protected health information other than as permitted or required by law and agrees to use appropriate safeguards to prevent use or disclosure of the protected health information. Grantee shall maintain, for a minimum of six (6) years, all protected health information.

(o) **Criminal Convictions.** Grantee certifies that neither it nor any officer, director, partner or other managerial agent of Grantee has been convicted of a felony under the Sarbanes-Oxley Act of 2002, nor a Class 3 or Class 2 felony under Illinois Securities Law of 1953, or that at least five (5) years have passed since the date of the conviction. Grantee further certifies that it is not barred from receiving an Award under 30 ILCS 500/50-10.5, and acknowledges that Grantor shall declare the Agreement void if this certification is false (30 ILCS 500/50-10.5).

(p) **Forced Labor Act.** Grantee certifies that it complies with the State Prohibition of Goods from Forced Labor Act, and certifies that no foreign-made equipment, materials, or supplies furnished to the State under this Agreement have been or will be produced in whole or in part by forced labor, convict labor, or indentured labor under penal sanction (30 ILCS 583).

(q) **Illinois Use Tax.** Grantee certifies in accordance with 30 ILCS 500/50-12 that it is not barred from receiving an Award under this Paragraph. Grantee acknowledges that this Agreement may be declared void if this certification is false.

(r) **Environmental Protection Act Violations.** Grantee certifies in accordance with 30 ILCS 500/50-14 that it is not barred from receiving an Award under this Paragraph. Grantee acknowledges that this Agreement may be declared void if this certification is false.

(s) **Goods from Child Labor Act.** Grantee certifies that no foreign-made equipment, materials, or supplies furnished to the State under this Agreement have been produced in whole or in part by the labor of any child under the age of twelve (12) (30 ILCS 584).

(t) **Federal Funding Accountability and Transparency Act of 2006.** Grantee certifies that it is in compliance with the terms and requirements of 31 USC 6101.

**ARTICLE IX**
**CRIMINAL DISCLOSURE**

Agreement No. FCSVR04547          FY. 2017

9.1.    Mandatory Criminal Disclosures. Grantee shall continue to disclose to Grantor all violations of criminal law involving fraud, bribery or gratuity violations potentially affecting this Award. *See* 30 ILCS 708/40. Additionally, if Grantee receives over $10 million in total Grant Funds, funded by either State or Federal funds, during the period of this Award, Grantee must maintain the currency of information reported to SAM regarding civil, criminal or administrative proceedings as required by 2 CFR 200.113 and Appendix II of 2 CFR Part 200, and 30 ILCS 708/40.

## ARTICLE X
## UNLAWFUL DISCRIMINATION

10.1.    Compliance with Nondiscrimination Laws. Grantee, its employees and subcontractors under subcontract made pursuant to this Agreement, shall comply with all applicable provisions of State and Federal laws and regulations pertaining to nondiscrimination, sexual harassment and equal employment opportunity including, but not limited to, the following laws and regulations and all subsequent amendments thereto:

(a)    The Illinois Human Rights Act (775 ILCS 5/1-101 *et seq.*), including, without limitation, 44 Ill. Admin. Code Part 750, which is incorporated herein;

(b)    The Public Works Employment Discrimination Act (775 ILCS 10/1 *et seq.*);

(c)    The United States Civil Rights Act of 1964 (as amended) (42 USC 2000a- and 2000h-6). (*See also* guidelines to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons [Federal Register: February 18, 2002 (Volume 67, Number 13, Pages 2671-2685)]);

(d)    Section 504 of the Rehabilitation Act of 1973 (29 USC 794);

(e)    The Americans with Disabilities Act of 1990 (42 USC 12101 *et seq.*); and

(f)    The Age Discrimination Act (42 USC 6101 *et seq.*).

## ARTICLE XI
## LOBBYING

11.1.    Improper Influence. Grantee certifies that no Grant Funds have been paid or will be paid by or on behalf of Grantee to any person for influencing or attempting to influence an officer or employee of any government agency, a member of Congress or Illinois General Assembly, an officer or employee of Congress or Illinois General Assembly, or an employee of a member of Congress or Illinois General Assembly in connection with the awarding of any agreement, the making of any grant, the making of any loan, the entering into of any cooperative agreement, or the extension, continuation, renewal, amendment or modification of any agreement, grant, loan or cooperative agreement. 31 USC 1352. Additionally, Grantee certifies that it has filed the required certification under the Byrd Anti-Lobbying Amendment (31 USC 1352), if applicable.

11.2.    Federal Form LLL. If any funds, other than Federally-appropriated funds, were paid or will be paid to any person for influencing or attempting to influence any of the above persons in connection with this Agreement, the undersigned must also complete and submit Federal Form LLL, Disclosure of Lobbying Activities Form, in accordance with its instructions.

11.3.    Lobbying Costs. Grantee certifies that it is in compliance with the restrictions on lobbying set forth in 2 CFR Part 200.450. For any Indirect Costs associated with this Agreement, total lobbying costs shall be separately identified in the Program Budget, and thereafter treated as other Unallowable Costs.

11.4.    Procurement Lobbying. Grantee warrants and certifies that it and, to the best of its knowledge, its sub-grantees have complied and will comply with Executive Order No. 1 (2007) (EO 1-2007). EO 1-2007 generally prohibits Grantees and subcontractors from hiring the then-serving Governor's family members to lobby procurement activities of the State, or any other unit of government in Illinois including local governments, if that procurement may result in a contract valued at over $25,000. This prohibition also applies to hiring for that same purpose any former State employee who had procurement authority at any time during the one-year period preceding the procurement lobbying activity.

11.5.    Subawards. Grantee must include the language of this ARTICLE XI in the award documents for any subawards made pursuant to this Award at all tiers. All sub-awardees are also subject to certification and disclosure.  Pursuant to Appendix II(I) to 2 CFR Part 200, Grantee shall forward all disclosures by contractors regarding this certification to Grantor.

11.6.    Certification. This certification is a material representation of fact upon which reliance was placed to enter into this transaction and is a prerequisite for this transaction, pursuant to 31 USC 1352. Any person who fails to file the required certifications shall be subject to a civil penalty of not less than $10,000, and not more than $100,000, for each such failure.

### ARTICLE XII
### MAINTENANCE AND ACCESSIBILITY OF RECORDS; MONITORING

12.1.    Records Retention. Grantee shall maintain for three (3) years from the date of submission of the final expenditure report, adequate books, all financial records and, supporting documents, statistical records, and all other records pertinent to this Award, adequate to comply with 2 CFR 200.333, unless a different retention period is specified in 2 CFR 200.333. If any litigation, claim or audit is started before the expiration of the retention period, the records must be retained until all litigation, claims or audit exceptions involving the records have been resolved and final action taken.

12.2.    Accessibility of Records. Grantee, in compliance with 2 CFR 200.336, shall make books, records, related papers, supporting documentation and personnel relevant to this Agreement available to authorized Grantor representatives, the Illinois Auditor General, Illinois Attorney General, any Executive Inspector General, the Grantor's Inspector General, Federal authorities, any person identified in 2 CFR 200.336, and any other person as may be authorized by Grantor (including auditors), by the State of Illinois or by Federal statute. Grantee shall cooperate fully in any such audit.

12.3.    Failure to Maintain Books and Records. Failure to maintain books, records and supporting documentation, as described in this ARTICLE XII, shall establish a presumption in favor of the State for the recovery of any funds paid by the State under this Agreement for which adequate books, records and supporting documentation are not available to support disbursement.

12.4.    Monitoring and Access to Information. Grantee must monitor its activities to assure compliance with applicable State and Federal requirements and to assure its performance expectations are being achieved. Grantor shall monitor the activities of Grantee to assure compliance with all requirements and performance

expectations of the award. Grantee shall timely submit all financial and performance reports, and shall supply, upon Grantor's request, documents and information relevant to the Award. Grantor may make site visits as warranted by program needs. *See* 2 CFR 200.328 and 200.331. Additional monitoring requirements may be in **PART TWO** or **PART THREE**.

**ARTICLE XIII**
**FINANCIAL REPORTING REQUIREMENTS**

13.1.    Required Periodic Financial Reports. Grantee agrees to submit financial reports as requested and in the format required by Grantor. Grantee shall file quarterly reports with Grantor describing the expenditure(s) of the funds related thereto, unless more frequent reporting is required by the Grantee pursuant to specific award conditions. 2 CFR 200.207. The first of such reports shall cover the first three months after the Award begins. Quarterly reports must be submitted no later than 30 calendar days following the three month period covered by the report. Additional information regarding required financial reports may be set forth in **Exhibit H** . Failure to submit the required financial reports may cause a delay or suspension of funding. 30 ILCS 705/1*et seq.*; 2 CFR 207(b)(3) and 200.327.

13.2.    Close-out Reports.

(a)    Grantee shall submit a Close-out Report within 60 calendar days following the end of the period of performance for this Agreement. In the event that this Agreement is terminated prior to the end of the Term, Grantee shall submit a Close-out Report within 60 calendar days of such termination. The format of this Close-out Report shall follow a format prescribed by Grantor. 2 CFR 200.343.

(b)    If an audit or review of Grantee occurs and results in adjustments after Grantee submits a Close-out Report, Grantee will submit a new Close-out Report based on audit adjustments, and immediately submit a refund to Grantor, if applicable. 2 CFR 200.344.

13.3.    Annual Financial Reports.

(a)    This Paragraph 13.3 applies to all Grantees, unless exempted by **PART TWO** or **PART THREE**.

(b)    Grantees shall submit Annual Financial Reports within 180 days after the Grantee's fiscal year ending on or after June 30. This deadline may be extended at the discretion of the Grantor.

(c)    The Annual Financial Report must cover the same period the Audited Financial Statements cover. If no Audited Financial Statements are required, however, then the Annual Financial Report.must cover the same period as the Grantee's tax return.

(d)    Annual Financial Reports must include an in relation to opinion from the report issuer on the Cost and Revenue schedules included in the Annual Financial Report.

(e)    Annual Financial Reports shall follow a format prescribed by Grantor.

13.4.    Effect of Failure to Comply. Failure to comply with reporting requirements shall result in the withholding of funds, the return of improper payments or Unallowable Costs, will be considered a material breach of this Agreement and may be the basis to recover Grant Funds. Grantee's failure to comply with thisARTICLE XIII,

Agreement No. FCSVR04547_____ FY. 2017___

ARTICLE XIV, or ARTICLE XV shall be considered prima facie evidence of a breach and may be admitted as such, without further proof, into evidence in an administrative proceeding before Grantor, or in any other legal proceeding.

## ARTICLE XIV
### PERFORMANCE REPORTING REQUIREMENTS

14.1.    Required Periodic Performance Reports. Grantee agrees to submit Performance Reports as requested and in the format required by Grantor. Performance Measures listed in **Exhibit E** must be reported quarterly, unless otherwise specified in **PART TWO** or **PART THREE**. Unless so specified, the first of such reports shall cover the first three months after the Award begins. If Grantee is not required to report performance quarterly, then Grantee must submit a Performance Report at least annually. In unusual circumstances where more frequent reporting is necessary some Grantees may be required to submit monthly Performance Reports; in such cases, Grantor shall notify Grantee of same in **PART TWO** or **PART THREE**. Pursuant to 2 CFR 200.328, periodic Performance Reports shall be submitted no later than 30 calendar days following the period covered by the report. For certain construction-related Awards, such reports may be exempted as identified in **PART TWO** or **PART THREE**. 2 CFR 200.328. Failure to submit such required Performance Reports may cause a delay or suspension of funding. 30 ILCS 705/1 *et seq.*

14.2.    Close-out Performance Reports. Grantee agrees to submit a Close-out Performance Report, in the format required by Grantor, within 60 calendar days following the end of the period of performance. *See* 2 CFR 200.343.

14.3.    Content of Performance Reports. Pursuant to 2 CFR 200.328(b)(2) all Performance Reports must include Program qualitative and quantitative information, including a comparison of actual accomplishments to the objectives of the award established for the period; where the accomplishments can be quantified, a computation of the cost if required; performance trend data and analysis if required; and reasons why established goals were not met, if appropriate. Appendices may be used to include additional supportive documentation. Additional content and format guidelines for the Performance Reports will be determined by Grantor contingent on the Award's statutory, regulatory and administrative requirements, and are included in **PART TWO** or **PART THREE** of this Agreement.

14.4.    Performance Standards. Grantee shall perform in accordance with the Performance Standards set forth in **Exhibit F**. *See* 2 CFR 200.301 and 200.210.

## ARTICLE XV
### AUDIT REQUIREMENTS

15.1.    Audits. Grantee shall be subject to the audit requirements contained in the Single Audit Act Amendments of 1996 (31 USC 7501-7507) and Subpart F of 2 CFR Part 200, and the audit rules set forth by the Governor's Office of Management and Budget. *See* 30 ILCS 708/65(c).

15.2.    Single and Program-Specific Audits. If Grantee expends $750,000 or more in Federal Awards (direct federal and federal pass-through awards combined) during its fiscal year, it must have a single audit or program-specific audit conducted for that year as required in 2 CFR 200.501 and other applicable sections of Subpart F. The audit and reporting package (including data collection form) must be completed as described in 2 CFR 200.512 (single audit) or 2 CFR 200.507 (Program-specific audit). The audit (and package) must be submitted

Agreement No. FCSVR04547_____ FY. 2017__

to Grantor either within (i) 30 calendar days after receipt of the auditor's report(s) or (ii) nine months after the end of the audit period, whichever is earlier.

15.3.    Financial Statement Audit. If Grantee expends less than $750,000 in Federal Awards during its fiscal year and is not subject to the audit requirements in15.2, but receives between $300,000 and $499,999 in Federal and State Awards combined, Grantee must have a financial statement audit conducted in accordance with Generally Accepted Auditing Standards(GAAS); if Grantee expends between $500,000 and $749,999 in Federal and State awards combined, Grantee must have a financial statement audit conducted in accordance with Generally Accepted Government Auditing Standards (GAGAS).  Grantee shall submit these financial statement audit reports to Grantor either within (i) 30 calendar days after receipt of the auditor's report(s) or (ii) 180 calendar days after the end of the audit period, whichever is earlier.

15.4.    For Profit Entities. A For-Profit entity that expends $750,000 or more in Federal Awards (direct federal and federal pass-through awards combined) during its fiscal year is required to have a Program-specific audit conducted in accordance with 2 CFR 200.507.  The Program-specific audit must be completed and the reporting required by 2 CFR 200.507 must be submitted to Grantor either within (i) 30 calendar days after receipt of the auditor's report(s) or (ii) nine months after  the end of the audit period, whichever is earlier. A For-Profit entity that expends less than $750,000 in Federal Awards during its fiscal year, but receives between $300,000 and $499,999 in Federal and State Awards combined must have a financial statement audit conducted in accordance with Generally Accepted Auditing Standards (GAAS); a For-Profit entity that expends between $500,000 and $749,999 in Federal and State awards combined must have a financial statement audit conducted in accordance with Generally Accepted Government Auditing Standards (GAGAS).  The For-Profit entity shall submit these financial statement audit reports to Grantor either within (i) 30 calendar days after receipt of the auditor's report(s) or (ii) 180 calendar days after the end of the audit period, whichever is earlier.

15.5.    Performance of Audits. For those organizations required to submit an independent audit report, the audit is to be conducted by a Certified Public Accountant or Certified Public Accounting Firm licensed in the State of Illinois. For audits required to be performed subject to Generally Accepted Government Auditing Standards, Grantee shall request and maintain on file a copy of the auditor's most recent peer review report and acceptance letter.

ARTICLE XVI
TERMINATION; SUSPENSION

16.1.    Termination.

(a)    This Agreement may be terminated, in whole or in part, by either Party for any or no reason upon thirty (30) days' prior written notice to the other Party.  If terminated by the Grantee, Grantee must include the reasons for such termination, the effective date, and, in the case of a partial termination, the portion to be terminated.  If Grantor determines in the case of a partial termination that the reduced or modified portion of the Award will not accomplish the purposes for which the Award was made, Grantor may terminate the Agreement in its entirety.  2 CFR 200.339(a)(4).

(b)    This Agreement may be terminated, in whole or in part, by Grantor without advance notice:

(i)    Pursuant to a funding failure under Paragraph4.1;

Agreement No. FCSVR04547_____    FY. 2017___

    (ii)    If Grantee fails to comply with the terms and conditions of this or any Award, application or proposal, including any applicable rules or regulations, or has made a false representation in connection with the receipt of this or any Grant;

    (iii)    For cause, which may render the Grantee ineligible for consideration for future grants from the Grantor or other State agencies; or

    (iv)    If Grantee breaches this Agreement and either (1) fails to cure such breach within 15 calendar days' written notice thereof, or (2) if such cure would require longer than 15 calendar days and the Grantee has failed to commence such cure within 15 calendar days' written notice thereof. In the event that Grantor terminates this Agreement as a result of the breach of the Agreement by Grantee, Grantee shall be paid for work satisfactorily performed prior to the date of termination.

16.2.    Suspension. Grantor may suspend this Agreement, in whole or in part, pursuant to a funding failure under Paragraph 4.1 or if the Grantee fails to comply with terms and conditions of this or any Award. If suspension is due to Grantee's failure to comply, Grantor may withhold further payment and prohibit Grantee from incurring additional obligations pending corrective action by Grantee or a decision to terminate this Agreement by Grantor. Grantor may determine to allow necessary and proper costs that Grantee could not reasonably avoid during the period of suspension.

16.3.    Objection. If Grantor suspends or terminates this Agreement, in whole or in part, for cause, Grantee may avail itself of any opportunities to object and challenge such suspension or termination in accordance with any applicable written processes and procedures. 2 CFR 200.341.

16.4.    Effects of Suspension and Termination.

    (a)    Grantor may credit Grantee for expenditures incurred in the performance of authorized services under this Agreement prior to the effective date of a suspension or termination.

    (b)    Grantee shall not incur any costs or obligations that require the use of these Grant Funds after the effective date of a suspension or termination, and shall cancel as many outstanding obligations as possible.

    (c)    Costs to Grantee resulting from obligations incurred by Grantee during a suspension or after termination of the Agreement are not allowable unless:

    i.    Grantor expressly authorizes them in the notice of suspension or termination; and

    ii.    The costs result from obligations properly incurred before the effective date of suspension or termination, are not in anticipation of the suspension or termination, and the costs would be allowable if the Agreement was not suspended or terminated. 2 CFR 200.342.

16.5.    Close-out of Terminated Agreements. If this Agreement is terminated, in whole or in part, the Parties shall comply with all close-out and post-termination requirements of this Agreement. 2 CFR 200.339(c).

**ARTICLE XVII**

State Of Illinois-Department of Human Services.
GRANT AGREEMENT FISCAL YEAR 2017 / 6 8 16
Published Revision :    2016.11.03.08.49.55 58
Page: 18    of    53

Agreement No. FCSVR04547        FY. 2017

## SUBCONTRACTS/SUB-GRANTS

17.1.    Sub-recipients/Delegation. Grantee may not subcontract nor sub-grant any portion of this Agreement nor delegate any duties hereunder without Prior Approval of Grantor. The requirement for Prior Approval is satisfied if the subcontractor or sub-grantee has been identified in the Uniform Grant Application, such as, without limitation, a Project Description, and Grantor has approved.

17.2.    Application of Terms.  Grantee shall advise any sub-grantee of funds awarded through this Agreement of the requirements imposed on them by Federal and State laws and regulations, and the provisions of this Agreement.

## ARTICLE XVIII
## NOTICE OF CHANGE

18.1.    Notice of Change. Grantee shall notify the Grantor if there is a change In Grantee's legal status, Federal employer identification number (FEIN), DUNS number, SAM registration or the state equivalent registration status, Related Parties, senior management, or address.See 30 ILCS 708/60(a). If the change is anticipated, Grantee shall give thirty (30) days' prior written notice to Grantor. If the change is unanticipated, Grantee shall give notice as soon as practicable thereafter.  Grantor reserves the right to take any and all appropriate action as a result of such change(s).

18.2.    Failure to Provide Notification. Grantee shall hold harmless Grantor for any acts or omissions of Grantor resulting from Grantee's failure to notify Grantor of these changes.

18.3.    Notice of Impact. Grantee shall immediately notify Grantor of any event that may have a material impact on Grantee's ability to perform this Agreement.

18.4.    Circumstances Affecting Performance; Notice. In the event Grantee becomes a party to any litigation, investigation or transaction that may reasonably be considered to have a material impact on Grantee's ability to perform under this Agreement, Grantee shall notify Grantor, in writing, within five (5) calendar days of determining such litigation or transaction may reasonably be considered to have a material impact on the Grantee's ability to perform under this Agreement.

18.5.    Effect of Failure to Provide Notice. Failure to provide the notice described in Paragraph18.4 shall be grounds for immediate termination of this Agreement and any costs incurred after notice should have been given shall be disallowed.

## ARTICLE XIX
## REORGANIZATION AND BOARD MEMBERSHIP

19.1.    Effect of Reorganization. Grantee acknowledges that this Agreement is made by and between Grantor and Grantee, as Grantee is currently organized and constituted. No promise or undertaking made hereunder is an assurance that Grantor agrees to continue this Agreement, or any license related thereto, should Grantee reorganize or otherwise substantially change the character of its corporate structure, business structure or governance structure. Grantee agrees that it will give Grantor prior notice of any such action and will provide any and all reasonable documentation necessary for Grantor to review the proposed transaction including financial records and corporate and shareholder minutes of any corporation which may be involved. Failure to comply with

Agreement No. FCSVR04547          FY. 2017

this ARTICLE XIX shall constitute a material breach of this Agreement.

## ARTICLE XX
### AGREEMENTS WITH OTHER STATE AGENCIES

20.1.    Agreement Disclosure. Grantee shall fully disclose, in **Exhibit G** , all contracts and other agreements to which it is a party or it anticipates entering into within one month after the effective date of this Award with any other State agency.  For each contract or agreement, Grantee shall indicate:

> (a)    The name of the State agency;

> (b)    The number of the contract(s) or other agreement(s);

> (c)    The estimated amount of the contract(s) or other agreement(s);

> (d)    The term of the contract(s) or other agreement(s); and

> (e)    The nature or purpose of the contract(s) or other agreement(s).

If Grantee has multiple Agreements with Grantor for the same fiscal year, Grantee only needs to supplement its previously submitted **Exhibit G.**

20.2.    Copies upon Request. Grantee shall, upon request by Grantor, provide Grantor with copies of contracts or other agreements to which Grantee is a party with any other State agency.

## ARTICLE XXI
### CONFLICT OF INTEREST

21.1.    Required Disclosures. Grantee must immediately disclose in writing any potential or actual Conflict of Interest to the Grantor. 2 CFR 200.112 and 44 Ill. Admin. Code 7000.40(b)(3).

21.2.    Prohibited Payments. Grantee agrees that payments made by Grantor under this Agreement will not be used to compensate, directly or indirectly, any person: (1) currently holding an elective office in this State including, but not limited to, a seat in the General Assembly, or (2) employed by an office or agency of the State of Illinois whose annual compensation is in excess of sixty percent (60%) of the Governor's annual salary, or $106,447.20 (30 ILCS 500/50-13).

21.3.    Request for Exemption. Grantee may request written approval from Grantor for an exemption from Paragraph 21.2. Grantee acknowledges that Grantor is under no obligation to provide such exemption and that Grantor may, if an exemption is granted, grant such exemption subject to such additional terms and conditions as Grantor may require.

## ARTICLE XXII
### EQUIPMENT OR PROPERTY

22.1.    Transfer of Equipment. Grantor shall have the right to require that Grantee transfer to Grantor

Agreement No. FCSVR04547          FY. 2017

any equipment, including title thereto, purchased in whole with Grantor funds, if Grantor determines that Grantee has not met the conditions of 2 CFR 200.439(a). Grantor shall notify Grantee in writing should Grantor require the transfer of such equipment. Upon such notification by Grantor, and upon receipt or delivery of such equipment by Grantor, Grantee will be deemed to have transferred the equipment to Grantor as if Grantee had executed a bill of sale therefor.

22.2.    Prohibition against Disposition/Encumbrance. The Grantee is prohibited from, and may not sell; transfer, encumber (other than original financing) or otherwise dispose of said equipment, material, or real property during the Grant Term without Prior Approval of Grantor.  Any real property acquired using Grant Funds must comply with the requirements of 2 CFR 200.311.

22.3.    Equipment and Procurement. Grantee must comply with the uniform standards set forth in 2 CFR 200.310–200.316 governing the management and disposition of property which cost was supported by Grant Funds. Any waiver from such compliance must be granted by either the President's Office of Management and Budget, the Governor's Office of Management and Budget, or both, depending on the source of the Grant Funds used. Additionally, Grantee must comply with the standards set forth in 2 CFR 200.317-200.326 for use in establishing procedures for the procurement of supplies and other expendable property, equipment, real property and other services with Grant Funds. These standards are furnished to ensure that such materials and services are obtained in an effective manner and in compliance with the provisions of applicable Federal and State statutes and executive orders.

## ARTICLE XXIII
## PROMOTIONAL MATERIALS; PRIOR NOTIFICATION

23.1.    Publications, Announcements, etc. Use of Grant Funds for promotions is subject to the prohibitions for advertising or public relations costs in 2 CFR 200.421(e). In the event that Grantor funds are used in whole or in part to produce any written publications, announcements, reports, flyers, brochures or other written materials, Grantee agrees to include in these publications, announcements, reports, flyers, brochures and all other such material, the phrase "Funding provided in whole or in part by the [Grantor]." Exceptions to this requirement must be requested, in writing, from Grantor and will be considered authorized only upon written notice thereof to Grantee.

23.2.    Prior Notification/Release of Information. Grantee agrees to notify Grantor ten (10) days prior to issuing public announcements or press releases concerning work performed pursuant to this Agreement, or funded in whole or in part by this Agreement, and to cooperate with Grantor in joint or coordinated releases of information.

## ARTICLE XXIV
## INSURANCE

24.1.    Purchase and Maintenance of Insurance. Grantee shall maintain in full force and effect during the Term of this Agreement casualty and bodily injury insurance, as well as insurance sufficient to cover the replacement cost of any and all real or personal property, or both, purchased or, otherwise acquired, or improved in whole or in part, with funds disbursed pursuant to this Agreement.  2 CFR 200.310.  Additional insurance requirements may be detailed in **PART TWO** or **PART THREE**.

24.2.    Claims. If a claim is submitted for real or personal property, or both, purchased in whole with

Agreement No. FCSVR04547_____ FY. 2017___

funds from this Agreement and such claim results in the recovery of money, such money recovered shall be surrendered to Grantor.

## ARTICLE XXV
## LAWSUITS AND INDEMNIFICATION

25.1.    Independent Contractor. Grantee is an independent contractor under this Agreement and neither Grantee nor any employee or agent of Grantee is an employee of Grantor or the State of Illinois by virtue of this Agreement. Grantee will provide the agreed services and achieve the specified results free from the direction or control of Grantor as to the means and methods of performance. Grantee will be required to provide its own equipment and supplies necessary to conduct its business; provided, however, that in the event, for its convenience or otherwise, Grantor makes any such equipment or supplies available to Grantee, Grantee's use of such equipment or supplies provided by Grantor pursuant to this Agreement shall be strictly limited to official Grantor or State of Illinois business and not for any other purpose, including any personal benefit or gain.

25.2.    Indemnification. To the extent permitted by law, Grantee agrees to hold harmless Grantor against any and all liability, loss, damage, cost or expenses, including attorneys' fees, arising from the intentional torts, negligence or breach of contract of Grantee, with the exception of acts performed in conformance with an explicit, written directive of Grantor. Indemnification by Grantor will be governed by the State Employee Indemnification Act (5 ILCS 350/1 et seq.) as interpreted by the Illinois Attorney General. Grantor makes no representation that Grantee, an independent contractor, will qualify or be eligible for indemnification under said Act.

## ARTICLE XXVI
## MISCELLANEOUS

26.1.    Gift Ban. Grantee is prohibited from giving gifts to State employees pursuant to the State Officials and Employees Ethics Act (5 ILCS 430/10-10) and Executive Order 15-09.

26.2.    Access to Internet. Grantee must have Internet access. Internet access may be either dial-up or high-speed. Grantee must maintain, at a minimum, one business e-mail address that will be the primary receiving point for all e-mail correspondence from Grantor. Grantee may list additional e-mail addresses at any time during the Term of this Agreement. The additional addresses may be for a specific department or division of Grantee or for specific employees of Grantee. Grantee must notify Grantor of any e-mail address changes within five (5) business days from the effective date of the change.

26.3.    Exhibits and Attachments. Exhibits A through H, PART TWO, PART THREE, if applicable, and all other exhibits and attachments hereto are incorporated herein in their entirety.

26.4.    Assignment Prohibited. Grantee acknowledges that this Agreement may not be sold, assigned, or transferred in any manner by Grantee, to include an assignment of Grantee's rights to receive payment hereunder, and that any actual or attempted sale, assignment, or transfer by Grantee without the Prior Approval of Grantor in writing shall render this Agreement null, void and of no further effect.

26.5.    Amendments. This Agreement may be modified or amended at any time during its Term by

Agreement No. FCSVR04547          FY. 2017

mutual consent of the Parties, expressed in writing and signed by the Parties.

26.6.   Severability. If any provision of this Agreement is declared invalid, its other provisions shall not be affected thereby.

26.7.   No Waiver. No failure of Grantor to assert any right or remedy hereunder will act as a waiver of its right to assert such right or remedy at a later time or constitute a course of business upon which Grantee may rely for the purpose of denial of such a right or remedy to Grantor.

26.8.   Applicable Law; Claims. This Agreement and all subsequent amendments thereto, if any, shall be governed and construed in accordance with the laws of the State of Illinois. Any claim against Grantor arising out of this Agreement must be filed exclusively with the Illinois Court of Claims. 705 ILCS 505/1et seq. Grantor does not waive sovereign immunity by entering into this Agreement.

26.9.   Compliance with Law. This Agreement and Grantee's obligations and services hereunder are hereby made and must be performed in compliance with all applicable Federal and State laws, including, without limitation, Federal regulations, State administrative rules, including 44 Ill. Admin. Code 7000, and any and all license requirements or professional certification provisions.

26.10.   Compliance with Confidentiality Laws. If applicable, Grantee shall comply with applicable State and Federal statutes, Federal regulations and Grantor administrative rules regarding confidential records or other information obtained by Grantee concerning persons served under this Agreement. The records and information shall be protected by Grantee from unauthorized disclosure.

26.11.   Compliance with Freedom of Information Act. Upon request, Grantee shall make available to Grantor all documents in its possession that Grantor deems necessary to comply with requests made under the Freedom of Information Act. (5 ILCS 140/7(2)).

26.12.   Precedence. In the event there is a conflict between this Agreement and any of the exhibits or attachments hereto, this Agreement shall control. In the event there is a conflict between **PART ONE** and **PART TWO** or **PART THREE** of this Agreement, **PART ONE** shall control. In the event there is a conflict between **PART TWO** and **PART THREE** of this Agreement, **PART TWO** shall control. In the event there is a conflict between this Agreement and relevant statute(s) or Administrative Rule(s), the relevant statute(s) or rule(s) shall control.

26.13.   Headings. Article and other headings contained in this Agreement are for reference purposes only and are not intended to define or limit the scope, extent or intent of this Agreement or any provision hereof.

26.14.   Entire Agreement. Grantee and Grantor acknowledge that this Agreement constitutes the entire agreement between them and that no promises, terms, or conditions not recited, incorporated or referenced herein, including prior agreements or oral discussions, shall be binding upon either Grantee or Grantor.

26.15.   Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be considered to be one and the same agreement, binding on all Parties hereto, notwithstanding that all Parties are not signatories to the same counterpart. Duplicated signatures, signatures transmitted via facsimile, or signatures contained in a Portable Document Format (PDF) document shall be deemed original for all purposes.

26.16.   Attorney Fees and Costs. If Grantor prevails in any proceeding to enforce the terms of this Agreement, including any administrative hearing pursuant to the Grant Funds Recovery Act or the Grant Accountability and Transparency Act, the Grantor has the right to recover reasonable attorneys' fees, costs and

Agreement No. FCSVR04547          FY. 2017

expenses associated with such proceedings.

**THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.**

Agreement No. FCSVR04547          FY. 2017

# EXHIBIT A
## PROJECT DESCRIPTION

FEDERAL PROGRAM NAME:
STATE PROGRAM NAME: COMMUNITY YOUTH EMPLOYMENT PROGRAM
                    PURPOSE OF GRANT

CSFA Number: 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
Appropriation FY: 2017
Appropriation Code: 8064444YE
Appropriation Desc: Youth Employment Programs
Appropriation Amount: $1,180,758.62
Use by DHS as Maintenance of Effort (MOE): No
Use by DHS as Matching Funds: No
CFDA:  · CFDA Name: N/A
FAIN Number: N/A · FAIN Award Agency: N/A
FAIN Award Date: N/A

Exhibit A
The Community Youth Employment Program (CYEP) is a year round grant program that requires
a holistic approach to unsubsidized employment for transition-age youth (16-24). This
approach will account for the youth's physical, emotional, social, and mental health needs
while helping them to secure and sustain employment and/or achieve higher education
ensuring a greater likelihood of success and self-sufficiency. In an effort to foster
healthy, safe, well-educated, and self-sufficient transition-age youth in Illinois, the
Department of Human Services (DHS) has made this a year round grant program to provide
eligible youth with educational enhancement opportunities, full and part-time job
placements, and case management services to include life skills, counseling and work
readiness for both in-school and out-of-school youth.

Creating a path forward for transition-aged youth requires a holistic approach that
considers all aspects of the youth's realities and needs including both employment and
education. For youth to successfully connect into the employment and education world
there needs to be access to support that is comprehensive and coordinated including
addressing an array of basic needs such as housing, healthcare, childcare, transportation,
legal support, and connection to the community.

Services must also be developmentally appropriate and tailored to address the unique needs
of the youth. Research on adolescent brain development finds that executive functioning
and self-regulation skills are not fully developed until youth are in their mid-twenties.
These are the critical skills that enable us to plan, focus attention, remember
instructions, and juggle multiple tasks successfully. The brain needs this skill set to
filter distractions, prioritize tasks, set and achieve goals, and control impulses. CYEP
program models must consider these facts when designing how youth will be served in their
programs. These youth have unique strengths and challenges that must be embraced as part

Agreement No. FCSVR04547          FY. 2017

**EXHIBIT A**

of their preparation for education and employment opportunities.  A developmentally appropriate approach will help to build the protective factors that foster resiliency and increase long-term success.

Once the right services and support are in place, it is essential that youth are placed in long-term employment opportunities that meet their developmental skill level and put them on a path to improved education and economic self-sufficiency.

------ END OF PROGRAM: COMMUNITY YOUTH EMPLOYMENT PROGRAM ------

Agreement No. FCSVR04547        FY. 2017

## EXHIBIT B
## DELIVERABLES OR MILESTONES

Exhibit B
The Provider shall provide a Community Youth Program in accordance with applicable Statutes, Rules, this grant agreement and the BYIS Program Manual.  Provider program responsibilities include, but are not limited to, the following:

Provide a year round grant program utilizing a holistic approach to unsubsidized employment for transition-age youth (16-24).  The approach must account for the youth's physical, emotional, social, and mental health needs while helping them to secure and sustain employment and achieve higher education ensuring a greater likelihood of success and self-sufficiency.  In an effort to foster healthy, safe, well-educated, and self-sufficient transition-age youth in Illinois this a year round grant program will provide eligible youth with educational enhancement opportunities, full and part-time job placements, and case management services that will include life skills, counseling and work readiness for both in-school and out-of-school youth.

All projects must provide case management, supportive services, work readiness skills training; career education that is focused on Illinois' targeted industries and career clusters; job placement and targeted employment opportunities for all youth.

Eligible Youth Participants
The target population to be served through this grant is in-school youth ages 16-24, or out of school youth ages 16-24 who are served in or meet one or more of the following:
A.National School Lunch Program / Free & Reduced Lunch Program
B.Supplemental Nutrition Assistance Program (SNAP)
C.Temporary Assistance for Needy Families (TANF)
D.Other risk factors:
oAt risk of involvement or further involvement in the criminal or juvenile justice system, including ex-offenders
oAt risk of involvement in the child welfare system
oAt risk of education failure  (includes risk due to social conditions)
oEducation failure (Dropped Out, Expelled, etc., no GED)
oYouth with no work experience or a history of employment failure
oHomeless youth
oYouth with a disability
oFamily income does not exceed 185% of the Federal Poverty Level (FPL)

Participants must include documentation to support the above eligibility requirements as well as the following:
•Illinois residency
•Completion of an I9 Form: http://www.uscis.gov/files/form/i-9.pdf

In-School youth are those youth actively pursuing their high school diploma or GED.

Agreement No. FCSVR04547          FY. 2017

**EXHIBIT B**

Out-of-School youth are those youth that have already acquired their high school diploma or GED. NOTE: Out-of-school youth that are not actively engaged in pursuing their high school diploma or GED may still be eligible for the program. These youth must actively re-engage in the pursuit of their Diploma or GED.

Employment Placements
Based on the identified targeted population (in-school or out of school youth ages 16-24) the provider will design the program in accordance with the information outlined below:

A.Part-Time Employment for In-School Youth (ages 16-24)
Projects targeting in-school youth will provide part-time employment opportunities. Eligible youth will be placed in age-appropriate, ability-appropriate, and experience-appropriate employment linked to one of the sixteen career clusters identified below. The objective for in-school youth served is sustained, unsubsidized part-time employment. This may be accomplished by directly placing and supporting youth in unsubsidized employment, or through an agreement with the employer to partially subsidize the youth's wage for a period not to exceed 6 months. This grant will typically be used to subsidize 3 to 6 months of part-time employment. In-School youth are those youth actively pursuing their high school diploma or GED.

B.Full-Time Employment for Out-of-School Youth (ages 16-24)
Projects targeting in-school youth will provide full-time employment opportunities. Eligible youth will be placed in age-appropriate, ability-appropriate, and experience-appropriate employment linked to one of the sixteen career clusters identified below. The objective for out-of-school youth served is sustained, unsubsidized full-time employment. This may be accomplished by directly placing and supporting youth in unsubsidized employment, or through an agreement with the employer to partially subsidize the youth's wage for a period not to exceed 6 months. This grant will typically be used to subsidize 3 to 6 months of full-time employment. Out-of-School youth are those youth that have already acquired their high school diploma or GED.

NOTE: Out-of-school youth that are not actively engaged in pursuing their high school diploma or GED may still be eligible for the program. These youth must actively re-engage in the pursuit of their Diploma or GED.

Project Commitments
A.Community Youth Employment providers will meet all program requirements including requirements to:
1.Operate a year round project to address career and educational needs of youth while providing the necessary supports for success in these areas.
2.Register all youth in Illinois workNet as directed by the Department.
3.Provide work readiness activities/opportunities for youth.

Agreement No. FCSVR04547 _____    FY. 2017 __

**EXHIBIT B**

4.In school youth will be targeted for part-time employment while out of school youth
will be targeted for full time employment or education and part-time employment.
5.Provide employment placements for enrolled youth.
6.Have administrative and fiscal capacity to administer the program according to the
Department's requirements.
7.When the youth's wage is being temporarily subsidized by the grant, the provider may
assume the role of employer of record for the employed youth and process a payroll request
every two weeks (or twice monthly) during this subsidized period if this is formally
agreed to in writing by both the employer and provider and the job meets all of the
following criteria:
oThe job being subsidized is an actual full or part-time job.
oThe position is at an official job site of the employer.
oThe position is a formal position, with a corresponding job description, within the
employer organization.
oThe youth's wage is at least minimum wage.
oThe subsidy does not exceed minimum wage.
oThe youth's immediate supervisor is employed by the employer and not the provider.
oIf applicable, the written agreement between the provider and the employer will detail
the transition of "employer of record" to the employer immediately following the
subsidized period of employment.
oThe written agreement further delineates the conditions and terms of successful
probationary employment, thereby ensuring that when these terms & conditions are met, the
youth's employment will continue under the employer alone.
8.Conduct outreach to identify eligible youth participants and partner with local
organizations for referrals to the program.
9.Establish and maintain cooperative relationship with local DHS Family & Community
Resource Center (FCRC) offices in the service area to ensure eligible youth referred by
FCRCs are enrolled in the program.
10.Potentially eligible Non-FCRC referred youth 18 and older will be encouraged to apply
through ABE to determine potential benefit eligibility and the provider will provide
assistance as necessary with that application process.
11.Establish proper eligibility documentation for each youth participant including a
signed I9 prior to placing in employment. A file that includes the eligibility
documentation must be maintained for each youth participant.
12.Ensure that the youth targeted and served are reflective of the service area and the
need presented. In the presence of gender, ethnic and/or racial disparity, the program
must work to reduce that disparity.
13.Ensure standardized youth assessments are completed as necessary to inform case plan.
14.Develop an individualized case plan for the youth that will consider at a minimum the
following:
oCurrent educational needs
oShort and Long term Career Educational planning

Agreement No. FCSVR04547 _____ FY. 2017

**EXHIBIT B**

oEmployment readiness and capacity
oShort & long term Career Employment planning
oBarriers to education & employment
oHousing Barriers
oLife Skills needs (age appropriate) based on an assessment – to include:

Daily Living
•Food/Nutrition
•Home Cleanliness
•Home Safety
•Home Repairs
•Computer Basics
•Permanency
Self Care
•Health
•Personal Benefits
•Personal Hygiene
•Personal Safety
•Sexuality
Relationships & Communications
•Personal Development
•Developing Relationships
•Communication
•Cultural Competency
•Domestic Violence
•Legal Permanency
Housing & Money Management
•Budgeting/Spending
•Banking/Credit
•Housing
•Transportation
Work & Study Life
•Personal Development
•Study Skills
•Time Management
•Employment
•Legal
•Income Tax
Permanent Connections

oConflict resolution/anger management skills

Agreement No. FCSVR04547          FY. 2017

**EXHIBIT B**

oDecision making skills

oMental health, substance use and trauma concerns

oFamily stability & family responsibilities

oPersonal safety and health

oDocument case plan activities and results.

15.All youth must complete a work readiness pre- and post-assessment through Illinois workNet as directed by the Department.

16.Provide educational enrichment, work readiness, and career education components to all youth.

17.Recruit employers prepared to offer long-term employment opportunities.

18.Ensure employers provide an adequate level of supervision and a quality work opportunity related to the recognized career clusters.

19.A file must be maintained for each worksite and must include among other items, the signed worksite agreement for the worksite location.

20.Perform background checks on any individual that may have an opportunity to be alone with the youth. This will include program staff, mentors, job coaches, etc. A file that includes the results of the background checks and subsequent determination must be maintained for each individual. Youth should not be placed at a jobsite if the employer does not have an adequate policy for conducting and interpreting background checks and cannot provide such assurances.

21.Provide supportive services to facilitate a positive attendance record.

22.Provide supportive services to ensure youth receive a diploma / GED.

23.Employers will document youth attendance through time sheets.

24.Provide oversight of the program through the monitoring of employment and the continuous assessment of program activities and outcomes.

25.Provide timely reports as required or requested.

26.Track and report all required data elements on the timeline dictated by the Department.

27.Meet minimum performance measures/standards.

28.Ensure representation at mandatory program meetings and trainings convened by or on behalf of the Department.

29.Receive consultation and technical assistance from authorized Department representatives. The program and collaborating partners will be required to be in attendance at site visits by Department staff.

B.Case Management: The implementation of an individualized, assessment based case plan that incorporates learning and employment goals as well as goals to address barriers to successful and sustained career education & employment.

C.Supportive Services: Supportive services may include transportation assistance, day care expenses, work clothes, tools and supplies, or other items that are required for youth to participate in the program. Applicants must submit documentation on how the youth

Agreement No. FCSVR04547      FY. 2017

**EXHIBIT B**

will be assessed for supportive services and the internal controls that will ensure the accountability and appropriate expenditure of grant funds.

D.Work Readiness Training: All projects must provide training on the work readiness skills needed for employment using the Illinois workNet portal www.illinoisworknet.com as directed by the Department. In addition; work readiness activities may also include hands-on experience aligned with the identified Career Clusters.

E.Illinois workNet: All youth applications must be entered in Illinois workNet as directed by the Department. Once the client has completed an application in Illinois workNet, the case manager will verify eligibility. If eligibility is determined, print the application, have the participant and case manager sign it and maintain it along with the eligibility documentation in the clients file.

An on-line pre-assessment and post-assessment must be administered in Illinois workNet, or other data system as directed by the Department, that will be used to measure the success of the work readiness component of the program. The youth participants should show improvement between their pre-assessment evaluation and their post-assessment evaluation, as well as have completed the following activities:
•Exploring Careers and Training
•Financial Literacy, including opening a bank account
•Workplace skills
•Job Search skills
•Resume Writing
•Applying for a Job
•Interviewing skills
•Personal responsibility/safety, violence awareness and prevention

F.Career Education/Illinois Pathways: Career education includes training that expands the student's understanding and awareness of career clusters and pathways. Projects will be tied to the courses, work-based learning activities, and credentials/assessments outlined in the Illinois pathways initiative. The objective of these strategies is to provide youth with a structured pathway related to their academic or career interests, as well as resources to fully engage students in their learning and enable them to successfully transition into postsecondary education programs and the workforce.

G.Targeted Industries and Careers: All educational enrichment and work readiness activities must be aligned with the career clusters or groups of occupations and industries that have in common a set of foundational knowledge and skills. There are 16 nationally recognized clusters including:

•Agricultural, Food & Natural Resources

Agreement No. FCSVR04547        FY. 2017

**EXHIBIT B**

- Architecture & Construction;
- Arts;
- Audio/Video Technology & Communications;
- Business Management & Administration;
- Education & Training;
- Finance;
- Government & Public Administration;
- Health Science;
- Hospitality & Tourism;
- Human Services;
- Information Technology;
- Law, Public Safety, Corrections & Security;
- Manufacturing;
- Marketing;
- Science, Technology, Engineering, & Mathematics; and
- Transportation, Distribution, & Logistics.

H. Employer Agreements

All youth employment opportunities must have signed Employer agreements.
- Each agreement must contain, at a minimum, the following items for each worksite included in the agreement:
o Worksite contact and mailing information;
o Detailed information on the worksite such as location, working days and hours, activities, job titles, job descriptions, and number of positions under each;
o Worksite supervisor information;
o Background check policies and assurances;
o A detailed set of mutual terms, conditions, promises, and payments that the grantee and contractor have agreed upon;
o When the employment is fully or partially subsidized, the written agreement must delineate the conditions and terms of successful probationary employment, thereby ensuring that when these terms & conditions are met, the youth's employment will continue under the employer unsubsidized;
o A listing of participants for each worksite along with their projected start.
o Commitment on the part of the employer to provide long term employment opportunities and not just grant subsidized employment;
o Commitment on the part of the employer to provide weekly documentation (including signed timesheets) to the provider to verify hours worked etc. for each youth employed along with other attendance information and concerns; and
o Commitment on the part of the employer to provide employment verification and status information for program youth to the provider at 3 months, 6 months and 9 months following the youth's completion of the program.

Agreement No. FCSVR04547 _____ FY. 2017 ____

**EXHIBIT B**

•Grantees must ensure that worksites for youth adhere to current workplace safety guidelines.
•Grantees must ensure that worksites for youth adhere to applicable federal/state wage, labor, and workers compensation laws.

I.Background Checks
The applicant must ensure background checks are completed for any staff or volunteer that may come into contact with a minor youth AND for all staff involved in direct service provision for any program youth. The policy should include procedures for interpreting and making employment decisions based on the results. All supervisors of youth at worksites subsidized under this program must pass a background check conducted prior to being allowed to supervise any youth. Background checks are an allowable expense as a condition of employment for program staff.

J.Youth Payroll & Timesheets:
The Grantee must submit payroll documentation to the Department using Illinois workNet as directed by the Department, including hourly wage plus the employers FICA and workers compensation that is attributed to the participant. Standardized employer timesheets must be used. The Grantee must maintain the signed timesheet to support the grant expenditures for each participant. Timesheets will be reviewed onsite by DHS and may need to be electronically submitted to the Department as directed.

K.Reporting:
The Grantee's financial management system shall be structured to provide for accurate, current and complete disclosure of the financial results of the Project funded under this grant program. The general ledger must support costs and revenue reported to the Department and must allow tracing of funds to a level of expenditure adequate to insure funds have been expended appropriately.

Grantees are required to submit reports to DHS as prescribed by the Department. Grantees submittal of required reports allows DHS to monitor the grantees progress toward grant defined goals and their due diligence in grant fiscal management and recordkeeping. Further, grantees will be required to relate financial data to performance accomplishments in their reporting (2 CFR 200.301).

L.Participant File
Each youth participant must have his or her own file and it must be kept securely. It is required to have a minimum of the following in each participant file:
•Application signed by participant and CYEP grantee agency
•Proof of eligibility
•Proof of Illinois residency
•Completed I9 Form

**EXHIBIT B**

•Employer information
•Document verification of youth wage, FICA, Workers Comp, signed timesheets, etc.
•Illinois workNet pre- and post-assessment documentation.
•Proof of completion of required activities
•Proof of work readiness and career awareness training, supportive services received, etc.
•Assessment documentation.
•Case Plan and supporting documentation of service delivery

M.Records and Retention / Destruction
In accordance with the Community Services Agreement, each provider shall maintain full and complete records of program operations in compliance with state records retention requirements. Records are defined as those documents that capture program activity, participant information and outcomes, and fiscal data. CYEP providers shall comply with the Local Records Act, which regulates the destruction and preservation of public records within the State of Illinois. IDHS may require longer retention of records and/or submission of such records to the Department if the records cover a time period still open to audit.

N.Service Area
Grant funds will be used to address youth unemployment, poverty, and violence in Illinois' most needy communities. Providers will serve youth within the service area described in their application/plan.

O.Allowable Costs
Allowable costs are those that are necessary and reasonable based on the activity(ies) described herein, are justified in the Budget, and are allowable under Subpart E of 2 CFR 200. Allowable costs are defined below:
•Youth Wages: Includes compensation for services rendered limited to youth wages and benefits to include FICA and workers compensation. Youth must be paid at least minimum wage and the grant may not provide a wage subsidy in excess of minimum wage. Full and Part-time wages may be subsidized in whole or in part with grant funding up to 6 months per enrolled youth. Programs that are able to off-set the wage subsidies with other funds or have the capacity to provide unsubsidized opportunities or step down, or partial subsidies will be able to stretch funding to allow for additional youth to be served in the program. This is encouraged.
•Program Services: Includes, but is not limited to, the delivery of services related to youth employment that provides direct linkages to academic and occupational learning, employer coordination and recruitment, and youth supportive services that may include transportation, child care (refer to the Child Care Assistance program guidelines) work-related attire, physicals, and background checks. Case management services, including educational support, life skills development, reducing barriers to employment,

Agreement No. FCSVR04547        FY. 2017

**EXHIBIT B**

and an array of additional services identified through an individualized assessment.
•Administrative costs: Funding allocated under this grant is intended to provide direct
services and wages to youth. It is expected that administrative costs, both direct and
indirect, will represent a small portion of the overall program budget and may NOT exceed
15% of the total expended grant. Administrative means those activities performed by staff
and costs which are supportive of and required for project implementation for which there
is no direct client contact such as fiscal staff; audit; clerical support; office rent,
utilities, insurance; general office equipment etc. Program budgets and narratives will
detail how all proposed expenditures are directly necessary for program implementation and
will distinguish between Indirect/Direct Administrative and Direct Program expenses. Any
budget deemed to include inappropriate or excessive administrative costs will not be
approved.
•Contractual: Includes cost incurred via contract or subcontracts that are needed for the
achievement of project objectives. Sub-contracts must be pre-approved by the Department.

Grantees will be held accountable to all state rules and regulations governing the use of
these grant funds.

P.Project Start
Projects will begin upon execution of the grant agreement. A start-up period of up to
6-weeks will be allowed if needed.

Q.Pre-award Services
Pre-award cost for services in anticipation of this award are allowable where necessary
for the efficient and timely performance of the program, and are subject to 2 CFR 200.458.
Applicants who have been performing CYEP services prior to the execution of this agreement
and not before July 1, 2016, must provide documented proof of services to the Department
for consideration on or before December 1, 2016. To be accepted, proof of services must
meet the guidelines and requirements outlined within this Notice and must include a signed
statement by the provider's authorized official confirming that any Pre-Award costs
submitted for reimbursement, if paid by the Department, will not constitute supplanting of
funds. Costs for services prior to July 1, 2016 will not be approved.

R.Reporting of Unusual Incidents
The provider must notify appropriate Department staff in writing of any of the following
incidents involving youth enrolled in the program, within 24 business hours of the
incident:
•Serious threat or violence to self or others
•Death
•Suicide/suicide attempt
•Violence between youth and staff that results in injury
•Allegation of abuse or neglect reported to the State's Central Registry (DCFS)

Agreement No. FCSVR04547_____  FY. 2017__

**EXHIBIT B**

S.Additional Policies and Procedures

In addition to the items previously described, each agency will develop/maintain a written local policy/procedure the following:

1.Background Checks – Background checks are required for all program staff and volunteers, who may have the potential for one-on-one contact with children and youth. Funded programs will be required to have a written protocol on file requiring background checks, evidence of their completion, as well as agency/program policy for how the results are utilized.

2.Maintenance of personnel files for all staff, including volunteers and interns

3.Monitoring of staff who serve as child transporters for possession of a valid Illinois driver's license, good driving record documented by Secretary of State Transcript, current proof of insurance and a current background check on file.

4.Maintenance of client confidentiality-both on paper and in computer.

5.Methods for assuring that staff are trained and updated on local policies.

6.Maintenance of a central record for reporting unusual incidents that includes documentation of contact with DHS at a minimum and DCFS (as appropriate to the nature of the incident).

7.Sectarian Issue – funded organizations may not expend federal or state funds for sectarian instruction, worship, prayer or to proselytize.  If the organization is a faith-based or religious organization that offers such activities, these activities shall be voluntary for the individuals receiving services and offered separately from the program.

8.A policy addressing the review and updating of the Policy and Procedure Manual including the frequency with which it is done.

Data Collection Requirements

Providers are required to collect and maintain client specific data on all youth referred and ultimately served in the program.  The data elements below must be collected on each youth, tracked and reported to the Department as requested.  These data must be maintained by participant so that reports can be run based on the demographic fields that will be captured (Ethnicity, Race, DOB/age, etc.) as well as other key data fields. Additionally, these data are necessary to track/report on the performance measures identified in Exhibits E and F in this agreement.

1.Total number of youth referred to the program.

2.Total number of youth in #1 referred by DHS Local FCRC Office.

3.# & % of referred youth registered in Illinois workNet ·

4.# & % of registered youth determined eligible for the program.

5.# & % of eligible youth accepted/enrolled into the program.

6.# & % of eligible FCRC referrals accepted/enrolled into the program

7.# of in-school youth enrolled in the program

8.# & % of in-school youth enrolled by eligibility criteria (if youth meets multiple

Agreement No. FCSVR04547        FY. 2017

**EXHIBIT B**

criteria they should be counted under each criteria area appropriate):
A.National School Lunch Program / Free & Reduced Lunch Program
B.Supplemental Nutrition Assistance Program (SNAP)
C.Temporary Assistance for Needy Families (TANF)
D.Other risk factors:
a.At risk of involvement or further involvement in the criminal or juvenile justice system, including ex-offenders
b.At risk of involvement in the child welfare system
c.At risk of education failure (includes risk due to social conditions)
d.Youth with no work experience or a history of employment failure
e.Homeless youth
f.Youth with a disability
g.Family income does not exceed 185% of the Federal Poverty Level (FPL)
9.# of out-of-school youth.enrolled in the program
10.# & % of out-of-school youth enrolled by eligibility criteria (if youth meets multiple criteria they should be counted under each criteria area appropriate):
A.National School Lunch Program / Free & Reduced Lunch Program
B.Supplemental Nutrition Assistance Program (SNAP)
C.Temporary Assistance for Needy Families (TANF)
D.Other risk factors:
a.At risk of involvement or further involvement in the criminal or juvenile justice system, including ex-offenders
b.At risk of involvement in the child welfare system
c.Education (Dropped Out, Expelled, etc., no GED)
d.Youth with no work experience or a history of employment failure
e.Homeless youth
f.Youth with a disability
g.Family income does not exceed 185% of the Federal Poverty Level (FPL)
11.# & % of enrolled youth completing an Illinois workNet pre-assessment evaluation.
12.# & % of enrolled youth completing an Illinois workNet pre & post Illinois workNet assessment evaluation.
13.# & % of assessed youth demonstrating work readiness skills improvement. Considers total youth enrolled in Illinois workNet completing a pre & post Illinois workNet assessment with those that demonstrated improvement.
14.# & % of enrolled youth completing the 8 required activities in Illinois workNet.
15.# & % of youth successfully completing Illinois workNet requirements & demonstrating skills improvement. Considers total youth enrolled in Illinois workNet completing a pre & post Illinois workNet assessment that also completed all 8 required activities AND then considers those demonstrating improvement through that assessment.
16.# & % of enrolled youth participating in career education activities utilizing Illinois Pathways strategies. Considers total youth enrolled compared to youth participating in one or more Pathways activities.

Agreement No. FCSVR04547          FY. 2017

**EXHIBIT B**

17.# & % of youth completing career education activities utilizing Illinois Pathways strategies.  Considers youth participating in one or more Pathways activities that have documented completion of one or more activity.

18.# & % of enrolled youth assessed for Supportive Services.

19.# & % of youth assessed for Supportive Services requiring one or more services.

20.# & % of youth requiring one or more Supportive Services actually receiving that service.

21.# & % of enrolled youth identified in # 8E & #10E above were connected to homeless services.

22.# & % of enrolled youth identified in # 8F & #10F above were connected to disability services.

23.# & % of enrolled youth with an individualized case plan developed.

24.# & % of youth with an individualized case plan completing 50% or more of case plan goals

25.# & % of youth with an individualized case plan completing 100% of case plan goals

26.# & % of enrolled youth participating in anger management and/or conflict resolution.

27.# & % of youth in #26 above demonstrating improved anger management and/or conflict resolution skills by case closure.

28.# & % of enrolled youth participating in Life Skills Education.

29.# & % of youth in #28 above demonstrating increased Life Skills. ¬¬¬¬¬¬¬¬¬¬¬

30.# & % of in-school (high school) enrolled youth participating in the program six months or longer.  Reported annually as part of the year-end report due July 15.

31.# & % of youth in #30 above that were promoted to the next grade level and/or graduated.  Reported annually as part of the year-end report due July 15.

32.# & % of in-school youth participating 6 months or longer that were considered "seniors". Reported annually as part of the year-end report due July 15.

33.# & % of "seniors" in #32 above that graduated. Reported annually as part of the year-end report due July 15.

34.# of part-time subsidized initial job placements

35.# of part-time non-subsidized initial job placements

36.# of full-time subsidized initial job placements

37.# of full-time non-subsidized initial job placements

38.# & % of initial part-time subsidized job placements converted to non-subsidized

39.# & % of initial full-time subsidized job placements converted to non-subsidized

40.Total # of youth with a HS Diploma at enrollment.

41.Total # of youth with a GED at case enrollment.

42.# & % of out-of-school youth without a HS Diploma or GED at enrollment.

43.# Of enrolled youth exiting the program during the report period.

44.# & % of out-of-school youth re-engaged in education (HS or GED) at case closure; and % increase compared to at enrollment.

45.# & % of youth in #43 above with a HS Diploma at case closure (exit); and % increase compared to at enrollment.

Agreement No. FCSVR04547 _____ FY. 2017

**EXHIBIT B**

46.# & % of youth in #43 above with a GED at case closure (exit); and % increase compared to at enrollment.

47.Total # of youth enrolled in higher education program (includes technical/certificate) at enrollment.

48.# & % of youth in #43 above enrolled in higher education program (includes technical/certificate) at case closure (exit); and % increase compared to at enrollment.

49.# & % of youth maintaining initial job placement for 3 months or more

50.# & % of youth maintaining initial job placement for 6 months or more

51.# & % of youth maintaining initial job placement for 9 months or more

52.# & % of youth requiring a subsequent job placement

53.# & % of youth maintaining a subsequent job placement for 3 months or more

54.# & % of youth maintaining a subsequent job placement for 6 months or more

55.# & % of youth maintaining initial job placement for 9 months or more

56.# & % of youth in #43 above in unsubsidized part-time job placement at case closure (exit).

57.# & % of youth in #43 above in unsubsidized full-time job placement at case closure (exit).

58.# Of youth in #43 above exiting the program employed (full or part time) and/or enrolled in a higher education program (includes technical/certificate).

59.# & % of enrolled non-DHS FCRC referred youth completing an application in ABE to determine benefits/services eligibility.

Reporting Requirements

1.The Provider will submit monthly expenditure documentation forms in the format prescribed by the Department.  The Expenditure Documentation forms must be submitted no later than the 15th of each month for the preceding month by email.

2.The Provider will submit an annual program application/plan and a detailed program budget and budget narrative to the Department as directed.

3.Monthly and cumulative data/performance reports will be submitted to the Department on or before the 15th of each month in a format prescribed by the Department.  Providers must ensure all youth referred to and served in the program are entered into the Illinois WorkNet data system as required to ensure accurate reports and documentation.

4.Additional annual performance data will be collected as directed by the department and in a format prescribed by the Department.

Additional Requirements

A.Revisions to the program plan and budget may be requested in writing and must be pre-approved.  Budget revisions are required if the revision exceeds 5% of the entire grant award and/or if the revision requires a shift in excess of 10% in any one line item (plus or minus).

B.Administrative Costs (Direct /Indirect)

Agreement No. FCSVR04547_____    FY. 2017_

**EXHIBIT B**

Funding allocated under this grant is intended to provide direct services to youth. It is
expected that administrative costs, both direct and indirect, will represent a small
portion of the overall program budget and may NOT exceed 15% of the total program costs
including required match. Administrative means those activities performed by staff and
costs which are supportive of and required for project implementation for which there is
no direct client contact such as fiscal staff; audit; clerical support; office rent,
utilities, insurance; general office equipment etc. Program budgets and narratives will
detail how all proposed expenditures are directly necessary for program implementation and
will distinguish between Indirect/Direct Administrative and Direct Program expenses. Any
budget deemed to include inappropriate or excessive administrative costs will not be
approved. At no time may the approved NICRA be exceeded under this agreement – even if
it is below the maximum allowed under the award. Documentation will be required to verify
the approved NICRA.

C.Subcontractors
Subcontractor Agreement(s) and budgets must be pre-approved by the Department and on file
with the Department. Subcontractors are subject to all provisions of this Agreement. The
provider shall retain sole responsibility for the performance of the subcontractor.

D.Monitoring
The Provider will provide the Department with requested monitoring and evaluation
information and understands that the Department will monitor, audit, and evaluate service
and records. Reporting will be as required by the Bureau. Monitoring may include but is
not limited to:
•On site visits to providers including inspection of client files, fiscal records, and
interviews with program staff, contractors, employers, clients etc..
•Telephone monitoring of service via contacts with providers and a sample of youth and
families receiving service.
•Compliance and Performance Measure reviews.
•Periodic audits.
•Unannounced visits.
•Desk Reviews.

------ END OF PROGRAM: COMMUNITY YOUTH EMPLOYMENT PROGRAM ------

Agreement No. FCSVR04547          FY. 2017

## EXHIBIT C

### PAYMENT

Grantee shall receive    $1,180,758.62          under this Agreement.

Enter specific terms of payment here:

Exhibit C – Payments

Payments to the provider will be made on a prospective basis, rounded to the nearest
$100.00 and will vary based on funding source as follows:  Federally funded program lines
will be prospectively issued 1/8th of the funded amount; General Revenue (State) funded
program lines will be prospectively issued 1/8th of the funded amount; and Stop-Gap
Commitment to Human Services Fund (Other State Fund) program lines will be prospectively.
issued 1/2 of the funded amount.  Subsequent prospective payments for General Revenue and
Federally funded grant lines will be issued based on previously submitted documented
expenditures.  Subsequent prospective payments for Stop-Gap Commitment to Human Services
Fund grant lines will be issued in a single lump sum amount on or before 12/31/2016. The
final payment may be greater or lesser than the previous payments due to rounding.

The Department will compare the amount of the prospective payments made to date with the
documented expenditures submitted to the Department by the provider. In the event the
documented services submitted by the provider do not justify the level of award being to
the provider, future payments for General Revenue and Federally funded grant lines may be
withheld or reduced until such time as the services documentation submitted by the
provider equals the amounts previously issued to the provider. Failure of the provider to
submit timely documentation may result in a reduction to the total award.

The final payment from the Department under this Agreement for General Revenue and
Federally funded grant lines shall be made upon the Department's determination that all
requirements under this Agreement have been completed, which determination shall not be
unreasonably withheld. Such final payment will be subject to adjustment after the
completion of a review of the provider's records as provided for in the Agreement.

In the event payments made by the Department to the provider exceed the total amount of
provider reported and Department authorized expenditures, the provider will be required to
issue a repayment to the Department in an amount equal to the overpayment.

------ END OF PROGRAM: COMMUNITY YOUTH EMPLOYMENT PROGRAM ------


Estimated Annual Contract Amount:  $1,180,758.62

NOTE: The estimated figures are merely an objective means of computing the contract amount and should not be
construed as a guaranteed amount that will be spent on the contract during the fiscal year.

Agreement No. FCSVR04547 _____   FY. 2017

## EXHIBIT D
## CONTACT INFORMATION

**CONTACT FOR NOTIFICATION:**

Unless specified elsewhere, all notices required or desired to be sent by either Party shall be sent to the persons listed below.

**GRANTOR CONTACT**

Name:     Karrie Rueter

Title:    Bureau Chief

Address:  823 East Monroe
          Springfield, IL 62702


Phone:    217-557-0193

TTY #:

Fax #:

E-mail Address: karrie.rueter@illinois.gov

**GRANTEE CONTACT**

Name:     SALLY CARTER

Title:

Address:  2011 ROUND BARN ROAD
          CHAMPAIGN, IL 61821-3622


Phone:    217-403-3710

TTY #:

Fax #:

E-mail Address: sally@tapinacademy.org

Additional Information: _____

Agreement No. FCSVR04547 _____   FY. 2017 ____

## EXHIBIT E

### PERFORMANCE MEASURES

Exhibit E – Performance Measures

1. Proposed vs. Actual enrolled youth
2. Proposed vs. Actual Job Placements
3. % of enrolled youth meeting eligibility criteria
4. % of eligible FCRC referrals enrolled into the program
5. % of enrolled youth completing an Illinois workNet pre & post assessment evaluation
6. % of enrolled youth completing the 8 required activities in Illinois workNet.
7. % of assessed youth demonstrating work readiness skills improvement
8. % of youth completing career education activities utilizing Illinois Pathways strategies.
9. % of youth receiving Supportive Services
10. % of enrolled youth with an individualized case plan
11. % of youth completing case plan goals
12. % of out-of-school youth re-engaged in education
13. % of youth with improved educational outcomes
14. # & % of youth maintaining initial job placement for 3 months or more
15. # & % of youth maintaining initial job placement for 6 months or more
16. # & % of youth maintaining initial job placement for 9 months or more
17. # & % of enrolled youth in unsubsidized job placement at case closure (exit)

------ END OF PROGRAM: COMMUNITY YOUTH EMPLOYMENT PROGRAM ------

Agreement No. FCSVR04547          FY. 2017

## EXHIBIT F

### PERFORMANCE STANDARDS

Exhibit F - Performance Standards

1. 100% of proposed youth will be enrolled/served. Acceptable performance 90%.
2. 100% of proposed job placements will be filled with unduplicated youth. Acceptable performance is 90%.
3. 100% of enrolled youth will meet eligibility criteria. Acceptable performance is 100%.
4. 100% of eligible FCRC referrals will be enrolled into the program. Acceptable performance is 80%.
5. 100% of enrolled youth will complete an Illinois workNet pre & post assessment evaluation. Acceptable performance is 80%.
6. 100% of enrolled youth will complete the 8 required activities in Illinois workNet. Acceptable performance is 80%.
7. 100 % of assessed youth will demonstrate work readiness skills improvement. Acceptable performance is 80%. Considers only those youth completing the Illinois workNet pre & post assessment evaluation.
8. 100% of youth will complete career education activities utilizing Illinois Pathways strategies. Acceptable performance is 80%. Considers youth participating in one or more Pathways activities that have documented completion of one or more activity.
9. 100% of youth requiring Supportive Services will receive those services. Acceptable performance is 90%. Considers youth assessed and determined to need one or more supportive services compared to those actually receiving that service.
10. 100% of enrolled youth will have an individualized case plan. Acceptable performance 80%.
11. 100% of youth will complete case plan goals. Acceptable performance is 80% of youth will complete 50% or more of case plan goals. Considers only those youth with a case plan developed.
12. 100% of out-of-school youth will re-engaged in education. Considers only those out-of-school youth without HS Diploma or GED and compares those who have re-engaged by case closure(exit), does not require attainment of Diploma or GED. Acceptable performance 60%.
13. 100% of youth will have improved educational outcomes. Acceptable performance is 80%. Considers in-school youth and those out-of-school youth without a HS Diploma or GED. Considers attainment of HS Diploma or GED, Grade level promotion, re-enrollment into HS, enrollment into GED classes, enrollment in Higher Ed or Technical school etc. Considers education status at enrollment compared to case closure(exit).
14. 100% of youth will maintain initial job placement for 3 months or more. Acceptable performance is 80%.
15. 100% of youth will maintain initial job placement for 6 months or more. Acceptable performance is 75%.
16. 100% of youth will maintain initial job placement for 9 months or more. Acceptable performance is 70%.
17. 100% of enrolled youth will be in an unsubsidized job placement at case closure (exit). Acceptable performance is 65%.

Agreement No. FCSVR04547        FY. 2017

**EXHIBIT F**

------ END OF PROGRAM: COMMUNITY YOUTH EMPLOYMENT PROGRAM ------

Agreement No. FCSVR04547 _____ FY. 2017

## EXHIBIT G

### STATE AGENCY CONTRACTS

For each contract or other agreement to which Grantee is a party with any other State agency, state:

1.      The name of the State agency;

2.      The number of the contract(s) or other agreement(s);

3.      The estimated amount of the contract(s) or other agreement(s);

4.      The term of the contract(s) or other agreement(s); and

5.      The nature or purpose of the contract(s) or other agreement(s).

Agreement No. FCSVR04547          FY. 2017

## EXHIBIT H
## SPECIFIC CONDITIONS

N/A

------ END OF PROGRAM: COMMUNITY YOUTH EMPLOYMENT PROGRAM -------

Agreement No. FCSVR04547        FY. 2017

## PART TWO – THE GRANTOR-SPECIFIC TERMS

In addition to the uniform requirements in **PART ONE** of the Grant Agreement, the Grantor has the following additional requirements for its Grantee:

### ARTICLE XXVII
### ADDITIONAL CERTIFICATIONS

27.1    Certifications. Grantee shall be responsible for compliance with the enumerated certifications to the extent that the certifications legally apply to Grantee:

(a)    **Abuse of Adults with Disabilities Intervention Act.** Grantee certifies that it is in compliance with the Abuse of Adults with Disabilities Intervention Act to protect people with disabilities who are abused, neglected or financially exploited and who, because of their disability, cannot seek assistance on their own behalf. Anyone who believes a person with a disability living in a domestic setting is being abused, neglected or financially exploited must file a complaint with the Office of Inspector General, Department of Human Services. Grantee has an obligation to report suspected fraud or irregularities committed by individuals or other entities with whom it interacts on Grantor's behalf and should make a report to the appropriate program office (20 ILCS 2435/1et seq.).

(b)    **Grant Award Requirements.** Grantee certifies that it is in compliance with 45 CFR Part 93 and 45 CFR Part 94.

(c)    **Business Entity Registration.** Grantee certifies that it is not required to register as a business entity with the State Board of Elections pursuant to the Procurement Code (30 ILCS 500/20-160 and 30 ILCS 500/50-37). Further, Grantee acknowledges that all contracts between State agencies and a business entity that do not comply with this Paragraph shall be voidable under Section 50-60 of the Procurement Code (30 ILCS 500/50-60).

### ARTICLE XXVIII
### ADDITIONAL TERMS

28.1    Renewal. This Agreement may be renewed for additional periods by mutual consent of the Parties, expressed in writing and signed by the Parties.   Grantee acknowledges that this Agreement does not create any expectation of renewal.

28.2    Multiple Locations. In the event that Grantee has more than one location, Grantee shall include in **EXHIBIT D** either (1) the address, phone number and hours of operation of each location, or (2) the address, phone number and hours of operation of Grantee's primary location.

28.3    Changes in Key Grant Personnel. When it is specifically required as a condition of an Award, the replacement of the Program director or a key person or a substantial reduction in the level of their effort, e.g., their unanticipated absence for more than three (3) months, or a twenty-five percent (25%) reduction in the time devoted to the Award purposes, requires Prior Approval from Grantor. When it is specifically required as a condition of an Award, Prior Approval will be required for the replacement or the substantial reduction in the level of effort of other personnel whose work is deemed by Grantor to be critical to the Award's successful completion. All requests for approval of changes in key Grant personnel shall be signed by Grantee's authorized representative and submitted to the appropriate Grantor program personnel. Evidence of the qualifications for replacement

Agreement No. FCSVR04547          FY. 2017

personnel (such as a résumé) shall be included. 2 CFR 200.308.

28.4     Grant Funds Recovery. The provisions of 89 Ill. Adm. Code 511 shall apply to any funds awarded that are subject to the Illinois Grant Funds Recovery Act.

28.5     Employee and Subcontractor Background Checks. Grantee certifies that neither Grantee, nor any employee or subcontractor who works on Grantor's premises, has a felony conviction. Any request for an exception to this rule must be made in writing, listing the name of the individual, home address, type of conviction and date of conviction. Grantee will also supply Grantor with a list of individuals assigned to work on DHS' premises at least ten (10) working days prior to the start of their employment, unless circumstances prevent Grantee from giving a list within that time. If Grantee cannot provide a list, or the name of an individual, at least ten (10) working days prior to his/her employment, it shall do so as soon as possible. Grantor may conduct, at its expense, criminal background checks on Grantee's employees and subcontractors assigned to work on Grantor's premises. Grantee agrees to indemnify and hold harmless Grantor and its employees for any liability accruing from said background checks.

28.6     Gifts. In addition to the Gift ban described in Paragraph 26.1, Grantee will provide Grantor with advance notice of Grantee's provision of gifts, excluding charitable donations, given as incentives to community-based organizations in Illinois and clients in Illinois to assist Grantee in carrying out its responsibilities under this Agreement.

## ARTICLE XXIX
## MONITORING AND INFORMATION

29.1     Monitoring of Conduct. In addition to Article XII of **PART ONE**, Grantor shall monitor Grantee's conduct under this Agreement which may include, but shall not be limited to, reviewing records of performance in accordance with administrative rules, license status review, fiscal and audit review, Agreement compliance and compliance with the affirmative action requirements of this Agreement.  Grantor shall have the authority to conduct announced and unannounced monitoring visits and Grantee shall cooperate with Grantor in connection with all such monitoring visits. Failure of Grantee to cooperate with Grantor in connection with announced and unannounced monitoring visits is grounds for Grantor's termination of this Agreement.

29.2     Requests for Information. Grantor may request, and Grantee shall supply, upon request, necessary information and documentation regarding transactions constituting contractual (whether a written contract exists or not) or other relationships, paid for with funds received hereunder. Documentation may include, but is not limited to, information regarding Grantee's contractual agreements, identity of employees, shareholders and directors of Grantee and any party providing services which will or may be paid for with funds received hereunder, including, but not limited to, management and consulting services rendered to Grantee.

29.3     Rights of Review. This ARTICLE XXIX does not give Grantor the right to review a license that is not directly related to the Award being audited nor does it allow Grantor to unilaterally revoke a license without complying with all due process rights to which Grantee is entitled under Federal, State or local law or applicable rules promulgated by Grantor.

Agreement No. FCSVR04547         FY. 2017

## ARTICLE XXX
## WORK PRODUCT

30.1    Assignment of Work Product. "Work Product" means all the tangible materials, regardless of format, delivered by Provider to DHS under this Agreement. Grantee assigns to Grantor all right, title and interest in and to Work Product. However, nothing in this Agreement shall be interpreted to grant Grantor any right, title or interest in Grantee's intellectual property that has been or will later be developed outside this Award.

30.2    License to Grantor. To the extent Grantee-owned works are incorporated into Work Product, Grantee grants to Grantor a perpetual, non-exclusive, paid-up, world-wide license in the use, reproduction, publication and distribution of such Grantee-owned works when included within the Work Product. Grantee shall not copyright Work Product without Grantor's prior written consent.

30.3    License to Grantee; Objections. Grantor grants to Grantee a perpetual, non-exclusive, paid-up license to publish academic and scholarly articles based upon the services rendered under this Agreement. All materials to be published shall first be submitted to Grantor at least forty-five (45) days prior to publication or other disclosure. Upon written objection from Grantor, Grantee shall excise any confidential information, as that term is defined in applicable State and Federal statutes, federal regulations and Grantor administrative rules, from materials before publication. Grantor may also object to the publication on grounds other than confidentiality. As to the latter objections, Grantee and Grantee will attempt to resolve Grantor's concerns within the forty-five (45) day review period, or as otherwise agreed between the Parties. Grantor waives any objections not made to Grantee in writing before expiration of the review period.

30.4    Unresolved Objections; Disclaimer. If Grantor's objections on grounds other than confidentiality are not resolved within the review period or other such time as agreed by the Parties, then Grantee may publish the materials but shall include therein the following disclaimer: "Although the research or services underlying this article were funded in whole or in part by the [Grantor], the [Grantor] does not endorse or adopt the opinions or conclusions presented in the article." Notwithstanding the above, Grantor shall not have the right to control or censor the contents of Grantee publications.

## ARTICLE XXXI
## POST-TERMINATION/NON-RENEWAL

31.1    Duties. Upon notice by Grantor to Grantee of the termination of this Agreement or notice that Grantor will not renew, extend or exercise any options to extend the term of this Agreement, or that Grantor will not be contracting with Grantee beyond the term of this Agreement, Grantee shall, upon demand:

(a)    Cooperate with Grantor in assuring the transition of recipients of services hereunder for whom Grantee will no longer be providing the same or similar services or who choose to receive services through another Grantee.

(b)    To the extent permitted by law, provide copies of all records related to recipient services funded by Grantor under this Agreement.

(c)    Grant reasonable access to Grantor to any and all Program sites serving recipients hereunder to facilitate interviews of recipients to assure a choice process by which recipients may indicate provider preference.

Agreement No. FCSVR04547        FY. 2017

(d)    Provide detailed accounting of all service recipients' funds held in trust by Grantee, as well as the identity of any recipients for whom Grantee is acting as a representative payee of last resort.

31.2    Survival. The promises and covenants of this Article shall survive the Term of this Agreement for the purposes of the necessary transition of recipients of services hereunder.

## ARTICLE XXXII
## LINGUISTIC AND CULTURAL COMPETENCY GUIDELINES AND ASSURANCE

32.1.    Plan Creation. For Grantees that do not have a Linguistic and Cultural Competency (LCC) Plan, the Grantee shall create its LCC Plan within one year following execution of this Agreement. The LCC Plan, including creation guidelines, is described on the Internet at  http://www.dhs.state.il.us/page.aspx?item=66602.

32.2.    Plan Implementation. For Grantees that have an LCC Plan, the Grantee certifies that it is updated annually to identify all goals met and to describe any efforts made toward meeting additional goals still in progress.

32.3.    Plan Submission. Upon request, Grantee shall submit to the Grantor its LCC Plan, including any updates.

Agreement No. FCSVR04547 _____ FY. 2017

## PART THREE – THE PROJECT-SPECIFIC TERMS

In addition to the uniform requirements in **PART ONE** and the Grantor-Specific Terms in **PART TWO**, the Grantor has the following additional requirements for this Project:

### ARTICLE XXXIII
### ADDITIONAL REQUIREMENTS

33.1    <u>Program Manual</u>. The related Program Manual, if applicable, can be found via the following DHS website: http://www.dhs.state.il.us/page.aspx?item=29741  and is hereby incorporated into this Agreement.

33.2    <u>Program Attachment</u>. The related Program Attachment, if applicable, is  **R**  . It can be found via the following DHS website: http://www.dhs.state.il.us/page.aspx?item=29741 and is hereby incorporated into this Agreement.

Agreement No. FCSVR04536 _____ FY. 2017 _____

### GRANT AGREEMENT



### BETWEEN
### THE STATE OF ILLINOIS, ___ILLINOIS DEPARTMENT OF HUMAN SERVICES___
### AND
### TAP IN LEADERSHIP ACADEMY

The Illinois Department of Human Services (IDHS) (Grantor), with its principal office at 100 South Grand Avenue East, Springfield, IL 62762 , and TAP IN LEADERSHIP ACADEMY (Grantee), with its principal office at 2011 ROUND BARN ROAD CHAMPAIGN, IL 61821-3622 and payment address (if different than principal office) at _____, hereby enter into this Grant Agreement ("Agreement"). Grantor and Grantee are collectively referred to herein as "Parties" or individually as a "Party".

### PART ONE – THE UNIFORM TERMS
### RECITALS

WHEREAS, it is the intent of the Parties to perform consistent with all Exhibits and attachments hereto and pursuant to the duties and responsibilities imposed by Grantor under the laws of the State of Illinois and in accordance with the terms, conditions and provisions hereof.

NOW, THEREFORE, in consideration of the foregoing and the mutual agreements contained herein, and for other good and valuable consideration, the value, receipt and sufficiency of which are acknowledged, the Parties hereto agree as follows:

### ARTICLE I
### AWARD AND GRANTEE-SPECIFIC INFORMATION AND CERTIFICATION

1.1.    DUNS Number; SAM Registration; Nature of Entity. Under penalties of perjury, Grantee certifies that _____ is Grantee's correct DUNS number, that 27-3511477 _____ is Grantee's correct FEIN or Social Security Number, and that Grantee has an active State registration and SAM registration (if federal funds). Grantee is doing business as a (check):

| | |
|---|---|
| ☐ Individual | ☐ Nonresident Alien |
| ☐ Sole Proprietorship | ☐ Pharmacy/Funeral Home/Cemetery Corp. |
| ☐ Partnership | ☒ Tax Exempt |
| ☐ Corporation (includes Not For Profit) | ☐ Limited Liability Company (select |
| ☐ Medical Corporation | applicable tax classification) |
| ☐ Governmental Unit | ☐ D = disregarded entity |
| ☐ Estate or Trust | ☐ C = corporation |
| ☐ Pharmacy-Non Corporate | ☐ P = partnership |

1.2.    Amount of Agreement. Grant Funds (check one) ☐ shall not exceed or ☒ are estimated to be $172,800.00 _____ , of which $0.00 _____ are federal funds. Grantee agrees to accept Grantor's payment as specified in the Exhibits and attachments incorporated herein as part of this Agreement.



12 / 9 / 16    M. Martin

Contract Obligation Analyst

Agreement No. FCSVR04536          FY. 2017

## ARTICLE II
## REQUIRED REPRESENTATIONS

2.1.    Standing and Authority. Grantee warrants that:

(a)     Grantee is duly organized, validly existing and in good standing under the laws of the State in which it was incorporated or organized.

(b)     Grantee has the requisite power and authority to execute and deliver this Agreement and all documents to be executed by it in connection with this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby.

(c)     If Grantee is organized under the laws of another jurisdiction, Grantee warrants that it is also duly qualified to do business in Illinois and is in good standing with the Illinois Secretary of State.

(d)     The execution and delivery of this Agreement, and the other documents to be executed by Grantee in connection with this Agreement, and the performance by Grantee of its obligations hereunder have been duly authorized by all necessary entity action.

(e)     This Agreement and all other documents related to this Agreement, including the Uniform Grant Application, the Exhibits and attachments to which Grantee is a party constitute the legal, valid and binding obligations of Grantee enforceable against Grantee in accordance with their respective terms.

2.2.    Compliance with Internal Revenue Code. Grantee certifies that it does and will comply with all provisions of the Federal Internal Revenue Code (26 USC 1), the Illinois Revenue Act (35 ILCS 5), and all rules promulgated thereunder, including withholding provisions and timely deposits of employee taxes and unemployment insurance taxes.

2.3.    Compliance with Federal Funding Accountability and Transparency Act of 2006. Grantee certifies that it does and will comply with the reporting requirements of the Federal Funding Accountability and Transparency Act of 2006 (P.L. 109-282) (FFATA) with respect to Federal Awards greater than or equal to $25,000. A FFATA sub-award report must be filed by the end of the month following the month in which the award was made.

2.4.    Compliance with Uniform Grant Rules (2 CFR Part 200).  Grantee certifies that it shall adhere to the applicable Uniform Administrative Requirements, Cost Principles, and Audit Requirements, which are published in Title 2, Part 200 of the Code of Federal Regulations, and are incorporated herein by reference. See 44 Ill. Admin. Code 7000.30(b)(1)(A).

2.5.    Compliance with Registration Requirements. Grantee and its sub-grantees shall:  (i) be registered with the Federal SAM if seeking an Award that is partially or fully paid by Federal funds, and registered with the State equivalent of SAM; (ii) be in good standing with the Illinois Secretary of State; and (iii) have a valid DUNS number. It is Grantee's responsibility to remain current with these registrations and requirements. If Grantee's status with regard to any of these requirements change, or the certifications made in and information provided in the Uniform Grant Application changes, Grantee must notify the Grantor in accordance with ARTICLE XVIII.

**Agreement No.** FCSVR04536        **FY.** 2017

## ARTICLE III
## DEFINITIONS

3.1.    Definitions. Capitalized words and phrases used in this Agreement have the following meanings:

"2 CFR Part 200" means the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards published in Title 2, Part 200 of the Code of Federal Regulations.

"Agreement" or "Grant Agreement" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Allocable Costs" means costs allocable to a particular cost objective if the goods or services involved are chargeable or assignable to such cost objective in accordance with relative benefits received or other equitable relationship. Costs allocable to a specific Program may not be shifted to other Programs in order to meet deficiencies caused by overruns or other fund considerations, to avoid restrictions imposed by law or by the terms of this Agreement, or for other reasons of convenience.

"Allowable Costs" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Award" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Budget" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"CFDA" or "Catalog of Federal Domestic Assistance" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Close-out Report" means a report from the Grantee allowing the Grantor to determine whether all applicable administrative actions and required work have been completed, and therefore closeout actions can commence.

"Conflict of Interest" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Consolidated Financial Report" means a financial information presentation in which the assets, equity, liabilities, and operating accounts of an entity and its subsidiaries are combined (after eliminating all inter-entity transactions) and shown as belonging to a single reporting entity.

"Cost Allocation Plan" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"CSFA" or "Catalog of State Financial Assistance" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Direct Costs" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Disallowed Costs" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"DUNS Number" means a unique nine digit identification number provided by Dun & Bradstreet for each physical location of Grantee's organization. Assignment of a DUNS Number is mandatory for all organizations seeking an Award from the State of Illinois.

"FAIN" means the Federal Award Identification Number.

Agreement No. FCSVR04536          FY. 2017

"FFATA" or "Federal Funding Accountability and Transparency Act" has the same meaning as in 31 USC 6101; P.L. 110-252.

"Fixed-Rate" has the same meaning as in 44 Ill. Admin. Code 7000.20. "Fixed-Rate" is in contrast to fee-for-service, 44 Ill. Admin. Code 7000.20.

"GAAP" or "Generally Accepted Accounting Principles" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Grant Funds" has the same meaning as in 30 ILCS 705.

"Indirect Costs" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Indirect Cost Rate" means a device for determining in a reasonable manner the proportion of indirect costs each Program should bear. It is a ratio (expressed as a percentage) of the Indirect Costs to a Direct Cost base. If reimbursement of Indirect Costs is allowable under an Award, Grantor will not reimburse those Indirect Costs unless Grantee has established an Indirect Cost Rate covering the applicable activities and period of time, unless Indirect Costs are reimbursed at a fixed rate.

"Indirect Cost Rate Proposal" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Net Revenue" means an entity's total revenue less its operating expenses, interest paid, depreciation, and taxes. "Net Revenue" is synonymous with "Profit."

"Nonprofit Organization" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Notice of Award" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"OMB" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Prior Approval" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Profit" means an entity's total revenue less its operating expenses, interest paid, depreciation, and taxes. "Profit" is synonymous with "Net Revenue."

"Program" means the services to be provided pursuant to this Agreement.

"Program Costs" means all Allowable Costs incurred by Grantee and the value of the contributions made by third parties in accomplishing the objectives of the Award during the Term of this Agreement.

"Program Income" has the same meaning as in 44 Ill. Admin. Code 7000.20.

"Related Parties" has the meaning set forth in Financial Accounting Standards Board (FASB) Accounting Standards Codification (ASC) 850-10-20.

"SAM" means the federal System for Award Management (SAM); which is the Federal repository into which an entity must provide information required for the conduct of business as a recipient. 2 CFR 25 Appendix A (1)(C)(1).

Agreement No. FCSVR04536        FY. 2017

"State" means the State of Illinois.

"Term" has the meaning set forth in Paragraph 1.4.

"Unallowable Costs" has the same meaning as in 44 Ill. Admin. Code 7000.20.

## ARTICLE IV
## PAYMENT

4.1.     Availability of Appropriation; Sufficiency of Funds. This Agreement is contingent upon and subject to the availability of sufficient funds. Grantor may terminate or suspend this Agreement, in whole or in part, without penalty or further payment being required, if (i) sufficient funds for this Agreement have not been appropriated or otherwise made available to the Grantor by the State or the Federal funding source, (ii) the Governor or Grantor reserves funds, or (iii) the Governor or Grantor determines that funds will not or may not be available for payment. Grantor shall provide notice, in writing, to Grantee of any such funding failure and its election to terminate or suspend this Agreement as soon as practicable. Any suspension or termination pursuant to this Section will be effective upon the date of the written notice unless otherwise indicated.

4.2.     Illinois Grant Funds Recovery Act. Any Grant Funds remaining at the end of the Agreement period which are not expended or legally obligated by Grantee shall be returned to Grantor within forty-five (45) days after the expiration of this Agreement in accordance with the Grant Funds Recovery Act (30 ILCS 705/1 *et seq.*). In the event of a conflict between the Grant Funds Recovery Act and the Grant Accountability and Transparency Act, the provisions of the Grant Accountability and Transparency Act shall control. 30 ILCS 708/80.

4.3.     Cash Management Improvement Act of 1990. Unless notified otherwise in **PART TWO** or **PART THREE**, Federal funds received under this Agreement shall be managed in accordance with the Cash Management Improvement Act of 1990 (31 USC 6501 *et seq.*) and any other applicable Federal laws or regulations.

4.4.     Payments to Third Parties. Grantee agrees to hold harmless Grantor when Grantor acts in good faith to redirect all or a portion of any Grantee payment to a third party. Grantor will be deemed to have acted in good faith if it is in possession of information that indicates Grantee authorized Grantor to intercept or redirect payments to a third party or when so ordered by a court of competent jurisdiction.

4.5.     Modifications to Estimated Amount. If the Agreement amount is established on an estimated basis, then it may be increased by mutual agreement at any time during the Term. Grantor may decrease the estimated amount of this Agreement at any time during the Term if (i) Grantor believes Grantee will not use the funds during the Term, (ii) Grantor believes Grantee has used funds in a manner that was not authorized by this Agreement, (iii) sufficient funds for this Agreement have not been appropriated or otherwise made available to the Grantor by the State or the Federal funding source, (iv) the Governor or Grantor reserves funds, or (v) the Governor or Grantor determines that funds will or may not be available for payment. Grantee will be notified, in writing, of any adjustment of the estimated amount of this Agreement. In the event of such reduction, services provided by Grantee under **Exhibit A** may be reduced accordingly. Grantee shall be paid for work satisfactorily performed prior to the date of the notice regarding adjustment. 2 CFR 200.308.

4.6.     Interest.

(a)     All interest earned on Grant Funds held by a Grantee shall become part of the Grant Funds when earned and be treated accordingly for all purposes, unless otherwise provided in **PART TWO**

Agreement No. FCSVR04536_____ FY. 2017_

or **PART THREE**. 30 ILCS 705/10.

(b)     Grant Funds shall be placed in an insured account, whenever possible, that bears interest, unless exempted under 2 CFR Part 200.305(b)(8). All interest earned shall be considered Grant Funds and are subject to the same restrictions, unless there is an applicable Federal program rule that takes precedence.

(c)     A Grantee who is required to reimburse Grant Funds pursuant to an action brought under the Grant Funds Recovery Act, and who enters into a deferred payment plan for the purpose of satisfying a past due debt, shall be required to pay interest on such debt as required by Section 10.2 of the Illinois State Collection Act of 1986, 30 ILCS 210;*See also* 30 ILCS 705/10.

4.7.     Timely Billing Required. Grantee must submit any payment request to Grantor within thirty (30) days of the end of the quarter, unless another billing schedule is specified in **PART TWO** or **PART THREE**. Failure to submit such payment request timely will render the amounts billed an unallowable cost which Grantor cannot reimburse. In the event that Grantee is unable, for good cause, to submit its payment request timely, Grantee shall timely notify Grantor and may request an extension of time to submit the payment request. Grantor's approval of Grantee's request for an extension shall not be unreasonably withheld.

4.8..     Certification. Pursuant to 2 CFR 200.415, each invoice and report submitted by Grantee must contain the following certification by an official authorized to legally bind the Grantee:

> By signing this report [or payment request], I certify to the best of my knowledge and belief that the report [or payment request] is true, complete, and accurate, and the expenditures, disbursements and cash receipts are for the purposes and objectives set forth in the terms and conditions of the Federal or State award. I am aware that any false, fictitious, or fraudulent information, or the omission of any material fact, may subject me to criminal, civil or administrative penalties for fraud, false statements, false claims or otherwise. (U.S. Code Title 18, Section 1001 and Title 31, Sections 3729-3730 and 3801-3812).

## ARTICLE V
## SCOPE OF GRANT ACTIVITIES/PURPOSE OF GRANT

5.1.     Scope of Grant Activities/Purpose of Grant. Grantee will conduct the Grant Activities or provide the services as described in the Exhibits and attachments, including **Exhibit A** (Project Description) and **Exhibit B** (Deliverables), incorporated herein and in accordance with all terms and conditions set forth herein and all applicable administrative rules. All Grantor-specific provisions and programmatic reporting required under this Agreement are described in **PART TWO** (The Grantor-Specific Terms). All Project-specific provisions and reporting required under this Agreement are described in **PART THREE**.

5.2.     Scope Revisions. Grantee shall obtain Prior Approval from Grantor whenever a Scope revision is necessary for one or more of the reasons enumerated in 2 CFR 200.308. All requests for Scope revisions that require Grantor approval shall be signed by Grantee's authorized representative and submitted to Grantor for approval. Expenditure of funds under a requested revision is prohibited and will not be reimbursed if expended before Grantor gives written approval. *See* 2 CFR 200.308.

Agreement No. FCSVR04536 _____ FY. 2017

5.3.    Specific Conditions. If applicable, specific conditions required after a risk assessment will be included in Exhibit H. Grantee shall adhere to the specific conditions listed therein.

## ARTICLE VI
## BUDGET

6.1.    Budget. The Budget is a schedule of anticipated grant expenditures that is approved by Grantor for carrying out the purposes of the Award. When Grantee or third parties support a portion of expenses associated with the Award, the Budget includes the non-Federal as well as the Federal share (and State share if applicable) of grant expenses. Within thirty (30) calendar days of execution of this Agreement, Grantee must submit to Grantor, via the Award's program manager, a proposed Budget, prepared in accordance with the template provided by Grantor. A decision indicating approval or disapproval of the proposed Budget shall be made by Grantor within sixty (60) calendar days after submission by Grantee. Once approved, a Budget, signed by Grantor staff, will be returned to Grantee.

6.2.    Budget Revisions. Grantee shall obtain Prior Approval from Grantor whenever a Budget revision is necessary for one or more of the reasons enumerated in 2 CFR 200.308. All requests for Budget revisions that require Grantor approval shall be signed by Grantee's authorized representative and submitted to Grantor for approval. Expenditure of funds under a requested revision is prohibited and will not be reimbursed if expended before Grantor gives written approval. 2 CFR 200.308.

6.3.    Discretionary Line Item Transfers. Unless prohibited from doing so in 2 CFR 200.308, transfers between approved line items may be made without Grantor's approval only if the total amount transferred does not exceed the allowable variance of the greater of either (i) ten percent (10%) of the Budget line item or (ii) one thousand dollars ($1,000) of the Budget line item.   Discretionary line item transfers may not result in an increase to the Budget.

6.4.    Non-discretionary Line Item Transfers. Total line item transfers exceeding the allowable variance of the greater of either (i) ten percent (10%) of the Budget line item or (ii) one thousand dollars ($1,000) of the Budget line item require Grantor approval as set forth in Paragraph 6.2.

6.5.    Notification. Within thirty (30) calendar days from the date of receipt of the request for Budget revisions, Grantor will review the request and notify Grantee whether the Budget revision has been approved, denied, or the date upon which a decision will be reached.

## ARTICLE VII
## ALLOWABLE COSTS

7.1.    Allowability of Costs; Cost Allocation Methods. The allowability of costs and cost allocation methods for work performed under this Agreement shall be determined in accordance with 2 CFR 200 Subpart E and Appendices III, IV, and V.

7.2.    Indirect Cost Rate Submission.

    (a)    This Paragraph 7.2 applies only to:

        (i)    A Grantee who charges, or expects to charge, any Indirect Costs; and
        (ii)    A Grantee who is allowed to charge Indirect Costs under federal or state

Agreement No. FCSVR04536_____    FY. 2017___

statutes, state administrative rules, and agency or program rules, regulations and policies.

(b)    A Grantee must submit an Indirect Cost Rate Proposal in accordance with federal regulations for approval no later than three months after the effective date of the Award, in a format prescribed by Grantor.

(c)    A Grantee who has a current, applicable rate negotiated by a cognizant Federal agency shall provide to Grantor a copy of its Indirect Cost Rate acceptance letter from the Federal government. Grantor will accept that Indirect Cost Rate, up to any statutory, rule-based or programmatic limit.

7.3.    Transfer of Costs. Cost transfers between Grants, whether as a means to compensate for cost overruns or for other reasons, are unallowable. See 2 CFR 200.451.

7.4.    Higher Education Cost Principles. The Federal cost principles that apply to public and private institutions of higher education are set forth in 2 CFR Part 200 Subpart E and Appendix III.

7.5.    Nonprofit Organizations Cost Principles. The Federal cost principles that apply to Nonprofit Organizations that are not institutions of higher education are set forth in 2 CFR Part 200 Subpart E, unless exempt under 2 CFR 200 Appendix VIII.

7.6.    Government Cost Principles. The Federal cost principles that apply to State, local and Federally-recognized Indian tribal governments are set forth in 2 CFR Part 200 Subpart E, Appendix V, and Appendix VII.

7.7.    Commercial Organization Cost Principles. The Federal cost principles and procedures for cost analysis and the determination, negotiation and allowance of costs that apply to commercial organizations are set forth in 48 CFR Part 31.

7.8.    Financial Management Standards. The financial management systems of Grantee must meet the following standards:

(a)    **Accounting System.** Grantee organizations must have an accounting system that provides accurate, current, and complete disclosure of all financial transactions related to each State- and Federally-funded Program. Accounting records must contain information pertaining to State and Federal pass-through awards, authorizations, obligations, unobligated balances, assets, outlays, and income. These records must be maintained on a current basis and balanced at least quarterly. Cash contributions to the Program from third parties must be accounted for in the general ledger with other Grant Funds. Third party in-kind (non-cash) contributions are not required to be recorded in the general ledger, but must be under accounting control, possibly through the use of a memorandum ledger. See 2 CFR 200.302.

(b)    **Source Documentation.** Accounting records must be supported by such source documentation as canceled checks, bank statements, invoices, paid bills, donor letters, time and attendance records, activity reports, travel reports, contractual and consultant agreements, and subaward documentation. All supporting documentation should be clearly identified with the Award and general ledger accounts which are to be charged or credited.

(i)    The documentation standards for salary charges to grants are prescribed by 2 CFR 200.430, and in the cost principles applicable to the entity's organization (Paragraphs 7.4 through 7.7).

Agreement No. FCSVR04536     FY. 2017

(ii)        If records do not meet the standards in 2 CFR 200.430, then Grantor may notify Grantee in **PART TWO**, **PART THREE** or **Exhibit H** of the requirement to submit Personnel activity reports. *See* 2 CFR 200.430(i)(8). Personnel activity reports shall account on an after-the-fact basis for one hundred percent (100%) of the employee's actual time, separately indicating the time spent on the grant, other grants or projects, vacation or sick leave, and administrative time, if applicable. The reports must be signed by the employee, approved by the appropriate official, and coincide with a pay period. These time records should be used to record the distribution of salary costs to the appropriate accounts no less frequently than quarterly.

(iii)        Formal agreements with independent contractors, such as consultants, must include a description of the services to be performed, the period of performance, the fee and method of payment, an itemization of travel and other costs which are chargeable to the agreement, and the signatures of both the contractor and an appropriate official of Grantee.

(iv)        If third party in-kind (non-cash) contributions are used for Grant purposes, the valuation of these contributions must be supported with adequate documentation.

(c)        **Internal Control.** Effective control and accountability must be maintained for all cash, real and personal property, and other assets. Grantee must adequately safeguard all such property and must provide assurance that it is used solely for authorized purposes. Grantee must also have systems in place that provide reasonable assurance that the information is accurate, allowable, and compliant with the terms and conditions of this Agreement.

(d)        **Budget Control.** Records of expenditures must be maintained for each Award by the cost categories of the approved Budget (including indirect costs that are charged to the Award), and actual expenditures are to be compared with Budgeted amounts at least quarterly.

(e)        **Cash Management.** Requests for advance payment shall be limited to Grantee's immediate cash needs. Grantee must have written procedures to minimize the time elapsing between the receipt and the disbursement of Grant Funds to avoid having excess funds on hand. 2 CFR 200.305.

7.9.     Federal Requirements. All Grants, whether funded in whole or in part with either Federal or State funds, are subject to Federal requirements and regulations, including but not limited to 2 CFR Part 200, 44 Ill. Admin. Code 7000.30(b) and the Financial Management Standards in Paragraph 7.8.

7.10.     Profits. It is not permitted for any person or entity to earn a Profit from an Award. *See, e.g.,* 2 CFR 200.400(g); *see also* 30 ILCS 708/60(a)(7).

7.11.     Management of Program Income. Grantee is encouraged to earn income to defray program costs where appropriate, subject to 2 CFR 200.307.

## ARTICLE VIII
## REQUIRED CERTIFICATIONS

8.1.     Certifications. Grantee, its officers, and directors shall be responsible for compliance with the enumerated certifications to the extent that the certifications apply to Grantee.

(a)        **Bribery.** Grantee certifies that it has not been convicted of bribery or attempting to bribe an officer or employee of the State of Illinois, nor made an admission of guilt of such conduct which is a matter of record (30 ILCS 500/50-5).

State Of Illinois-Department of Human Services.
GRANT AGREEMENT FISCAL YEAR 2017 / 6 8 16
Published Revision :     2016.11.03.08.46.13 262
Page: 10   of   56

Agreement No. FCSVR04536 _____ FY. 2017

(b)     **Bid Rigging.** Grantee certifies that it has not been barred from contracting with a unit of State or local government as a result of a violation of Paragraph 33E-3 or 33E-4 of the Criminal Code of 1961 (720 ILCS 5/33E-3 or 720 ILCS 5/33E-4, respectively).

(c)     **Debt to State.** Grantee certifies that neither it, nor its affiliate(s), is/are barred from receiving an Award because Grantee, or its affiliate(s), is/are delinquent in the payment of any debt to the State, unless Grantee, or its affiliate(s), has/have entered into a deferred payment plan to pay off the debt, and Grantee acknowledges Grantor may declare the Agreement void if the certification is false (30 ILCS 500/50-11).

(d)     **Educational Loan.** Grantee certifies that it is not barred from receiving State agreements as a result of default on an educational loan (5 ILCS 385/1*et seq.*).

(e)     **International Boycott.** Grantee certifies that neither it nor any substantially owned affiliated company is participating or shall participate in an international boycott in violation of the provision of the U.S. Export Administration Act of 1979 (50 USC Appendix 2401*et seq.* or the regulations of the U.S. Department of Commerce promulgated under that Act (15 CFR Parts 730 through 774).

(f)     **Dues and Fees.** Grantee certifies that it is not prohibited from receiving an Award because it pays dues or fees on behalf of its employees or agents, or subsidizes or otherwise reimburses them for payment of their dues or fees to any club which unlawfully discriminates (775 ILCS 25/1*et seq.*).

(g)     **Pro-Children Act.** Grantee certifies that it is in compliance with the Pro-Children Act of 2001 in that it prohibits smoking in any portion of its facility used for the provision of health, day care, early childhood development services, education or library services to children under the age of eighteen (18), which services are supported by Federal or State government assistance (except such portions of the facilities which are used for inpatient substance abuse treatment) (20 USC 7181-7184).

(h)     **Drug-Free Work Place.** If Grantee is not an individual, Grantee certifies it will provide a drug free workplace pursuant to the Drug Free Workplace Act. 30 ILCS 580/3. If Grantee is an individual and this Agreement is valued at more than $5,000, Grantee certifies it shall not engage in the unlawful manufacture, distribution, dispensation, possession, or use of a controlled substance during the performance of the Agreement. 30 ILCS 580/4. Grantee further certifies that it is in compliance with the government-wide requirements for a drug-free workplace as set forth in 41 USC 8102.

(i)     **Motor Voter Law.** Grantee certifies that it is in full compliance with the terms and provisions of the National Voter Registration Act of 1993 (52 USC 20501*et seq.*).

(j)     **Clean Air Act and Clean Water Act.** Grantee certifies that it is in compliance with all applicable standards, order or regulations issued pursuant to the Clean Air Act (42 USC §7401*et seq.*) and the Federal Water Pollution Control Act, as amended (33 USC §1251*et seq.*).

(k)     **Debarment.** Grantee certifies that it is not debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this Agreement by any Federal department or agency (45 CFR Part 76), or by the State (*See* 30 ILCS 708/25(6)(G)).

(l)     **Non-procurement Debarment and Suspension.** Grantee certifies that it is in compliance with Subpart C of 2 CFR Part 180 as supplemented by 2 CFR Part 376, Subpart C.

Agreement No. FCSVR04536 _____ FY. 2017

(m)     **Grant for the Construction of Fixed Works.** Grantee certifies that all Programs for the construction of fixed works which are financed in whole or in part with funds provided by this Agreement shall be subject to the Prevailing Wage Act (820 ILCS 130/0.01 *et seq.*) unless the provisions of that Act exempt its application. In the construction of the Program, Grantee shall comply with the requirements of the Prevailing Wage Act including, but not limited to, inserting into all contracts for such construction a stipulation to the effect that not less than the prevailing rate of wages as applicable to the Program shall be paid to all laborers, workers, and mechanics performing work under the Award and requiring all bonds of contractors to include a provision as will guarantee the faithful performance of such prevailing wage clause as provided by contract.

(n)     **Health Insurance Portability and Accountability Act.** Grantee certifies that it is in compliance with the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Public Law No. 104-191, 45 CFR Parts 160, 162 and 164, and the Social Security Act, 42 USC 1320d-2 through 1320d-7, in that it may not use or disclose protected health information other than as permitted or required by law and agrees to use appropriate safeguards to prevent use or disclosure of the protected health information. Grantee shall maintain, for a minimum of six (6) years, all protected health information.

(o)     **Criminal Convictions.** Grantee certifies that neither it nor any officer, director, partner or other managerial agent of Grantee has been convicted of a felony under the Sarbanes-Oxley Act of 2002, nor a Class 3 or Class 2 felony under Illinois Securities Law of 1953, or that at least five (5) years have passed since the date of the conviction. Grantee further certifies that it is not barred from receiving an Award under 30 ILCS 500/50-10.5, and acknowledges that Grantor shall declare the Agreement void if this certification is false (30 ILCS 500/50-10.5).

(p)     **Forced Labor Act.** Grantee certifies that it complies with the State Prohibition of Goods from Forced Labor Act, and certifies that no foreign-made equipment, materials, or supplies furnished to the State under this Agreement have been or will be produced in whole or in part by forced labor, convict labor, or indentured labor under penal sanction (30 ILCS 583).

(q)     **Illinois Use Tax.** Grantee certifies in accordance with 30 ILCS 500/50-12 that it is not barred from receiving an Award under this Paragraph. Grantee acknowledges that this Agreement may be declared void if this certification is false.

(r)     **Environmental Protection Act Violations.** Grantee certifies in accordance with 30 ILCS 500/50-14 that it is not barred from receiving an Award under this Paragraph. Grantee acknowledges that this Agreement may be declared void if this certification is false.

(s)     **Goods from Child Labor Act.** Grantee certifies that no foreign-made equipment, materials, or supplies furnished to the State under this Agreement have been produced in whole or in part by the labor of any child under the age of twelve (12) (30 ILCS 584).

(t)     **Federal Funding Accountability and Transparency Act of 2006.** Grantee certifies that it is in compliance with the terms and requirements of 31 USC 6101.

## ARTICLE IX
## CRIMINAL DISCLOSURE

Agreement No. FCSVR04536        FY. 2017

9.1.    Mandatory Criminal Disclosures. Grantee shall continue to disclose to Grantor all violations of criminal law involving fraud, bribery or gratuity violations potentially affecting this Award. *See* 30 ILCS 708/40. Additionally, if Grantee receives over $10 million in total Grant Funds, funded by either State or Federal funds, during the period of this Award, Grantee must maintain the currency of information reported to SAM regarding civil, criminal or administrative proceedings as required by 2 CFR 200.113 and Appendix II of 2 CFR Part 200, and 30 ILCS 708/40.

## ARTICLE X
### UNLAWFUL DISCRIMINATION

10.1.    Compliance with Nondiscrimination Laws. Grantee, its employees and subcontractors under subcontract made pursuant to this Agreement, shall comply with all applicable provisions of State and Federal laws and regulations pertaining to nondiscrimination, sexual harassment and equal employment opportunity including, but not limited to, the following laws and regulations and all subsequent amendments thereto:

(a)    The Illinois Human Rights Act (775 ILCS 5/1-101*et seq.*), including, without limitation, 44 Ill. Admin. Code Part 750, which is incorporated herein;

(b)    The Public Works Employment Discrimination Act (775 ILCS 10/1*et seq.*);

(c)    The United States Civil Rights Act of 1964 (as amended) (42 USC 2000a- and 2000h-6). (*See also* guidelines to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons [Federal Register: February 18, 2002 (Volume 67, Number 13, Pages 2671-2685)]);

(d)    Section 504 of the Rehabilitation Act of 1973 (29 USC 794);

(e)    The Americans with Disabilities Act of 1990 (42 USC 12101*et seq.*); and

(f)    The Age Discrimination Act (42 USC 6101*et seq.*).

## ARTICLE XI
### LOBBYING

11.1.    Improper Influence. Grantee certifies that no Grant Funds have been paid or will be paid by or on behalf of Grantee to any person for influencing or attempting to influence an officer or employee of any government agency, a member of Congress or Illinois General Assembly, an officer or employee of Congress or Illinois General Assembly, or an employee of a member of Congress or Illinois General Assembly in connection with the awarding of any agreement, the making of any grant, the making of any loan, the entering into of any cooperative agreement, or the extension, continuation, renewal, amendment or modification of any agreement, grant, loan or cooperative agreement. 31 USC 1352. Additionally, Grantee certifies that it has filed the required certification under the Byrd Anti-Lobbying Amendment (31 USC 1352), if applicable.

11.2:    Federal Form LLL. If any funds, other than Federally-appropriated funds, were paid or will be paid to any person for influencing or attempting to influence any of the above persons in connection with this Agreement, the undersigned must also complete and submit Federal Form LLL, Disclosure of Lobbying Activities Form, in accordance with its instructions.

Agreement No. FCSVR04536          FY. 2017

11.3.    Lobbying Costs. Grantee certifies that it is in compliance with the restrictions on lobbying set forth in 2 CFR Part 200.450. For any Indirect Costs associated with this Agreement, total lobbying costs shall be separately identified in the Program Budget, and thereafter treated as other Unallowable Costs.

11.4.    Procurement Lobbying. Grantee warrants and certifies that it and, to the best of its knowledge, its sub-grantees have complied and will comply with Executive Order No. 1 (2007) (EO 1-2007). EO 1-2007 generally prohibits Grantees and subcontractors from hiring the then-serving Governor's family members to lobby procurement activities of the State, or any other unit of government in Illinois including local governments, if that procurement may result in a contract valued at over $25,000. This prohibition also applies to hiring for that same purpose any former State employee who had procurement authority at any time during the one-year period preceding the procurement lobbying activity.

11.5.    Subawards. Grantee must include the language of this ARTICLE XI in the award documents for any subawards made pursuant to this Award at all tiers. All sub-awardees are also subject to certification and disclosure.  Pursuant to Appendix II(I) to 2 CFR Part 200, Grantee shall forward all disclosures by contractors regarding this certification to Grantor.

11.6.    Certification. This certification is a material representation of fact upon which reliance was placed to enter into this transaction and is a prerequisite for this transaction, pursuant to 31 USC 1352. Any person who fails to file the required certifications shall be subject to a civil penalty of not less than $10,000, and not more than $100,000, for each such failure.

## ARTICLE XII
## MAINTENANCE AND ACCESSIBILITY OF RECORDS; MONITORING

12.1.    Records Retention. Grantee shall maintain for three (3) years from the date of submission of the final expenditure report, adequate books, all financial records and, supporting documents, statistical records, and all other records pertinent to this Award, adequate to comply with 2 CFR 200.333, unless a different retention period is specified in 2 CFR 200.333.  If any litigation, claim or audit is started before the expiration of the retention period, the records must be retained until all litigation, claims or audit exceptions involving the records have been resolved and final action taken.

12.2.    Accessibility of Records. Grantee, in compliance with 2 CFR 200.336, shall make books, records, related papers, supporting documentation and personnel relevant to this Agreement available to authorized Grantor representatives, the Illinois Auditor General, Illinois Attorney General, any Executive Inspector General, the Grantor's Inspector General, Federal authorities, any person identified in 2 CFR 200.336, and any other person as may be authorized by Grantor (including auditors), by the State of Illinois or by Federal statute. Grantee shall cooperate fully in any such audit.

12.3.    Failure to Maintain Books and Records. Failure to maintain books, records and supporting documentation, as described in this ARTICLE XII, shall establish a presumption in favor of the State for the recovery of any funds paid by the State under this Agreement for which adequate books, records and supporting documentation are not available to support disbursement.

12.4.    Monitoring and Access to Information. Grantee must monitor its activities to assure compliance with applicable State and Federal requirements and to assure its performance expectations are being achieved. Grantor shall monitor the activities of Grantee to assure compliance with all requirements and performance

Agreement No. FCSVR04536        FY. 2017

expectations of the award. Grantee shall timely submit all financial and performance reports, and shall supply, upon Grantor's request, documents and information relevant to the Award. Grantor may make site visits as warranted by program needs. *See* 2 CFR 200.328 and 200.331. Additional monitoring requirements may be in **PART TWO** or **PART THREE**.

### ARTICLE XIII
### FINANCIAL REPORTING REQUIREMENTS

13.1.    Required Periodic Financial Reports. Grantee agrees to submit financial reports as requested and in the format required by Grantor. Grantee shall file quarterly reports with Grantor describing the expenditure(s) of the funds related thereto, unless more frequent reporting is required by the Grantee pursuant to specific award conditions. 2 CFR 200.207. The first of such reports shall cover the first three months after the Award begins. Quarterly reports must be submitted no later than 30 calendar days following the three month period covered by the report. Additional information regarding required financial reports may be set forth in **Exhibit H** . Failure to submit the required financial reports may cause a delay or suspension of funding. 30 ILCS 705/1*et seq.*; 2 CFR 207(b)(3) and 200.327.

13.2.    Close-out Reports.

(a)    Grantee shall submit a Close-out Report within 60 calendar days following the end of the period of performance for this Agreement. In the event that this Agreement is terminated prior to the end of the Term, Grantee shall submit a Close-out Report within 60 calendar days of such termination. The format of this Close-out Report shall follow a format prescribed by Grantor. 2 CFR 200.343.

(b)    If an audit or review of Grantee occurs and results in adjustments after Grantee submits a Close-out Report, Grantee will submit a new Close-out Report based on audit adjustments, and immediately submit a refund to Grantor, if applicable. 2 CFR 200.344.

13.3.    Annual Financial Reports.

(a)    This Paragraph 13.3 applies to all Grantees, unless exempted by **PART TWO** or **PART THREE**.

(b)    Grantees shall submit Annual Financial Reports within 180 days after the Grantee's fiscal year ending on or after June 30. This deadline may be extended at the discretion of the Grantor.

(c)    The Annual Financial Report must cover the same period the Audited Financial Statements cover. If no Audited Financial Statements are required, however, then the Annual Financial Report must cover the same period as the Grantee's tax return.

(d)    Annual Financial Reports must include an in relation to opinion from the report issuer on the Cost and Revenue schedules included in the Annual Financial Report.

(e)    Annual Financial Reports shall follow a format prescribed by Grantor.

13.4.    Effect of Failure to Comply. Failure to comply with reporting requirements shall result in the withholding of funds, the return of improper payments or Unallowable Costs, will be considered a material breach of this Agreement and may be the basis to recover Grant Funds. Grantee's failure to comply with this**ARTICLE XIII**,

Agreement No. FCSVR04536        FY. 2017

ARTICLE XIV, or ARTICLE XV shall be considered prima facie evidence of a breach and may be admitted as such, without further proof, into evidence in an administrative proceeding before Grantor, or in any other legal proceeding.

## ARTICLE XIV
## PERFORMANCE REPORTING REQUIREMENTS

14.1.    Required Periodic Performance Reports. Grantee agrees to submit Performance Reports as requested and in the format required by Grantor. Performance Measures listed in **Exhibit E** must be reported quarterly, unless otherwise specified in **PART TWO** or **PART THREE**. Unless so specified, the first of such reports shall cover the first three months after the Award begins. If Grantee is not required to report performance quarterly, then Grantee must submit a Performance Report at least annually. In unusual circumstances where more frequent reporting is necessary some Grantees may be required to submit monthly Performance Reports; in such cases, Grantor shall notify Grantee of same in **PART TWO** or **PART THREE**. Pursuant to 2 CFR 200.328, periodic Performance Reports shall be submitted no later than 30 calendar days following the period covered by the report. For certain construction-related Awards, such reports may be exempted as identified in **PART TWO** or **PART THREE**. 2 CFR 200.328. Failure to submit such required Performance Reports may cause a delay or suspension of funding. 30 ILCS 705/1 et seq.

14.2.    Close-out Performance Reports. Grantee agrees to submit a Close-out Performance Report, in the format required by Grantor, within 60 calendar days following the end of the period of performance. See 2 CFR 200.343.

14.3.    Content of Performance Reports. Pursuant to 2 CFR 200.328(b)(2) all Performance Reports must include Program qualitative and quantitative information, including a comparison of actual accomplishments to the objectives of the award established for the period; where the accomplishments can be quantified, a computation of the cost if required; performance trend data and analysis if required; and reasons why established goals were not met, if appropriate. Appendices may be used to include additional supportive documentation. Additional content and format guidelines for the Performance Reports will be determined by Grantor contingent on the Award's statutory, regulatory and administrative requirements, and are included in **PART TWO** or **PART THREE** of this Agreement.

14.4.    Performance Standards. Grantee shall perform in accordance with the Performance Standards set forth in **Exhibit F**. See 2 CFR 200.301 and 200.210.

## ARTICLE XV
## AUDIT REQUIREMENTS

15.1.    Audits. Grantee shall be subject to the audit requirements contained in the Single Audit Act Amendments of 1996 (31 USC 7501-7507) and Subpart F of 2 CFR Part 200, and the audit rules set forth by the Governor's Office of Management and Budget. See 30 ILCS 708/65(c).

15.2.    Single and Program-Specific Audits. If Grantee expends $750,000 or more in Federal Awards (direct federal and federal pass-through awards combined) during its fiscal year, it must have a single audit or program-specific audit conducted for that year as required In 2 CFR 200.501 and other applicable sections of Subpart F. The audit and reporting package (including data collection form) must be completed as described in 2 CFR 200.512 (single audit) or 2 CFR 200.507 (Program-specific audit). The audit (and package) must be submitted

Agreement No. FCSVR04536        FY. 2017

to Grantor either within (i) 30 calendar days after receipt of the auditor's report(s) or (ii) nine months after the end of the audit period, whichever is earlier.

15.3.    Financial Statement Audit. If Grantee expends less than $750,000 in Federal Awards during its fiscal year and is not subject to the audit requirements in15.2, but receives between $300,000 and $499,999 in Federal and State Awards combined, Grantee must have a financial statement audit conducted in accordance with Generally Accepted Auditing Standards(GAAS); if Grantee expends between $500,000 and $749,999 in Federal and State awards combined, Grantee must have a financial statement audit conducted in accordance with Generally Accepted Government Auditing Standards (GAGAS). Grantee shall submit these financial statement audit reports to Grantor either within (i) 30 calendar days after receipt of the auditor's report(s) or (ii) 180 calendar days after the end of the audit period, whichever is earlier.

15.4.    For Profit Entities. A For-Profit entity that expends $750,000 or more in Federal Awards (direct federal and federal pass-through awards combined) during its fiscal year is required to have a Program-specific audit conducted in accordance with 2 CFR 200.507. The Program-specific audit must be completed and the reporting required by 2 CFR 200.507 must be submitted to Grantor either within (i) 30 calendar days after receipt of the auditor's report(s) or (ii) nine months after  the end of the audit period, whichever is earlier. A For-Profit entity that expends less than $750,000 in Federal Awards during its fiscal year, but receives between $300,000 and $499,999 in Federal and State Awards combined must have a financial statement audit conducted in accordance with Generally Accepted Auditing Standards (GAAS); a For-Profit entity that expends between $500,000 and $749,999 in Federal and State awards combined must have a financial statement audit conducted in accordance with Generally Accepted Government Auditing Standards (GAGAS). The For-Profit entity shall submit these financial statement audit reports to Grantor either within (i) 30 calendar days after receipt of the auditor's report(s) or (ii) 180 calendar days after the end of the audit period, whichever is earlier.

15.5.    Performance of Audits. For those organizations required to submit an independent audit report, the audit is to be conducted by a Certified Public Accountant or Certified Public Accounting Firm licensed in the State of Illinois. For audits required to be performed subject to Generally Accepted Government Auditing Standards, Grantee shall request and maintain on file a copy of the auditor's most recent peer review report and acceptance letter.

ARTICLE XVI
TERMINATION; SUSPENSION

16.1.    Termination.

(a)    This Agreement may be terminated, in whole or in part, by either Party for any or no reason upon thirty (30) days' prior written notice to the other Party. If terminated by the Grantee, Grantee must include the reasons for such termination, the effective date, and, in the case of a partial termination, the portion to be terminated. If Grantor determines in the case of a partial termination that the reduced or modified portion of the Award will not accomplish the purposes for which the Award was made, Grantor may terminate the Agreement in its entirety. 2 CFR 200.339(a)(4).

(b)    This Agreement may be terminated, in whole or in part, by Grantor without advance notice:

(i)    Pursuant to a funding failure under Paragraph4.1;

Agreement No. FCSVR04536          FY. 2017

(ii)        If Grantee fails to comply with the terms and conditions of this or any Award, application or proposal, including any applicable rules or regulations, or has made a false representation in connection with the receipt of this or any Grant;

(iii)       For cause, which may render the Grantee ineligible for consideration for future grants from the Grantor or other State agencies; or

(iv)       If Grantee breaches this Agreement and either (1) fails to cure such breach within 15 calendar days' written notice thereof, or (2) if such cure would require longer than 15 calendar days and the Grantee has failed to commence such cure within 15 calendar days' written notice thereof. In the event that Grantor terminates this Agreement as a result of the breach of the Agreement by Grantee, Grantee shall be paid for work satisfactorily performed prior to the date of termination.

16.2.    Suspension. Grantor may suspend this Agreement, in whole or in part, pursuant to a funding failure under Paragraph 4.1 or if the Grantee fails to comply with terms and conditions of this or any Award. If suspension is due to Grantee's failure to comply, Grantor may withhold further payment and prohibit Grantee from incurring additional obligations pending corrective action by Grantee or a decision to terminate this Agreement by Grantor. Grantor may determine to allow necessary and proper costs that Grantee could not reasonably avoid during the period of suspension.

16.3.    Objection. If Grantor suspends or terminates this Agreement, in whole or in part, for cause, Grantee may avail itself of any opportunities to object and challenge such suspension or termination in accordance with any applicable written processes and procedures. 2 CFR 200.341.

16.4.    Effects of Suspension and Termination.

(a)       Grantor may credit Grantee for expenditures incurred in the performance of authorized services under this Agreement prior to the effective date of a suspension or termination.

(b)       Grantee shall not incur any costs or obligations that require the use of these Grant Funds after the effective date of a suspension or termination, and shall cancel as many outstanding obligations as possible.

(c)       Costs to Grantee resulting from obligations incurred by Grantee during a suspension or after termination of the Agreement are not allowable unless:

i.        Grantor expressly authorizes them in the notice of suspension or termination; and

ii.       The costs result from obligations properly incurred before the effective date of suspension or termination, are not in anticipation of the suspension or termination, and the costs would be allowable if the Agreement was not suspended or terminated. 2 CFR 200.342.

16.5.    Close-out of Terminated Agreements. If this Agreement is terminated, in whole or in part, the Parties shall comply with all close-out and post-termination requirements of this Agreement. 2 CFR 200.339(c).

**ARTICLE XVII**

Agreement No. FCSVR04536 _____    **FY.** 2017

## SUBCONTRACTS/SUB-GRANTS

17.1.    Sub-recipients/Delegation. Grantee may not subcontract nor sub-grant any portion of this Agreement nor delegate any duties hereunder without Prior Approval of Grantor. The requirement for Prior Approval is satisfied if the subcontractor or sub-grantee has been identified in the Uniform Grant Application, such as, without limitation, a Project Description, and Grantor has approved.

17.2.    Application of Terms.  Grantee shall advise any sub-grantee of funds awarded through this Agreement of the requirements imposed on them by Federal and State laws and regulations, and the provisions of this Agreement.

### ARTICLE XVIII
### NOTICE OF CHANGE

18.1.    Notice of Change. Grantee shall notify the Grantor if there is a change in Grantee's legal status, Federal employer identification number (FEIN), DUNS number, SAM registration or the state equivalent registration status, Related Parties, senior management, or address.See 30 ILCS 708/60(a). If the change is anticipated, Grantee shall give thirty (30) days' prior written notice to Grantor. If the change is unanticipated, Grantee shall give notice as soon as practicable thereafter.  Grantor reserves the right to take any and all appropriate action as a result of such change(s).

18.2.    Failure to Provide Notification. Grantee shall hold harmless Grantor for any acts or omissions of Grantor resulting from Grantee's failure to notify Grantor of these changes.

18.3.    Notice of Impact. Grantee shall immediately notify Grantor of any event that may have a material impact on Grantee's ability to perform this Agreement.

18.4.    Circumstances Affecting Performance; Notice. In the event Grantee becomes a party to any litigation, investigation or transaction that may reasonably be considered to have a material impact on Grantee's ability to perform under this Agreement, Grantee shall notify Grantor, in writing, within five (5) calendar days of determining such litigation or transaction may reasonably be considered to have a material impact on the Grantee's ability to perform under this Agreement.

18.5.    Effect of Failure to Provide Notice. Failure to provide the notice described in Paragraph18.4 shall be grounds for immediate termination of this Agreement and any costs incurred after notice should have been given shall be disallowed.

### ARTICLE XIX
### REORGANIZATION AND BOARD MEMBERSHIP

19.1.    Effect of Reorganization. Grantee acknowledges that this Agreement is made by and between Grantor and Grantee, as Grantee is currently organized and constituted. No promise or undertaking made hereunder is an assurance that Grantor agrees to continue this Agreement, or any license related thereto, should Grantee reorganize or otherwise substantially change the character of its corporate structure, business structure or governance structure. Grantee agrees that it will give Grantor prior notice of any such action and will provide any and all reasonable documentation necessary for Grantor to review the proposed transaction including financial records and corporate and shareholder minutes of any corporation which may be involved. Failure to comply with

Agreement No. FCSVR04536 _____ FY. 2017 __

this ARTICLE XIX shall constitute a material breach of this Agreement.

## ARTICLE XX
## AGREEMENTS WITH OTHER STATE AGENCIES

20.1.    Agreement Disclosure. Grantee shall fully disclose, in **Exhibit G**, all contracts and other agreements to which it is a party or it anticipates entering into within one month after the effective date of this Award with any other State agency. For each contract or agreement, Grantee shall indicate:

(a)    The name of the State agency;

(b)    The number of the contract(s) or other agreement(s);

(c)    The estimated amount of the contract(s) or other agreement(s);

(d)    The term of the contract(s) or other agreement(s); and

(e)    The nature or purpose of the contract(s) or other agreement(s).

If Grantee has multiple Agreements with Grantor for the same fiscal year, Grantee only needs to supplement its previously submitted **Exhibit G.**

20.2.    Copies upon Request. Grantee shall, upon request by Grantor, provide Grantor with copies of contracts or other agreements to which Grantee is a party with any other State agency.

## ARTICLE XXI
## CONFLICT OF INTEREST

21.1.    Required Disclosures. Grantee must immediately disclose in writing any potential or actual Conflict of Interest to the Grantor. 2 CFR 200.112 and 44 Ill. Admin. Code 7000.40(b)(3).

21.2.    Prohibited Payments. Grantee agrees that payments made by Grantor under this Agreement will not be used to compensate, directly or indirectly, any person: (1) currently holding an elective office in this State including, but not limited to, a seat in the General Assembly, or (2) employed by an office or agency of the State of Illinois whose annual compensation is in excess of sixty percent (60%) of the Governor's annual salary, or $106,447.20 (30 ILCS 500/50-13).

21.3.    Request for Exemption. Grantee may request written approval from Grantor for an exemption from Paragraph 21.2. Grantee acknowledges that Grantor is under no obligation to provide such exemption and that Grantor may, if an exemption is granted, grant such exemption subject to such additional terms and conditions as Grantor may require.

## ARTICLE XXII
## EQUIPMENT OR PROPERTY

22.1.    Transfer of Equipment. Grantor shall have the right to require that Grantee transfer to Grantor

Agreement No. FCSVR04536         FY. 2017

any equipment, including title thereto, purchased in whole with Grantor funds, if Grantor determines that Grantee has not met the conditions of 2 CFR 200.439(a). Grantor shall notify Grantee in writing should Grantor require the transfer of such equipment. Upon such notification by Grantor, and upon receipt or delivery of such equipment by Grantor, Grantee will be deemed to have transferred the equipment to Grantor as if Grantee had executed a bill of sale therefor.

22.2.    Prohibition against Disposition/Encumbrance. The Grantee is prohibited from, and may not sell, transfer, encumber (other than original financing) or otherwise dispose of said equipment, material, or real property during the Grant Term without Prior Approval of Grantor.  Any real property acquired using Grant Funds must comply with the requirements of 2 CFR 200.311.

22.3.    Equipment and Procurement. Grantee must comply with the uniform standards set forth in 2 CFR 200.310–200.316 governing the management and disposition of property which cost was supported by Grant Funds. Any waiver from such compliance must be granted by either the President's Office of Management and Budget, the Governor's Office of Management and Budget, or both, depending on the source of the Grant Funds used. Additionally, Grantee must comply with the standards set forth in 2 CFR 200.317-200.326 for use in establishing procedures for the procurement of supplies and other expendable property, equipment, real property and other services with Grant Funds. These standards are furnished to ensure that such materials and services are obtained in an effective manner and in compliance with the provisions of applicable Federal and State statutes and executive orders.

### ARTICLE XXIII
### PROMOTIONAL MATERIALS; PRIOR NOTIFICATION

23.1.    Publications, Announcements, etc. Use of Grant Funds for promotions is subject to the prohibitions for advertising or public relations costs in 2 CFR 200.421(e). In the event that Grantor funds are used in whole or in part to produce any written publications, announcements, reports, flyers, brochures or other written materials, Grantee agrees to  include in these publications, announcements, reports, flyers, brochures and all other such material, the phrase "Funding provided in whole or in part by the [Grantor]." Exceptions to this requirement must be requested, in writing, from Grantor and will be considered authorized only upon written notice thereof to Grantee.

23.2.    Prior Notification/Release of Information. Grantee agrees to notify Grantor ten (10) days prior to issuing public announcements or press releases concerning work performed pursuant to this Agreement, or funded in whole or in part by this Agreement, and to cooperate with Grantor in joint or coordinated releases of information.

### ARTICLE XXIV
### INSURANCE

24.1.    Purchase and Maintenance of Insurance. Grantee shall maintain in full force and effect during the Term of this Agreement casualty and bodily injury insurance, as well as insurance sufficient to cover the replacement cost of any and all real or personal property, or both, purchased or, otherwise acquired, or improved in whole or in part, with funds disbursed pursuant to this Agreement. 2 CFR 200.310.  Additional insurance requirements may be detailed in **PART TWO** or **PART THREE**.

24.2.    Claims. If a claim is submitted for real or personal property, or both, purchased in whole with

Agreement No. FCSVR04536       FY. 2017

funds from this Agreement and such claim results in the recovery of money, such money recovered shall be surrendered to Grantor.


## ARTICLE XXV
### LAWSUITS AND INDEMNIFICATION

25.1.    Independent Contractor. Grantee is an independent contractor under this Agreement and neither Grantee nor any employee or agent of Grantee is an employee of Grantor and do not acquire any employment rights with Grantor or the State of Illinois by virtue of this Agreement. Grantee will provide the agreed services and achieve the specified results free from the direction or control of Grantor as to the means and methods of performance. Grantee will be required to provide its own equipment and supplies necessary to conduct its business; provided, however, that in the event, for its convenience or otherwise, Grantor makes any such equipment or supplies available to Grantee, Grantee's use of such equipment or supplies provided by Grantor pursuant to this Agreement shall be strictly limited to official Grantor or State of Illinois business and not for any other purpose, including any personal benefit or gain.

25.2.    Indemnification. To the extent permitted by law, Grantee agrees to hold harmless Grantor against any and all liability, loss, damage, cost or expenses, including attorneys' fees, arising from the intentional torts, negligence or breach of contract of Grantee, with the exception of acts performed in conformance with an explicit, written directive of Grantor. Indemnification by Grantor will be governed by the State Employee Indemnification Act (5 ILCS 350/1 et seq.) as interpreted by the Illinois Attorney General. Grantor makes no representation that Grantee, an independent contractor, will qualify or be eligible for indemnification under said Act.


## ARTICLE XXVI
### MISCELLANEOUS

26.1.    Gift Ban. Grantee is prohibited from giving gifts to State employees pursuant to the State Officials and Employees Ethics Act (5 ILCS 430/10-10) and Executive Order 15-09.

26.2.    Access to Internet. Grantee must have Internet access. Internet access may be either dial-up or high-speed. Grantee must maintain, at a minimum, one business e-mail address that will be the primary receiving point for all e-mail correspondence from Grantor. Grantee may list additional e-mail addresses at any time during the Term of this Agreement. The additional addresses may be for a specific department or division of Grantee or for specific employees of Grantee. Grantee must notify Grantor of any e-mail address changes within five (5) business days from the effective date of the change.

26.3.    Exhibits and Attachments. **Exhibits A** through **H, PART TWO, PART THREE,** if applicable, and all other exhibits and attachments hereto are incorporated herein in their entirety.

26.4.    Assignment Prohibited. Grantee acknowledges that this Agreement may not be sold, assigned, or transferred in any manner by Grantee, to include an assignment of Grantee's rights to receive payment hereunder, and that any actual or attempted sale, assignment, or transfer by Grantee without the Prior Approval of Grantor in writing shall render this Agreement null, void and of no further effect.

26.5.    Amendments. This Agreement may be modified or amended at any time during its Term by

Agreement No. FCSVR04536        FY. 2017

mutual consent of the Parties, expressed in writing and signed by the Parties.

26.6.    Severability. If any provision of this Agreement is declared invalid, its other provisions shall not be affected thereby.

26.7.    No Waiver. No failure of Grantor to assert any right or remedy hereunder will act as a waiver of its right to assert such right or remedy at a later time or constitute a course of business upon which Grantee may rely for the purpose of denial of such a right or remedy to Grantor.

26.8.    Applicable Law; Claims. This Agreement and all subsequent amendments thereto, if any, shall be governed and construed in accordance with the laws of the State of Illinois. Any claim against Grantor arising out of this Agreement must be filed exclusively with the Illinois Court of Claims. 705 ILCS 505/1et seq. Grantor does not waive sovereign immunity by entering into this Agreement.

26.9.    Compliance with Law. This Agreement and Grantee's obligations and services hereunder are hereby made and must be performed in compliance with all applicable Federal and State laws, including, without limitation, Federal regulations, State administrative rules, including 44 Ill. Admin. Code 7000, and any and all license requirements or professional certification provisions.

26.10.    Compliance with Confidentiality Laws. If applicable, Grantee shall comply with applicable State and Federal statutes, Federal regulations and Grantor administrative rules regarding confidential records or other information obtained by Grantee concerning persons served under this Agreement. The records and information shall be protected by Grantee from unauthorized disclosure.

26.11.    Compliance with Freedom of Information Act. Upon request, Grantee shall make available to Grantor all documents in its possession that Grantor deems necessary to comply with requests made under the Freedom of Information Act. (5 ILCS 140/7(2)).

26.12.    Precedence. In the event there is a conflict between this Agreement and any of the exhibits or attachments hereto, this Agreement shall control. In the event there is a conflict between PART ONE and PART TWO or PART THREE of this Agreement, PART ONE shall control. In the event there is a conflict between PART TWO and PART THREE of this Agreement, PART TWO shall control. In the event there is a conflict between this Agreement and relevant statute(s) or Administrative Rule(s), the relevant statute(s) or rule(s) shall control.

26.13.    Headings. Article and other headings contained in this Agreement are for reference purposes only and are not intended to define or limit the scope, extent or intent of this Agreement or any provision hereof.

26.14.    Entire Agreement. Grantee and Grantor acknowledge that this Agreement constitutes the entire agreement between them and that no promises, terms, or conditions not recited, incorporated or referenced herein, including prior agreements or oral discussions, shall be binding upon either Grantee or Grantor.

26.15.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be considered to be one and the same agreement, binding on all Parties hereto, notwithstanding that all Parties are not signatories to the same counterpart. Duplicated signatures, signatures transmitted via facsimile, or signatures contained in a Portable Document Format (PDF) document shall be deemed original for all purposes.

26.16.    Attorney Fees and Costs. If Grantor prevails in any proceeding to enforce the terms of this Agreement, including any administrative hearing pursuant to the Grant Funds Recovery Act or the Grant Accountability and Transparency Act, the Grantor has the right to recover reasonable attorneys' fees, costs and

Agreement No. FCSVR04536        FY. 2017

expenses associated with such proceedings.

**THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.**

Agreement No. FCSVR04536 _____ **FY.** 2017

## EXHIBIT A
## PROJECT DESCRIPTION

FEDERAL PROGRAM NAME:
STATE PROGRAM NAME: TEEN REACH
PURPOSE OF GRANT

CSFA Number: 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
Appropriation FY: 2017
Appropriation Code: 8264449Y7
Appropriation Desc: After School Youth Suppor
Appropriation Amount: $172.800.00
Use by DHS as Maintenance of Effort (MOE): No
Use by DHS as Matching Funds: No
CFDA:  · CFDA Name: N/A
FAIN Number: N/A · FAIN Award Agency: N/A
FAIN Award Date: N/A

Exhibit A - Purpose of Grant/Scope of Services
In 1998. the Illinois Department of Human Services implemented the Teen REACH program
(Responsibility. Education. Achievement. Caring and Hope) in an effort to provide positive
youth activities during non-school hours. Through prevention-focused activities, Teen
REACH programs seek to expand the range of choices and opportunities that enable. empower
and encourage youth from ages 6 through 17 to achieve positive growth and development.
improve expectations and capacities for future success and avoid and/or reduce risk-taking
behavior.

Teen REACH programs provide a safe environment with caring adult role models that work
with youth to increase academic performance and develop the life skills necessary for
future success.

······ END OF PROGRAM: TEEN REACH ·······

Agreement No. FCSVR04536          FY. 2017

# EXHIBIT B
## DELIVERABLES OR MILESTONES

Exhibit B – Deliverables
The Provider shall provide a Teen REACH program in accordance with applicable Statutes, Rules, the Teen REACH Program Standards and the BYIS Program Manual.  Provider program responsibilities include, but are not limited to, the following:

Services
1.Teen REACH programs are delivered during out-of-school time which includes: before and after school, school holidays, week-ends and summers.  Teen REACH integrates community efforts on behalf of children and youth, working through collaborations of local schools, faith-based organizations, businesses, human service providers, and Illinois Department of Human Services programs.  The Provider will work collaboratively with other programs and services provided by the Department and its Contractors in the Provider's service area for Teen REACH.

2.The Provider will be required to have linkage agreements and collaborate with schools that will have students attending Teen REACH program activities and from each partnering agency participating in the Teen REACH program.
•Schools - Written letters of collaboration between the Teen REACH program and collaborating schools must be on file in the Teen REACH office. These agreements facilitate collection of data on academic achievement as well as coordination of homework assistance and tutoring efforts. Programs will be required to submit information about students' progress, based on grade reports and attendance and suspension records, to the Department. Copies of signed linkage agreements with every school where participants are attending must be on file indicating an acknowledgment of the schools' willingness to provide copies of the above information. Please note that schools will need to obtain parental/guardian consent before school records can actually be submitted to the Teen REACH program.
•Businesses and Community- IDHS encourages Teen REACH programs to collaborate with local businesses because they can support the target population and the program's activities. Linkage agreements may include mentoring or other volunteer work by employees, job shadowing, and vocational experiences.

3.Community Advisory Council - Programs must form and utilize a Community Advisory Council or board in conducting Teen REACH activities in order to integrate active partners who can devote time and resources to the program. Existing councils may be utilized if they properly represent the positive youth development concept of Teen REACH. The Community Advisory Council must include at least two youth who are current or former Teen REACH participants. The Advisory Council must meet, at a minimum, on a quarterly basis. Minutes, agendas and/or attendance lists must be maintained on file to evidence this activity.

4.Service Hours & Days of Operation

Agreement No. FCSVR04536          FY. 2017

**EXHIBIT B**

The Provider will operate during after school hours based on their community needs, in particular the early evening hours (especially 3 p.m. to 6 p.m.). Providers are encouraged to implement programs that will operate on Saturdays and Sundays.

1. Model A

This is a twelve-month, 240 day program. (Pro-rated to eight-month, 160 day program) Each program site must be open a minimum 240 days per year (160 days 11/1/16 – 6/30/17. The Provider must offer programming every month, including summer vacation and other recognized school breaks as appropriate. Each program site must provide a minimum 720 hours of programming per year. (Pro-rated to 480 hours for eight months)

3. Model B - Statewide

This is a twelve-month, 240 day program. (Pro-rated to eight-month, 160 day program) Each program site must be open a minimum 240 days per year (160 days 11/1/16 – 6/30/17. The Provider must offer programming every month, including summer vacation and other recognized school breaks as appropriate. Each program site must provide a minimum 720 hours of programming per year. (Pro-rated to 480 hours for eight months) The Provider must administer a statewide Teen REACH program through an established network that will provide services in every area of the state as described in the approved program plan. The provider must be sure that the comprehensive Teen REACH program with its six core elements is provided to youth throughout the state.

5. Teen REACH program services are provided for at-risk children and youth ages 6 to 17, or any subset within that age range. Accepted age group subsets are 6-10, 11-13, and 14-17. Because of the Department's priority on targeting services to youth ages 11-17, agencies serving both younger and older age groups must provide no more than 15% of their services to children ages 6 to 10 (i.e., at least 85% of their services to youth ages 11 to 17.) For agencies operating the program at multiple sites, these percentages apply to the total population served by the agency, across all sites, not the number at any individual program site.

The individual and/or family risk factors of youth targeted by the Teen REACH program may include but not be limited to the following:
• Youth lives in a single-parent household Youth resides in a household receiving TANF funds
• Youth experiences academic difficulties
• Youth is in danger or has been previously held back to repeat one or more academic years
• Youth experiencing truancy concerns
• Youth is reported to have behavior issues
• Youth is reported to be a victim of bullying
• Youth is reported to be a perpetrator of bullying
• Youth is unsupervised after school
• Youth has witnessed or been a victim of family violence
• Youth identifies as LGBTQ

Agreement No. FCSVR04536        FY. 2017

⸰ **EXHIBIT B**

•Youth with siblings who dropped out of school
•Youth with siblings who are teen parents
•Youth with siblings who are involved in the juvenile justice system
•Youth with one or both parents who are incarcerated
•Youth is reported to be gang-involved
•Youth has siblings that are involved in gangs
•Youth in DCFS system
•Youth is homeless
•Youth is pregnant
•Youth is parenting

6.Participant Recruitment - To ensure that the Teen REACH program has a consistent level of participation, each agency must plan and implement a recruitment strategy, focusing on the target population.

7.Teen REACH programs must provide programming in each of the following core services in an effort to achieve the associated outcomes below. Program may include additional services appropriate to community and participant needs. Core Services include:
A.Improving Academic performance
Includes time to do homework, tutoring in basic skills, and enrichment programs that encourage creativity.
Outcomes
1.Participant will maintain or improve school attendance.
2.Participant will maintain or improve grades or progress reporting in school.
3.Participants will develop or improve career aspirations and choices.
Developmental assets
1.Participants are actively engaged in learning.
2.Participants are motivated and strive to do well in school
3.Participants are optimistic about a personal future and career

B.Life skills education
Encompasses training and education that promotes the development of healthy lifestyles, and encourages abstinence from risk-taking behaviors in the areas of alcohol and/or substance use, criminal activity, violence and sexual activity. The following participant outcomes are associated with this core service:
Outcomes
1.Participants will increase knowledge of harmful effects of substance use and abuse.
2.Participants will increase knowledge of harmful effects of early sexual activity and pregnancy.
3.Participants will increase anger management and conflict resolution skills.
4.Participants will increase decision making and problem solving skills.
5.Participants will increase healthy nutritional choices

Agreement No. FCSVR04536          FY. 2017

**EXHIBIT B**

Developmental assets
1.Participants believe it is important not to use alcohol and other drugs.
2.Participants believe it is important not to be sexually active.
3.Participants seek to resolve conflict nonviolently.
4.Participants know how to plan ahead and make choices.

C.Parental involvement
Includes opportunities for parents and/or guardians to meet with staff to discuss their
children's activities, and to participate in events that strengthen parent/child bonds and
community involvement. The Teen REACH program utilizes information obtained from families
and participants in decisions related to overall program design and activities.
Outcomes
1.Increase in parental monitoring of academic performance.
2.Increase in understanding of child and adolescent developmental stages and appropriate
expectations.
3.Increase in positive and effective communication with children and teens regarding
alcohol, tobacco and other drug use, sexual activity, abstinence and other life skills.
4.Increase structured activities that promote positive family interaction.
Developmental assets
1.Parents are actively involved in helping the child succeed in school.
2.Parents understand child and adolescent developmental stages and have appropriate
expectations.
3.Families have clear and consistent rules and consequences.
4.Parents and children communicate positively regarding alcohol, tobacco and other drug
use, sexual activity, abstinence and other life skills.
5.Parents foster resilience.
6.Parents plan and spend time in structured activities that promote positive family
interaction.

D.Recreation, sports, cultural and artistic activities
This includes providing activities and arranging safe outlets for youth to try new skills
and develop new interests, to build friendships, find their place in a group, and gain
developmentally relevant experiences.
Outcomes
1.Provide opportunities for participants to engage in cultural enrichment and fine art
activities.
2.Provide opportunities for participants to demonstrate sportsmanship and athletic
skills.
3.Provide opportunities for participants to increase their level of activity.
Developmental assets
1.Participants demonstrate sportsmanship.
2.Participants believe it is important to follow rules.

Agreement No. FCSVR04536        FY. 2017

**EXHIBIT B**

3.Participants respect the ability and contribution of others.

4.Participants engage in activities that foster creativity and spirituality.

5.Participants demonstrate positive relationships with peers.

E.Positive adult mentors

Programs must allow opportunities for youth to develop and maintain positive, sustained relationships with caring adults through mentoring and other programs that emphasize one-on-one interactions. The following program outcomes are associated with this core service:

Outcomes

1.Increase support to youth during times of personal or social stress.

2.Increase support for decision making.

3.Increase access to support with academic tasks and/or homework.

4.Increase opportunities for career awareness and mentoring.

Developmental assets

1.Participants have a connection with a caring adult.

2.Participants believe they can be successful.

3.Participants believe they can make good decisions.

4.Participants believe they have a future.

F.Service learning activities

Service-learning is a method of teaching and learning that connects classroom lessons with meaningful service to the community. Students build academic skills while strengthening communities through service. Service learning combines service tasks with structured, youth-driven opportunities that link the task to self-reflection, self-discovery, and the acquisition and comprehension of values, skills and knowledge content with service tasks.

Outcomes

1.Youth determine and meet real, defined community needs.

2.Youth learn beyond the classroom through active participation in service experiences.

3.Youth develop and use skills and knowledge in real-life situations.

4.Youth increase the amount of time spent to reflect by thinking, discussing and/or writing about service experiences.

5.Youth experience a sense of belonging to a community and an awareness of their responsibility to that community.

Developmental assets

1.Youth experience opportunities for experiential learning.

2.Youth are empowered to assume leadership roles.

3.Youth are involved in the decision making process.

4.Youth place a high value in helping others.

5.Youth develop empathy for others.

6.Youth believes that his/her life has a purpose.

7.Youth engage in productive activities that build job and life skills and reinforce

Agreement No. FCSVR04536 _____ **FY.** 2017_

**EXHIBIT B**

community-mindedness.

8.The Provider must use program models that are evidence-based and scientifically proven
to have a high potential to be effective with the target population and in community
settings. The Provider should budget for materials and training related to the
evidence-based program models of their choice. The Provider may propose a strategy not
considered evidenced-based if it can be demonstrated that it is consistent with commonly
accepted guidelines for effectiveness in implementation.

Please reference the Office of Juvenile Justice and Delinquency Prevention's Model
Programs Guide (MPG) to find evidence-based prevention and intervention programs that can
make a difference in the lives of children and communities. The database has over 200
evidence-based programs covers the entire continuum of youth services from prevention
through sanctions to reentry.

9.Additional program services – the Provider will provide at least one annual community
awareness event at a Teen REACH program site.

10.Teen`REACH Daily/ Sign-In Sheets – Daily sign-in sheets are required.  These sheets
keep track of who attends on a daily basis. Sign-In sheets must be kept on file. It is
imperative that the method of signing in results in an unduplicated count of enrolled
participants.

11.Serving Snacks/Meals - Teen REACH programs must offer nutritious snacks to the
participants.  All food must be served in accordance with relevant local and state health
standards for food preparation and handling and meet the standards of the National
Afterschool Association.

While program funds may be used to purchase food, programs must demonstrate that they
researched and applied for assistance through the food programs sponsored through the U.S.
Department of Agriculture (USDA), found at http://www.usda.gov ; the Illinois State Board
of Education (ISBE), found at http://www.isbe.state.il.us ; or through Feeding America,
found at http://www.feedingamerica.org .

12.Field Trips and Educational Excursions – If a Teen REACH program coordinates an
educational field trip or excursion for Teen REACH participants that is located 60 miles
away or more from the Teen REACH site or out of state, and/or exceeds a Spending Plan of
$1,000, prior approval of IDHS is required.  A Spending Plan justification must list the
number of participants attending the field trip and the estimated expenses must be
itemized.

Agreement No. FCSVR04536     FY. 2017

**EXHIBIT B**

13. Teen REACH providers are required to participate in the formal evaluation of the program developed by the Department and must cooperate in the collection of data for this purpose. Programs will be required to administer parent and youth surveys, in the format provided by the IDHS.

14. Academic Performance Data - Grade cards must be collected on enrolled Teen REACH participants, and kept on file. This information is recorded in eCornerstone

15. Marketing Plan - Each Teen REACH program is required to develop a comprehensive, written marketing plan.  A comprehensive plan will identify the target audience, goals, strategies, and timeline.   To be effective, it will include a variety of strategies and delivery methods.  Promoting the Teen REACH programs at the local level is the provider's responsibility.  The goal of marketing is to make the program more visible, attract new participants, engage volunteers and community partners and to raise awareness of positive youth development.

The Marketing Plan must include:  Hosting and arranging at least one community awareness event on an annual basis. The event should involve community leaders, parents and Teen REACH youth in an effort to promote the positive impact of the program and to create linkages to other agencies serving youth.  Teen REACH programs are encouraged to participate in the national "Lights on After-School" Awareness Event.  More information on this activity can be found at www.afterschoolalliance.org.  All community awareness events should be described in the annual program plan.

Additional outreach strategies should include but are not limited to:
•Distribution of flyers to agencies, businesses, parents, schools, faith-based organizations and the community to increase participation.
•Parent newsletters listing events and opportunities to volunteer/participate.
•Teen REACH youth recruiting other youth through special events or incentive programs.
•Participation in school registrations and open houses.
• Presentations at teacher and parent meetings to recruit program participants.
•Hosting a site open house event to introduce families and community members to the Teen REACH program.
•Fostering partnerships with schools, regional offices of education, DCFS, Probation, Health Department, Child and Adolescent Local Area Networks, Foster Care Alliance, faith-based agencies and other private agencies to promote referrals of youth who are having academic difficulties; truant, reside in a single-parent home; receive TANF; are latchkey children; have siblings who dropped out of school or are involved with the juvenile justice system, are victims of violent crimes, have parents who are incarcerated or are teen parents.
•Sending regular press releases and announcements to the media to increase Teen REACH public presence.

Agreement No. FCSVR04536 _____ FY. 2017

**EXHIBIT B**

•Recording regular public service announcements on TV and radio- use youth and parents as spokespersons.
•Sending letters to all participants from the prior school year inviting them to return.
•Meeting with key members of school systems, including counselors, administrators and teachers to introduce the program and initiate lines of communication.
•Promotion of Teen REACH through business partnerships.
•Participation in community events, such as street fairs, parades and other events to promote Teen REACH.

16. The Provider will ensure representation at mandatory program meetings and trainings convened by or in behalf of the Department.

17. Training and Technical Assistance - Programs agree to receive consultation and technical assistance from authorized representatives of the Department. The program and collaborating partners will be required to be in attendance at site visits by Department staff. Programs will be required to attend regular meetings and specific trainings as required by the Department and should plan accordingly. It is anticipated that this will include several regional meetings, approximately two trainings, and one (overnight) statewide conference.

18. Records Retention / Destruction - In accordance with the Community Services Agreement, each provider shall maintain full and complete records of program operations in compliance with state records retention requirements. Records are defined as those documents that capture program activity, participant information and outcomes, and fiscal data. Teen REACH providers shall comply with the Local Records Act which regulates the destruction and preservation of public records within the State of Illinois. IDHS may require longer retention of records and/or submission of such records to the Department if the records cover a time period still open to audit.  Records to be retained include:
•All fiscal operations
•Source documentation for program reviews and audits
•School performance and attendance of participants, and other documents of participant outcomes
•Program participation of children and youth
•Equipment purchases
•Equipment Inventory list
•Others as required by IDHS

Destruction of Records - After the record retention period expires, Teen REACH records containing participant data must be destroyed by incineration or shredding in accordance with the Local Records Act of the State of Illinois.

19. Participant Information and Data - Each Teen REACH Participant must have a hard copy

Agreement No. FCSVR04536 _____     FY. 2017

**EXHIBIT B**

file. As the participant continues in the program, the file should be cumulative.

20. Confidentiality - The following information relating to participants and their .
families shall be treated as confidential: names and addresses individually or by list,
information contained in program reports and files, information about financial resources,
information contained in notes or other documents obtained from or about the participants
and their family, records from the school and other institutions. Information shall be
kept confidential except in the following cases: with the parent's written consent and if
the confidential character of the information is preserved.

21. Release of Information - There must be a signed Release of Information Form for each
enrolled Teen REACH participant on file with the provider when communicating with a
clinical or social service provider.  Please note that for children 12 and over, their
signature will be required when releasing information to clinical services, including
mental health and family planning.

22. Written Program Consent Form - The Program Consent Form gives parental consent to
participate in the activities of Teen REACH. The consent form shall include the name and
relationship to the participant of the person signing the form, name and address of
participant. The form must also include permission for: field trips; photography release;
outcome measures; and medical release. There must be a signed Consent Form for each
enrolled Teen REACH Participant with a valid signature, no more than 365 days old.

23. eCornerstone Informed Consent - An eCornerstone Informed Consent Form must be
completed and signed for each participant who is new in the program.  If the form is not
signed, basic demographic data entered into the system will not be shared with other
programs.

24. Equipment, Inventory and Recovery
Program Equipment Guidelines - Leasing of transportation is allowed on a case-by-case
basis. The need to transport participants as a condition of program attendance must appear
in the description of the community served by the program in the Annual Program Plan.
Other sources of transportation (i.e., schools) should be explored before using Teen REACH
funds.

Program equipment purchases must reflect the on-going activities of the program and be
indicated in the Program Plan. For example, the Life Skills component uses an
evidence-based program model that includes videotapes for discussion. Therefore, a TV-VCR
would be an appropriate purchase.

Updating or adding modules to a provider's existing computer center is allowed on a
case-by-case basis. Opening a computer lab for participants solely for Teen REACH is

Agreement No. FCSVR04536          FY. 2017

**EXHIBIT B**

discouraged, due to the expense and future maintenance.  For computer usage, IDHS encourages Teen REACH programs to contact the participants' schools and other agencies to negotiate use of labs. Software may be purchased and shared with cooperating schools and agencies.

Purchase of sports equipment is allowed, as is the purchase of other leisure time supplies, such as board games, ping-pong, football, etc.  Camping must appear as an on-going activity in the provider's overall youth program, if equipment is to be purchased. Such equipment requests will be considered on a case-by-case basis.

Any item with an acquisition cost of $100 or more and with a useful life of one year or more must have a tag and be listed on the Inventory Sheet. Any equipment with an acquisition cost of $500 or more and a useful life of 2 years or more must adhere to the requirements of the Community Services Agreement when it comes to transfer at the termination of the agreement. Any item costing $500 or more must be approved before purchase by the Teen REACH Program Coordinator.

25. Supervision, Personnel, Volunteers, Interns
All Teen REACH job descriptions must be included with the annual program plan and be on file with IDHS. A file must be made for each employee, containing at a minimum, his/her job description, resume, results of background check, and verification of training attended. A record of orientation and trainings attending including the web based eCornerstone reporting system, should be kept in the employee file.

A. At a minimum, a .5 FTE Teen REACH coordinator must be committed to the program. This is especially true of multi-agency sites and collaborations. While other staff can be PTE· (Part Time Equivalent), it is critical that monitoring, training, and supervision time be scheduled on a regular basis.

B. Volunteers are defined as adults over 18 years old whose talents and time are given to the program, but who do not receive an hourly rate or salary. Volunteers can be recruited from faith based organizations, parents, local schools, local businesses, and the provider's board of directors.

C. Adult mentors are considered volunteers, and should have the same information and structure as do other program volunteers.

D. Interns are individuals over the age of 16 whose role in the program is to assist staff while they are learning a specific aspect of the program.  Each intern must have a file containing a basic job description, sign-in/sign-out sheets, documentation of an orientation to the Teen REACH program and its goals. Interns must meet at least monthly with the program director or direct supervisor about their work and any issues involving

Agreement No. FCSVR04536        FY. 2017

**EXHIBIT B**

individual children. The program director must have the sign in sheet and name of the intern's supervising teacher.

E.Teen Employment - Paid student aide positions to assist adult group leaders should be treated as employees, complete with job descriptions; qualifications; supervision; evaluations; and time sheets. Employed teens are not considered as program participants, but should appear on the program plan, under staff. Teens may be employed at age 16 or more; those with a work permit can be employed at age 14 or 15. Local high schools can be instrumental in helping teens obtain this document.

F.Teen Supervision Requirement - Teen employees (groups aides, teacher assistants, etc.) still in high school and/or under 18 years old cannot be used in place of adult employees, and must not be left alone with groups of younger children. Teen volunteers or interns must not be left unsupervised with younger participants.

26.Child Abuse/Neglect Reporting and Staff Screening
The following protocols must be incorporated into the provider's Teen REACH Policy and Procedures Manual. These are minimum requirements and MUST be enforced.

A.Mandated Reporting - Per the Abused and Neglected Child Reporting Act (ANCRA, 325 ILCS 5/4), mandated reporters are professionals who may work with children in the course of their professional duties. Mandated reporters are required to report suspected child maltreatment immediately when they have "reasonable cause to believe that a child known to them in their professional or official capacity may be an abused or neglected child" (ANCRA Sec.4). This is done by calling the Illinois Department of Children and Family Services (DCFS) Hotline at 1-800-252-2873 or 1-800-25ABUSE. Programs funded through this grant opportunity must review ANCRA and, where appropriate, have a written protocol for identifying and reporting suspected child maltreatment.

B.Suspected Family Cases of Abuse or Neglect - All Teen REACH providers and program sites must have a written procedure for reporting suspected cases of abuse and neglect that take place outside the center.
•Informing parents of the provider's role as mandated reporter. This may be included in orientation packets and information to parents;
•Identifying the person(s) on staff who will be responsible for filing such reports and informing the parents;
•Identifying the roles and responsibilities of group workers and volunteers in reporting such cases;
•Documenting all such incidents in a child's file;
•Identifying the person(s) responsible for following up on reports made to the DCFS Hotline and with the family.

Agreement No. FCSVR04536        FY. 2017

**EXHIBIT B**

C.Suspected Agency Cases of Abuse or Neglect - All Teen REACH providers and program sites must have a written procedure that covers expectations for the safe management of children and youth by staff and program volunteers, as well as handling cases of suspected abuse or neglect that may have occurred while the participant is on program site. The procedure must include:

•Supervision of staff in contact with children and youth;
•Clearly established norms of behavior for staff, especially training and procedures for handling children and youth with problem behaviors;
•A method for identifying, documenting, and reporting suspected cases of abuse or neglect within the agency; interim plans for the employee and child(ren) involved in the report while such an investigation is occurring; disciplinary action for employees in such cases that are founded by DCFS.

D.Screening of Adults Working with Participants - Teen REACH providers must have written procedures for hiring and screening staff and volunteers who work with children ages 18 and under. Each program site must determine the level of background check that will be utilized for staff, volunteers, and interns over 18 years of age. Liability insurance should also cover adults working with children and youth.

E.Background Checks - Background checks are required for all program staff and volunteers who have one-on one contact with children and youth. Funded programs are required to have a written protocol on file requiring background checks, as well as evidence of their completion.

F.Types of Background Checks and Screenings
The following resources are available to programs in establishing protocals for background checks and screenings:

The Illinois State Police Department provides fingerprints and Sexual Offender listings. Contact www.isp.state.il.us .

CANTS, the child abuse and neglect tracking system determines whether an individual is currently alleged or has been indicated as a perpetrator of child abuse or neglect. Illinois Department of Children and Family Service CANTS listings can be obtained through:

Processing Control Unit and Background Checks
Illinois Department of Children and Family Services
1-217-785-4010

Costs are an allowable expenditure.

27.Medications and Protocols

Agreement No. FCSVR04536        FY. 2017

**EXHIBIT B**

The following required protocols must be incorporated into the provider's Teen REACH
Policy and Procedures Manual. These are minimum requirements and MUST be enforced. This
is NOT an all inclusive list.

A. Dispensing Medication

Teen REACH programs are discouraged from administering over-the-counter medications to
participants. If the Teen REACH program decides to handle and dispense prescription drugs,
a protocol must be added and adhere to the Illinois Licensing Standards for Day Care
Centers Section 407.360 Medications. The protocol must include:

•Prescription medication shall be accepted only in its original container.

•Prescription medications shall be labeled with the full pharmacy label.

•Medication shall be administered in a manner that protects the safety of the child.

•A specific staff person shall be designated to administer and properly document the
dispensation of the medication each day.

•Prescription medication shall be administered as required by a physician, subject to the
receipt of appropriate releases from parents which shall be on file and regularly updated.
Prescription medication shall be used only for the child named on the label.

•The program site shall maintain a record of the dates, times administered, dosage,
prescription number, and the name of the person administering the medication.

•Medications shall be safely stored.

•Medication containers shall have child-protection caps whenever possible.

•All medication, whether refrigerated or unrefrigerated, shall be kept in locked cabinets
or other containers that are inaccessible to children and that are designated and used
only for this purpose.

•Medications shall be kept in a well-lighted area.

•Medications shall be kept out of the reach of children.

•Medications shall not be kept in rooms where food Is prepared or stored, unless
refrigerated in a separate locked container.

•Medication shall not be used beyond the date of expiration.

•When a child no longer needs to receive medication, the unused portion or empty bottle
shall be returned to the parent.

•Any topical products, such as sunscreen, or insect repellant, whether supplied by the
parent or by the program site, shall be approved by the parent in writing prior to use by
the child.

B. Head Lice

Each Teen REACH program site must have a protocol for addressing infestations of head lice
in the Teen REACH population. The protocol must include:

•Frequency of regular head checks.

•Informing families of those affected with head lice.

•Referrals for treatment.

•Exclusion of those affected with head lice and program re-entry procedures.

Agreement No. FCSVR04536        FY. 2017

**EXHIBIT B**

- Informing all other families in the program about the infestation.
- Ensuring the cleanliness of the Teen REACH participants and decreasing incidents of shared hair grooming products and head gear.
- Parent education on head lice: identification, treatment of the children, and household extermination of head lice.
- Teen REACH funds cannot be used to purchase prescription or over-the counter pediculosides to treat lice.

C. Asthma

Asthma and its management has become a critical feature for the health of young school age children and teens. Each Teen REACH program site is required to have a protocol that addresses asthmatic participants and the management of asthma. Protocols should include:

- Written Parental Consent form that identifies health issues that may keep a participant from fully participating in physical sports and recreation.
- Staff training on environmental triggers for asthma.
- Staff training on early signs of asthma episodes and appropriate interpersonal responses.
- All participants who are identified with asthma must have a written Asthma Action Plan before participating in the program. This action plan must include what to do in case of mild, moderate, and severe episodes, as well as who to call. These contacts should include: doctor, hospital, ambulance or paramedic service used, and family member.
- Agency protocol must also include what staff will do the intervention during an asthma episode.

28. COA Standards for Quality School-Age Care

COA Standards establishes program standards for assuring quality, holistic programming and identifies minimum standards to assure that programming takes place in a safe, clean, secure environment that is in good repair. Teen REACH sites are expected to adhere to these standards.

The standards indicate that policies and procedures be written and implemented to assure the safety and well being of participants including standards for: Discipline and Conflict Resolution Among Participants and Emergency Procedures for Illness and Injury. These must be developed for each program site and appear in the provider's Teen REACH Policy and Procedure Manual.

COA Standards for Quality School-Age Care is available from:
Council on Accreditation
45 Broadway, 29th Floor
New York, NY 10006
http://www.coanet.org

Agreement No. FCSVR04536 _____ FY. 2017 '

**EXHIBIT B**

Although encouraged, providers are NOT required to become COA Accredited.

29.Provider Teen REACH Policy and Procedure Manual
Each Teen REACH provider must develop and implement a policies and procedures required to
deliver program services, collect data on participant outcomes and program performance,
program administration; daily operations etc. These will be kept in a Teen REACH Policy
and Procedure Manual. The following must be included in this manual – many of these items
have minimum requirements outlined in this document and will be incorporated into the
manual.
•Organizational Chart
•Teen REACH Program Plan
•Teen REACH Spending Plan
•Job Descriptions (for each staff member, volunteer, intern)
•New Staff Orientation Agenda
•Individual Supervision Agenda
•Team Meeting Agendas
•Subcontract/School Agreements
•Subcontract Monitoring Process
•Agency Protocols
•Medical: Dispensing Medications; Asthma; Head Lice
•Discipline and Conflict Resolution Procedure
•Illness, Injury and Emergency Procedures
•Transportation Procedure and Criteria
•Staff Supervision of Arrival and Departure of Participants
•Visitor Policy: Sign-In and Sign Out
•Hand Washing Procedures (Posted)
•Child Abuse and Neglect Reporting Act: Suspected Cases-External, Internal
•Staff Screening Procedure
•Teen REACH Advisory Board Rosters, Minutes and/or Agendas
•Enrollment and Termination Procedures
•eCornerstone Policies and Procedures
•Tracking Inventory
•Serving Snacks and Meals
•Internet Blocking Software for Youth Accessible PC's

Reporting of Unusual Incidents
The agency.must notify appropriate Department staff of any of the following incidents
involving youth enrolled in the program, within 24 business hours of the incident:
A.Serious threat or violence to self or others
B.Death
C.Suicide/suicide attempt
D.Violence between youth and staff that results in injury

Agreement No. FCSVR04536 _____    FY. 2017 __

**EXHIBIT B**

E. Allegation of abuse or neglect reported to the State's Central Registry (DCFS)

Performance Measures

All providers are required to meet the performance measures/standards outlined in Exhibits E and F of this CSA agreement. Regular review of these measures may result in technical assistance, corrective action, suspension of funding, reduction or loss in funding, or contract termination. These decisions will be based on the provider's responsiveness to the corrective action, failure to meet the requirements of the corrective action plan and unwillingness or inability to come into compliance with the corrective action plan and these measures.

Data Reporting Requirements

The Department of Human Services will be collecting data from Teen REACH Programs via the eCornerstone system as the first step in measuring performance standards. Required data will be collected and maintained on all youth enrolled in the Teen REACH program. The Provider will report participant, case planning and service delivery data to DHS utilizing the eCornerstone system daily. These data shall include but not limited to:

1. unduplicated number and demographic characteristics of program participants, annual enrollment data,
2. participant attendance data,
3. hours of operation,
4. program service activity,
5. participant outcomes in accordance with the goals and objectives specified for Teen Reach, and
6. academic outcomes

Items 5 and 6 above will also be reported in a narrative format at the direction of the Department.

Failure to submit the required data, reports and forms timely may result in the Department withholding or suspending funds.

The Department's position on program / participant information NOT entered into eCornerstone: If it is not in eCornerstone, it did not happen. Further, grant expenditures for direct services to youth not supported by eCornerstone data will be disallowed expenditures.

NOTE: This does NOT apply to providers funded under the Statewide Model – those youth are required to be "Tracked" using Kids Track.

Annual Program Plan/Budget

All providers are required to submit an annual Program Plan and Budget. Teen REACH

Agreement No. FCSVR04536          FV. 2017

**EXHIBIT B**

providers will include in their plans Activity Planners; Youth Attendance Plans and other items deemed necessary by the department to plan and implement a successful program. Please refer to the BYIS Program Manual for specific information and requirement.

Revisions to the program plan and budget: Please refer to the BYIS Program Manual for instructions regarding the submission of Program Plan or Spending Plan/Budget modifications.

Administrative Costs (Direct /Indirect)
Funding allocated under this grant is intended to provide direct services to youth. It is expected that administrative costs, both direct and indirect, will represent a small portion of the overall program budget and may NOT exceed 15% of the total program costs including required match. Administrative means those activities performed by staff and costs which are supportive of and required for project implementation for which there is no direct client contact such as fiscal staff; audit; clerical support; office rent, utilities, insurance; general office equipment etc. Program budgets and narratives will detail how all proposed expenditures are directly necessary for program implementation and will distinguish between Indirect/Direct Administrative and Direct Program expenses. Any budget deemed to include inappropriate or excessive administrative costs will not be approved. At no time may the approved NICRA be exceeded under this agreement – even if it is below the maximum allowed under the award. Documentation will be required to verify the approved NICRA.

Subcontractors
1.Subcontractor Agreement(s) must be pre-approved by the Department.
2.Subcontractor Agreement(s) and budgets must be on file with the Department.
3.Any subcontractors shall be subject to all provisions of this Agreement.
4.The Provider shall retain sole responsibility for the performance of the subcontractor.

Fiscal Reports / Billing Information
The Provider shall submit monthly expenditure documentation forms in the format prescribed by the Department. The Expenditure Documentation forms must be submitted no later than the 15th of each month for the preceding month by email to:
DHS.YouthServicesInfo@illinois.gov with the Program Name/Acronym; Contract number and Month in the Subject Line. If there are any questions, please contact the Bureau at: 217-557-2943.

Please refer to Section VIII Billing Instructions in the BYIS Program Manual for additional requirements.

Monitoring
All providers are required to participate in Department monitoring activities. Please

Agreement No. FCSVR04536          FY. 2017

**EXHIBIT B**

refer to the BYIS Program Manual for specific information and requirements regarding
Monitoring.

Special Conditions

Performance Based Funding (PBF) criteria:
In order to assure accountability at all levels of service provision, the Illinois
Department of Human Services will implement performance-based funding with all of its Teen
REACH grantee agencies beginning in FY2017, including the statewide provider.

The six primary performance measures / standards will be tracked via the Department's
eCornerstone data system.
Days Open
Average Cost per Youth Attendance Hour
Youth Attendance Hours
Population Served
Average Daily Attendance
Program Dosage

Data will be analyzed quarterly. Providers not meeting the minimum acceptable performance
levels will receive a contact either by phone or in person to discuss performance.
Technical assistance will be provided by staff and a three-month corrective action plan
developed and implemented to increase performance.

If the provider is unable to sufficiently increase performance in the subsequent
three-month period, additional technical assistance will be provided and the corrective
action plan revised and the timeline extended an additional three months.

The additional three-month period may be added to the corrective action timeline provided
that a minimum 50% improvement has been achieved. If a provider continues to remain below
minimum performance levels for four consecutive quarters (12 months of implementation),
the grant award amount will be reduced to a level that will better enable the provider to
meet minimum performance requirements. This will automatically close out the open
corrective action.

If after the 6-month corrective action a 50% increase toward the minimum performance
level(s) is not achieved, the grant award amount will be reduced to a level that will
better enable the provider to meet minimum performance requirements. This will
automatically close out the open corrective action.

Following a reduction in funding for the specific purpose of increasing performance, the

Agreement No. FCSVR04536 _____ FY. 2017 __

**EXHIBIT B**

corrective action process will start over.

If under any circumstance the provider is non-compliant with minimum performance after 12 months of reduced funding, the provider's contract will be terminated. Extenuating circumstances may be considered on a case by case basis.

Reduction in Funding – Method / Calculation
The formula that will be utilized to determine revised funding levels will be based on the same formula used to determine the original award amount.

Example: If the provider is unable to meet their projected ADA, YAH or Cost per YAH, the award will be reduced to appropriately reflect funding for the current ADA. This will enable the provider to immediately come into compliance with ADA, YAH and Cost per YAH.

If the provider continues to serve a disproportionate number of youth below the age of 11, the grant will be reduced to reflect funding for no more than 15% of youth under 11 – based on the current population being served. This will also bring the provider into compliance immediately.

There are two measures that cannot be adjusted in this manner to bring a provider into compliance: Days Open and Program Dosage. Research indicates that these measures are critical to achieving positive outcomes in the youth we serve. Providers must strive to meet these measures.

------ END OF PROGRAM: TEEN REACH -------

Agreement No. FCSVR04536_____   FY. 2017

## EXHIBIT C

## PAYMENT

Grantee shall receive   $172.800.00_____   under this Agreement.


Enter specific terms of payment here:


Exhibit C – Payments
Payments to the provider will be made on a prospective basis, rounded to the nearest
$100.00 and will vary based on funding source as follows: Federally funded program lines
will be prospectively issued 1/8th of the funded amount; General Revenue (State) funded
program lines will be prospectively issued 1/8th of the funded amount; and Stop-Gap
Commitment to Human Services Fund (Other State Fund) program lines will be prospectively
issued 1/2 of the funded amount. Subsequent prospective payments for General Revenue and
Federally funded grant lines will be issued based on previously submitted documented
expenditures. Subsequent prospective payments for Stop-Gap Commitment to Human Services
Fund grant lines will be issued in a single lump sum amount on or before 12/31/2016. The
final payment may be greater or lesser than the previous payments due to rounding.

The Department will compare the amount of the prospective payments made to date with the
documented expenditures submitted to the Department by the provider. In the event the
documented services submitted by the provider do not justify the level of award being to
the provider, future payments for General Revenue and Federally funded grant lines may be
withheld or reduced until such time as the services documentation submitted by the
provider equals the amounts previously issued to the provider. Failure of the provider to
submit timely documentation may result in a reduction to the total award.

The final payment from the Department under this Agreement for General Revenue and
Federally funded grant lines shall be made upon the Department's determination that all
requirements under this Agreement have been completed, which determination shall not be
unreasonably withheld. Such final payment will be subject to adjustment after the
completion of a review of the provider's records as provided for in the Agreement.

In the event payments made by the Department to the provider exceed the total amount of
provider reported and Department authorized expenditures, the provider will be required to
issue a repayment to the Department in an amount equal to the overpayment.

------ END OF PROGRAM: TEEN REACH -------


Estimated Annual Contract Amount:  $172,800.00

NOTE: The estimated figures are merely an objective means of computing the contract amount and should not be
construed as a guaranteed amount that will be spent on the contract during the fiscal year.

Agreement No. FCSVR04536 _____ FY. 2017

## EXHIBIT D
## CONTACT INFORMATION

**CONTACT FOR NOTIFICATION:**

Unless specified elsewhere, all notices required or desired to be sent by either Party shall be sent to the persons listed below.

**GRANTOR CONTACT**

Name: Karrie Rueter

Title: Bureau Chief

Address: 823 East Monroe
Springfield, IL 62702

Phone: 217-557-0193

TTY #:

Fax #:

E-mail Address: karrie.rueter@illinois.gov

**GRANTEE CONTACT**

Name: SALLY CARTER

Title:

Address: 2011 ROUND BARN ROAD
CHAMPAIGN, IL 61821-3622

Phone: 217-403-3710

TTY #:

Fax #:

E-mail Address: sally@tapinacademy.org

Additional Information:

Agreement No. FCSVR04536          FY. 2017

## EXHIBIT E

## PERFORMANCE MEASURES

Exhibit E – Performance Measures

1. Percent of seniors graduating
2. Percent of youth promoted to the next grade level or graduating
3. Percent of youth demonstrating improved anger management/conflict resolution skills
4. Percent of youth with improved school attendance
5. Percent of youth with improved grades
6. Percent of youth with improved homework completion
7. Percent of youth that were safe from violence during program hours
8. Percent of youth served from the target population
9. Days open
10. Youth Attendance Hours
11. Average Daily Attendance
12. Population Served
13. Program Dosage (Days)
14. Average cost per Youth per hour

------ END OF PROGRAM: TEEN REACH -------

Agreement No. FCSVR04536        FY. 2017

## EXHIBIT F

## PERFORMANCE STANDARDS

Exhibit F – Performance Standards

1. Percent of Seniors Graduating - Considers all youth in the program 9 months or longer. 100% of youth will graduate, 80% acceptable.

2. Percent of Youth Promoted - Considers all youth in the program 9 months or longer that were promoted to the next grade level or graduated.  100% of youth will be promoted to the next grade level, 80% acceptable.

3. Improved Conflict Resolution Skills - Of those youth who participated in anger management and/or conflict resolution, % of youth demonstrating improved skills.

4. Improved School Attendance - Percent of youth tracked with improved school attendance in one or more periods during the report year.

5. Improved Grades - Percent of youth tracked with improved grades in one or more periods during the report year.

6. Improved Homework Completion - Percent of youth tracked with improved homework completion in one or more periods during the report year.

7. Safe from Violence - Considers the number of youth injured during program hours as a direct result of violence.  Includes acts between youth and acts between youth and adults. 100% of youth will be safe from violence.

8. Target population served – 100% of youth served will be from the target population. Acceptable performance is 85%.  Considers all youth that meet one or more of the Youth and/or Family Risk Factors as identified in Exhibit B, Section 5 of this document.

9. Days Open – TR Program sites will be open 240 days per year. Acceptable performance is 90%.

10. Youth Attendance Hours – Compares proposed vs. actual youth attendance hours.  100% of Youth Attendance Hours as projected in the Youth Attendance Plan will be achieved. Acceptable performance is 80%.

11. Average Daily Attendance – Number of youth attending the program divided by the number of days the program is open.  100% of projected Average Daily Attendance will be achieved. Acceptable performance is 80%.

12. Population Served – Considers age of youth at time of enrollment (youth are enrolled each year).  85% or more youth receiving services will be 11 to 17 years old.

13. Program Dosage (Days) - 100% of enrolled youth will attend on average 5 days per week. Acceptable performance is 50% enrolled youth will attend on average 3 days per week.

14. Average cost per Youth per Hour – Grant amount divided by total youth attendance hours.  $4.50 per youth attendance hour.

The majority of the above measures are tracked in eCornerstone.  Providers are required to use the eCornerstone system to report data per this contract agreement.  The Department's position on program / participant information NOT entered into eCornerstone:  If it is not in eCornerstone, it did not happen.  Further, grant expenditures for direct services to youth not supported by eCornerstone data will be disallowed expenditures.

------ END OF PROGRAM: TEEN REACH -------

Agreement No. FCSVR04536          FY. 2017

**EXHIBIT F**

Agreement No. FCSVR04536        FY. 2017

**EXHIBIT G**

**STATE AGENCY CONTRACTS**

For each contract or other agreement to which Grantee is a party with any other State agency, state:

1.    The name of the State agency;

2.    The number of the contract(s) or other agreement(s);

3.    The estimated amount of the contract(s) or other agreement(s);

4.    The term of the contract(s) or other agreement(s); and

5.    The nature or purpose of the contract(s) or other agreement(s).

Agreement No. FCSVR04536_____    **FY.** 2017___

**EXHIBIT H**
**SPECIFIC CONDITIONS**

N/A

------ END OF PROGRAM: TEEN REACH ------

Agreement No. FCSVR04536          FY. 2017

## PART TWO – THE GRANTOR-SPECIFIC TERMS

In addition to the uniform requirements in **PART ONE** of the Grant Agreement, the Grantor has the following additional requirements for its Grantee:

### ARTICLE XXVII
### ADDITIONAL CERTIFICATIONS

27.1    Certifications. Grantee shall be responsible for compliance with the enumerated certifications to the extent that the certifications legally apply to Grantee:

(a)    **Abuse of Adults with Disabilities Intervention Act.** Grantee certifies that it is in compliance with the Abuse of Adults with Disabilities Intervention Act to protect people with disabilities who are abused, neglected or financially exploited and who, because of their disability, cannot seek assistance on their own behalf. Anyone who believes a person with a disability living in a domestic setting is being abused, neglected or financially exploited must file a complaint with the Office of Inspector General, Department of Human Services. Grantee has an obligation to report suspected fraud or irregularities committed by individuals or other entities with whom it interacts on Grantor's behalf and should make a report to the appropriate program office (20 ILCS 2435/1*et seq.*).

(b)    **Grant Award Requirements.** Grantee certifies that it is in compliance with 45 CFR Part 93 and 45 CFR Part 94.

(c)    **Business Entity Registration.** Grantee certifies that it is not required to register as a business entity with the State Board of Elections pursuant to the Procurement Code (30 ILCS 500/20-160 and 30 ILCS 500/50-37). Further, Grantee acknowledges that all contracts between State agencies and a business entity that do not comply with this Paragraph shall be voidable under Section 50-60 of the Procurement Code (30 ILCS 500/50-60).

### ARTICLE XXVIII
### ADDITIONAL TERMS

28.1    Renewal. This Agreement may be renewed for additional periods by mutual consent of the Parties, expressed in writing and signed by the Parties.   Grantee acknowledges that this Agreement does not create any expectation of renewal.

28.2    Multiple Locations. In the event that Grantee has more than one location, Grantee shall include in **EXHIBIT D** either (1) the address, phone number and hours of operation of each location, or (2) the address, phone number and hours of operation of Grantee's primary location.

28.3    Changes in Key Grant Personnel. When it is specifically required as a condition of an Award, the replacement of the Program director or a key person or a substantial reduction in the level of their effort, e.g., their unanticipated absence for more than three (3) months, or a twenty-five percent (25%) reduction in the time devoted to the Award purposes, requires Prior Approval from Grantor. When it is specifically required as a condition of an Award, Prior Approval will be required for the replacement or the substantial reduction in the level of effort of other personnel whose work is deemed by Grantor to be critical to the Award's successful completion. All requests for approval of changes in key Grant personnel shall be signed by Grantee's authorized representative and submitted to the appropriate Grantor program personnel. Evidence of the qualifications for replacement

**Agreement No.** FCSVR04536          **FY.** 2017

personnel (such as a résumé) shall be included. 2 CFR 200.308.

28.4    Grant Funds Recovery. The provisions of 89 Ill. Adm. Code 511 shall apply to any funds awarded that are subject to the Illinois Grant Funds Recovery Act.

28.5    Employee and Subcontractor Background Checks. Grantee certifies that neither Grantee, nor any employee or subcontractor who works on Grantor's premises, has a felony conviction. Any request for an exception to this rule must be made in writing, listing the name of the individual, home address, type of conviction and date of conviction. Grantee will also supply Grantor with a list of individuals assigned to work on DHS' premises at least ten (10) working days prior to the start of their employment, unless circumstances prevent Grantee from giving a list within that time. If Grantee cannot provide a list, or the name of an individual, at least ten (10) working days prior to his/her employment, it shall do so as soon as possible. Grantor may conduct, at its expense, criminal background checks on Grantee's employees and subcontractors assigned to work on Grantor's premises.  Grantee agrees to indemnify and hold harmless Grantor and its employees for any liability accruing from said background checks.

28.6    Gifts. In addition to the Gift ban described in Paragraph 26.1, Grantee will provide Grantor with advance notice of Grantee's provision of gifts, excluding charitable donations, given as incentives to community-based organizations in Illinois and clients in Illinois to assist Grantee in carrying out its responsibilities under this Agreement.

**ARTICLE XXIX**
**MONITORING AND INFORMATION**

29.1    Monitoring of Conduct. In addition to Article XII of **PART ONE**, Grantor shall monitor Grantee's conduct under this Agreement which may include, but shall not be limited to, reviewing records of performance in accordance with administrative rules, license status review, fiscal and audit review, Agreement compliance and compliance with the affirmative action requirements of this Agreement.  Grantor shall have the authority to conduct announced and unannounced monitoring visits and Grantee shall cooperate with Grantor in connection with all such monitoring visits. Failure of Grantee to cooperate with Grantor in connection with announced and unannounced monitoring visits is grounds for Grantor's termination of this Agreement.

29.2    Requests for Information. Grantor may request, and Grantee shall supply, upon request, necessary information and documentation regarding transactions constituting contractual (whether a written contract exists or not) or other relationships, paid for with funds received hereunder. Documentation may include, but is not limited to, information regarding Grantee's contractual agreements, identity of employees, shareholders and directors of Grantee and any party providing services which will or may be paid for with funds received hereunder, including, but not limited to, management and consulting services rendered to Grantee.

29.3    Rights of Review. This ARTICLE XXIX does not give Grantor the right to review a license that is not directly related to the Award being audited nor does it allow Grantor to unilaterally revoke a license without complying with all due process rights to which Grantee is entitled under Federal, State or local law or applicable rules promulgated by Grantor.

Agreement No. FCSVR04536          FY. 2017

## ARTICLE XXX
## WORK PRODUCT

30.1     Assignment of Work Product. "Work Product" means all the tangible materials, regardless of format, delivered by Provider to DHS under this Agreement. Grantee assigns to Grantor all right, title and interest in and to Work Product. However, nothing in this Agreement shall be interpreted to grant Grantor any right, title or interest in Grantee's intellectual property that has been or will later be developed outside this Award.

30.2     License to Grantor. To the extent Grantee-owned works are incorporated into Work Product, Grantee grants to Grantor a perpetual, non-exclusive, paid-up, world-wide license in the use, reproduction, publication and distribution of such Grantee-owned works when included within the Work Product. Grantee shall not copyright Work Product without Grantor's prior written consent.

30.3     License to Grantee; Objections. Grantor grants to Grantee a perpetual, non-exclusive, paid-up license to publish academic and scholarly articles based upon the services rendered under this Agreement. All materials to be published shall first be submitted to Grantor at least forty-five (45) days prior to publication or other disclosure. Upon written objection from Grantor, Grantee shall excise any confidential information, as that term is defined in applicable State and Federal statutes, federal regulations and Grantor administrative rules, from materials before publication. Grantor may also object to the publication on grounds other than confidentiality. As to the latter objections, Grantee and Grantor will attempt to resolve Grantor's concerns within the forty-five (45) day review period, or as otherwise agreed between the Parties. Grantor waives any objections not made to Grantee in writing before expiration of the review period.

30.4     Unresolved Objections; Disclaimer. If Grantor's objections on grounds other than confidentiality are not resolved within the review period or other such time as agreed by the Parties, then Grantee may publish the materials but shall include therein the following disclaimer: "Although the research or services underlying this article were funded in whole or in part by the [Grantor], the [Grantor] does not endorse or adopt the opinions or conclusions presented in the article." Notwithstanding the above, Grantor shall not have the right to control or censor the contents of Grantee publications.

## ARTICLE XXXI
## POST-TERMINATION/NON-RENEWAL

31.1     Duties. Upon notice by Grantor to Grantee of the termination of this Agreement or notice that Grantor will not renew, extend or exercise any options to extend the term of this Agreement, or that Grantor will not be contracting with Grantee beyond the term of this Agreement, Grantee shall, upon demand:

(a)     Cooperate with Grantor in assuring the transition of recipients of services hereunder for whom Grantee will no longer be providing the same or similar services or who choose to receive services through another Grantee.

(b)     To the extent permitted by law, provide copies of all records related to recipient services funded by Grantor under this Agreement.

(c)     Grant reasonable access to Grantor to any and all Program sites serving recipients hereunder to facilitate interviews of recipients to assure a choice process by which recipients may indicate provider preference.

Agreement No. FCSVR04536        FY. 2017

(d)        Provide detailed accounting of all service recipients' funds held in trust by Grantee, as well as the identity of any recipients for whom Grantee is acting as a representative payee of last resort.

31.2    Survival. The promises and covenants of this Article shall survive the Term of this Agreement for the purposes of the necessary transition of recipients of services hereunder.

## ARTICLE XXXII
## LINGUISTIC AND CULTURAL COMPETENCY GUIDELINES AND ASSURANCE

32.1.    Plan Creation. For Grantees that do not have a Linguistic and Cultural Competency (LCC) Plan, the Grantee shall create its LCC Plan within one year following execution of this Agreement. The LCC Plan, including creation guidelines, is described on the Internet at http://www.dhs.state.il.us/page.aspx?item=66602.

32.2.    Plan Implementation. For Grantees that have an LCC Plan, the Grantee certifies that it is updated annually to identify all goals met and to describe any efforts made toward meeting additional goals still in progress.

32.3.    Plan Submission. Upon request, Grantee shall submit to the Grantor its LCC Plan, including any updates.

Agreement No. FCSVR04536_____ FY. 2017___

## PART THREE – THE PROJECT-SPECIFIC TERMS

In addition to the uniform requirements in **PART ONE** and the Grantor-Specific Terms in **PART TWO**, the Grantor has the following additional requirements for this Project:

### ARTICLE XXXIII
### ADDITIONAL REQUIREMENTS

    33.1    Program Manual. The related Program Manual, if applicable, can be found via the following DHS website: http://www.dhs.state.il.us/page.aspx?item=29741  and is hereby incorporated into this Agreement.

    33.2    Program Attachment. The related Program Attachment, if applicable, is **R** . It can be found via the following DHS website: http://www.dhs.state.il.us/page.aspx?item=29741 and is hereby incorporated into this Agreement.